**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **TURTLE ISLAND FOODS SPC d/b/a/ THE TOFURKY COMPANY, and the PLANT BASED FOODS ASSOCIATION,** | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | **Civil Action No. 1:23-cv-01032-CM** |
| **GREG ABBOTT, in his official capacity as Texas Governor; JENNIFER A. SHUFORD, in her official capacity as Commissioner of State Health Services; CECILE ERWIN YOUNG, in her official capacity as Executive Commissioner of the Texas Department of Health and Human Services Commission; and Attorney General KEN PAXTON, on behalf of himself and all Texas prosecuting attorneys,** | § § § § § § § § § § § § | |
| *Defendants*. | § § | |

---

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO
FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

---

Defendants, Greg Abbott ("Governor Abbott"), in his official capacity as the Governor of

the State of Texas, Dr. Jennifer A. Shuford ("Commissioner Shuford"), in her official capacity as

Commissioner of Texas Department of State Health Services ("DSHS"), Cecile Erwin Young

("Executive Commissioner Young"),[1] in her official capacity as Executive Commissioner of the

Texas Department of Health and Human Services Commission ("HHSC"), and Ken Paxton

---

[1] Texas Health and Human Services system and its "HHS" acronym represent the Texas Health and Human Services Commission ("HHSC") and the Texas Department of State Health Services ("DSHS"), each of which is a separate, distinct agency of the state. *See* TEX. GOV'T. CODE Sections 531.001 and 531.002. Plaintiffs incorrectly refer to Texas Department of State Health Services as "State Health Services." State Health Services is not a state agency.

("General Paxton"), in his official capacity as Attorney General for the State of Texas, (collectively, "Defendants"), file this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support thereof, Defendants respectfully offer the following.

## STATEMENT OF THE CASE

In the 88th Legislative Session, the Texas Legislature ("Legislature") approved amending the Texas Health and Safety Code related to food labels for analogue and cell-cultured products with Senate Bill 664 ("the Amendment"), which went into effect on September 1, 2023. [2] Due to recent technological advancements with food products, the Legislature sought to address the lack of rules for alternative proteins using analogue and cell-cultured food products in order to clarify food labels for these food products for consumers. [3] With this advancement, the Legislature emphasized that while "[t]he increase in variety at the food counter can be a positive for consumers, [] it is important for the consumer to understand the nature of the products they are purchasing to feed themselves and their families." [4]

The Amendment clarifies the labeling requirements for both "analogue" and "cell-cultured" products. [5] Specifically, the Amendment modified Section 431.0805, "Definitions"; Section 431.0082, "Misbranded Food"; and Section 433.0415, "Labeling cell-cultured product." [6]

Notably, the Amendment defines "analogue product," "cell-cultured product, and "close proximity." [7] It also added a provision in the "Misbranded Food" section stating that "[a] food shall be deemed to be misbranded . . . if it is an analogue product of meat, a meat food product, poultry,

---

[2] Tex. S.B. 664, 88th Sess. Bill, https://capitol.texas.gov/tlodocs/88R/billtext/pdf/SB00664F.pdf (last visited Nov. 14, 2023).
[3] *Id*.
[4] S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/analysis/pdf/SB00664F.pdf.
[5] *Id*.
[6] *Id*.
[7] *See* Tex. Health and Safety Code Section 431.0805.

a poultry product, an egg product, or fish, unless its label bears in prominent type equal to or greater in size than the surrounding type and in close proximity to the name of the product one of the following: (1) 'analogue'; (2) 'meatless'; (3) 'plant-based'; (4) 'made from plants'; or (5) 'a similar qualifying term or disclaimer intended to clearly communicate to a consumer the contents of the product . . . .'"[8] The "Labeling cell-cultured products" provision contains a similar requirement along with usage of one of the following terms, (1) "cell-cultured"; (2) "lab-grown"; or (3) "a similar qualifying term or disclaimer intended to clearly communicate to a consumer the contents of the product."[9]

Section 4 of the Amendment provides that the Executive Commissioner of the HHSC "shall adopt any rules necessary to implement the changes in law made by the [Amendment]."[10] Currently, HHSC is still in the process of drafting and adopting rules that DSHS and HHSC will use to enforce the Amendment.[11] To date, Turtle Island Foods SPC d/b/a The Tofurky Company ("Tofurky") and an association that Tofurky founded called Plant Based Foods Association ("PBFA") (collectively, "Plaintiffs"), continue to run their businesses unabated, even after the Amendment took effect, and will be able to continue to do so for the foreseeable future.

Plaintiffs have brought a facial and as-applied constitutional challenge to the Amendment seeking a preliminary injunction preventing enforcement and declaratory relief. Specifically, Plaintiffs bring the following claims: 1) express preemption under federal law; 2) Supremacy Clause; 3) § 1983 Discrimination under the Dormant Commerce Clause; 4) § 1983 Excessive Burden under the Dormant Commerce Clause; 5) § 1983 Fourteenth Amendment Due Process

---

[8] *See* Tex. Health and Safety Code § 431.082(d-1).
[9] *See* Tex. Health and Safety Code § 433.0415.
[10] Tex. S.B. 664, 88th Sess. Bill, https://capitol.texas.gov/tlodocs/88R/billtext/pdf/SB00664F.pdf (last visited Nov. 14, 2023).
[11] *See* Tex. Gov. Code §§ 531.0055(e),  531.0055(j).

Clause; 6) § 1983 First Amendment; and 7) 28 U.S.C. § 2201 Declaratory Judgment.

This Court should dismiss Plaintiffs' claims because 1) Plaintiffs lack standing; 2) Plaintiffs' claims are not ripe; 3) Defendants are entitled to sovereign immunity; and 4) Plaintiffs fail to state a claim for any cause of action.

## ARGUMENTS AND AUTHORITIES

### I.   STANDARD OF REVIEW

#### A.   RULE 12(B)(1) STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[A] court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Ackerman v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) motion before addressing any motion as to the merits. *Ramming*, 281 F.3d at 161. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P 12(h)(3).

#### B.   RULE 12(B)(6) STANDARD

A complaint must be dismissed if the plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id*. While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

In evaluating a motion to dismiss, a district court should employ a two-pronged approach. First, the court should identify and set aside "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Second, the court should assume the veracity of the plaintiff's "well-pleaded factual allegations . . . and then determine whether they plausibly give rise to an entitlement for relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then the complaint fails to show a plausible claim for relief. *Id.* (citing FED. R. CIV. P. 8(a)(2)).

The court should dismiss a complaint if the plaintiff has failed to "nudge[] [his] claims" of unlawful conduct "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. In other words, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the complaint fails to "show[] that the pleader is entitled to relief" under Rule 8(a)(2) and must be dismissed. *Iqbal*, 556 U.S. at 679. Likewise, a court should dismiss when, based on the plaintiff's own allegations, the plaintiff has no cognizable claims.

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS LACK STANDING, THEIR CLAIMS ARE NOT RIPE, AND DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY.

### A. PLAINTIFFS LACK ARTICLE III STANDING.

To establish standing, Plaintiffs must demonstrate "(1) an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent'; (2) is fairly traceable to the defendant's actions; and (3) is likely to be redressed by a favorable decision." *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 215 (5th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). [12] A plaintiff must clearly allege facts demonstrating each element of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm.").

Not every dispute is entitled to judicial review. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes," as federal courts "do not possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Put another way, "[f]ederal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities." *Id.* "And federal courts do not issue advisory opinions." *Id.*

## 1. Plaintiffs cannot show injury-in-fact.

Plaintiffs must show a concrete and particularized injury-in-fact. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The alleged "injury in fact" will suffice only if it is "concrete, particularized, and actual or imminent." *Clapper*, 568 U.S. at 409. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"

---

[12] Defendants emphasize that in *Turtle Island Foods, S.P.C. v. Strain*, the Fifth Circuit was persuaded that the second prong of the pre-enforcement Free Speech standard was met because Plaintiffs were using "'plant-based' labels that use meat-esque words," which was proscribed by the Louisiana law because use of the term "meat" in a variety of forms was strictly prohibited. 65 F.4th at 216-17; *see also* LA. Rev. Stat. § 3:4744. This case is quite distinguishable because the Texas Amendment does not proscribe the use of the term "meat" at all and because Plaintiffs have failed to specify any action that Plaintiffs are currently taking that is proscribed by the Amendment other than vague references to "disclosure requirements." Amended Compl. ¶¶ 5, 13, 16. *See infra* at 8-12 for pre-enforcement challenge analysis.

*Spokeo*, 578 U.S. at 339, *as revised* (May 24, 2016). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. at 340; *see* Black's Law Dictionary 479 (9th ed. 2009). Because standing "'is not dispensed in gross,' a party must have standing to challenge each 'particular inadequacy in government administration.'" *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 (5th Cir. 2018). At the preliminary-injunction stage, plaintiffs must make a "clear showing" that they have standing. *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017).

The Supreme Court and Fifth Circuit have consistently rejected claims of standing contingent on future outcomes in pending litigation. "It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case" *Whitmore v. Arkansas*, 495 U.S.149, 159–60 (1990). An anticipated injury in litigation is nothing more than uncertain potentiality, and standing cannot be based on a predicted harm that "depend[s] on the occurrence of numerous uncertain future events." *Prestage Farms, Inc. v. Bd. of Supervisors of Noxubee Cty.*, 205 F.3d 265, 268 (5th Cir. 2000); *see also Am. Fid. & Cas. Co. v. Penn. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960) ("It is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never come to pass.").

Even when injunctive and declaratory relief is sought, a plaintiff must still establish a threatened future injury that "like all injuries supporting Article III standing, must be an injury in fact." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). "For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Id.* at 721. Yet, a "mere risk of future harm, standing alone, cannot qualify as a concrete harm" absent a showing that the plaintiff was "harmed by their exposure to the risk [of harm] itself." *TransUnion,* 141 S.Ct at 2211.

Here, Plaintiffs fail to allege an actual, imminent, particularized harm against Defendants. Instead, Plaintiffs continually make broad conclusory statements like the Amendment "would hobble Tofurky and other plant-based meat companies represented by PBFA" and that it "would simultaneously [] cost the company millions of dollars to change labels and marketing representations." Amended Compl. ¶ 91.   Plaintiffs only allege in the hypothetical. Despite reiterating several times that the Amendment would cost Plaintiffs "millions," Plaintiffs fail to allege why "millions" would be required to comply with the Amendment. *See generally*, *Id*. ¶¶ 13, 21. Plaintiffs cannot point to any concrete harm in any of their allegations.

It is these bare recitations of the elements of a claim, supported merely by conclusory statements, that are insufficient to confer standing. *Iqbal*, 556 U.S. at 678. It is entirely too speculative to allege that the Amendment "would . . . cost the company millions of dollars" without more. Amended Compl. ¶ 91. *Little v. KPMG LLP*, 575 F.3d 533, 535 (5th Cir. 2009) (holding that the alleged "claim of injury is too speculative to confer Article III standing or to give rise to a claim for which relief can be granted."). In fact, Plaintiffs have not identified any specific costs that would be incurred to abide by the Amendment.

For these reasons, Plaintiffs have not alleged any particularized injury, nor have they alleged any injury that actually exists. *See Spokeo*, 578 U.S. at 339. Therefore, Plaintiffs fail to satisfy the first element of Article III standing.

### 2. Plaintiffs lack standing to bring a pre-enforcement First Amendment challenge.

Plaintiffs lack standing to bring a pre-enforcement First Amendment challenge. For pre-enforcement free speech challenges, a plaintiff must show that: "(1) it intends to engage in a course of conduct arguably affected with a constitutional interest; (2) that the course of action is arguably proscribed by statute; and (3) that there exists a credible threat of prosecution under the statute."

*Turtle Island Foods, S.P.C.*, 65 F.4th at 215–16 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

Plaintiffs have not adequately demonstrated a cognizable forward-looking injury. Even in the First Amendment context where the requirements of demonstrating an Article III injury are slightly relaxed, a plaintiff must show a substantial threat of enforcement that is not "chimerical." *Steffel v. Thompson,* 415 U.S. 452, 459 (1974). A pattern of "past enforcement against the same conduct is good evidence" of such a threat. *Driehaus,* 573 U.S. at 164.

### i.   Plaintiffs failed to allege a pre-enforcement speech injury.

Tofurky and PBFA have not alleged an injury because their commercial speech is not chilled nor are Plaintiffs subject to self-censorship under the Amendment. Plaintiffs allege that the Amendment "will . . . chill companies' protected speech," absent injunctive and declaratory relief. Amended Compl. ¶ 94.

However, when evaluating the breadth of free speech, commercial speech is "more hardy" and less likely to be chilled. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481 (1989) (citing *Bates v. State Bar of Ariz.*, 433 U.S. 350, 380-381 (1977)). This is because "advertising is the Sine qua non of commercial profits," is driven by the profit motive, and therefore is more durable and has "little likelihood of its being chilled by proper regulation." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 n. 24 (1976). "[A] State may choose to regulate . . . one industry but not [] others, because the risk of fraud (one of the characteristics of commercial speech that justifies depriving it of full First Amendment protection) is in its view greater there." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388–89 (1992) (internal citation omitted); *see also Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992) (state regulation of airline advertising); *Ohralik v. Ohio State Bar Ass'n.,* 436 U.S. 447 (1978) (state

regulation of lawyer advertising).

Allegations of chilled speech of "self-censorship must arise from a fear of prosecution that is not 'imaginary or wholly speculative.'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) (quoting *Babbitt v. UFW Nat'l Union,* 442 U.S. 289 (1979)). The Supreme Court has "repeatedly reiterated that the threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (emphasis in original); *see also Driehaus*, 573 U.S. at 158.

Here, the speech of Tofurky or PBFA is commercial and will not be chilled or subject to self-censorship. Tofurky's speech on food labels is commercial, profit driven, and therefore, less likely to be chilled. PBFA also alleges that its speech is commercial because it creates "comprehensive voluntary standards" for labeling for 200 company members, with at least 92 of them manufacturing plant-based meat alternatives. Amended Compl. ¶ 30. However, to date, Plaintiffs have not alleged any threatened or potential enforcement action taken against them by Defendants. As previously stated, Tofurky and PBFA have continued to run their businesses without interruption even after the Amendment took effect and will continue doing so for the foreseeable future. Accordingly, Tofurky and PBFA cannot show any injury is "certainly impending" to support a pre-enforcement free speech challenge.

### ii.  Plaintiffs fail to allege a course of action proscribed by the statute.

Plaintiffs similarly fail to allege a course of action that is proscribed by the Amendment. Despite Plaintiffs' verbose allegations, it is unclear what, if any, part of the Amendment Tofurky contends violates their First Amendment rights. Plaintiffs repeatedly refer to "disclosure requirements" implemented by the Amendment yet they do not define what provision of the Amendment to which they refer. *Id*. ¶¶ 5, 13, 16. Plaintiffs have not properly alleged with

specificity what portions of the Amendment they contest or with which they cannot comply—rather, they make blanket, vagaries that seem to suggest that Plaintiffs cannot abide by the Amendment whatsoever. Therefore, Plaintiffs fail to state an action proscribed by the Amendment.

### iii.  There is no credible threat of prosecution.

Because no entity is enforcing the Amendment now, and Plaintiffs cannot state what actions are proscribed by the statute, there is no credible threat of prosecution.

Plaintiffs allege that Tofurky must now either "choose to continue to have its products sold in Texas as packaged at a substantial risk of prosecution," design and produce new marketing and packaging for Texas, or change its nationwide marketing and packaging "at considerable expense," "causing confusion to its consumers." *Id*. ¶ 95.

However, there is no credible threat of prosecution under the Amendment because Plaintiffs have not alleged that Defendants have threatened enforcement of the Amendment against them. In fact, as stated, Section 4 of Amendment, the executive commissioner of HHSC "shall adopt any rules necessary to implement the changes in law made by this act." Currently, HHSC is still in the process of drafting and adopting "rules" that will be used to enforce the Amendment that will later be enforced by DSHS.

It cannot be overstated that Plaintiffs have not clearly and properly alleged what, if any, provisions of the Amendment they cannot meet. Because Plaintiffs have not alleged any action arguably proscribed by the Amendment and there is no indication of a threat of prosecution, Plaintiffs lack standing to bring a pre-enforcement First Amendment challenge. Plaintiffs' claims should be dismissed.

### 3.   Plaintiffs' speculative injuries are not fairly traceable to any action by any Defendant.

Plaintiffs have not alleged a single enforcement action—past, present, or imminent—taken against them by Defendants. Plaintiffs allege in the hypothetical a "substantial risk of prosecution" yet Plaintiffs have not alleged they have received a notice of violation from Defendants or any similar facts to suggest that they are at risk of "substantial risk of prosecution." Amended Compl. ¶ 95.

Moreover, Plaintiffs' alleged injuries are not fairly traceable to Governor Abbott and Attorney General Paxton because Plaintiffs have not alleged nor do these individual state defendants have any enforcement power whatsoever for any alleged actions related to the Amendment. *See Turtle Island Foods, S.P.C.*, 65 F.4th at 215. Plaintiffs lack standing to sue Governor Abbott and Attorney General Paxton. These Defendants must be dismissed.

### 4.   A favorable judicial decision will not redress any injury.

Finally, Plaintiffs' alleged injuries are non-redressable. Redressability requires a plaintiff to show "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 181. Remedies "operate with respect to specific parties." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (citation omitted). Here, Plaintiffs cannot establish any injury has yet occurred, nor can Plaintiffs say with any degree of certainty that any injury will occur. Furthermore, only the FDA can declare a "statement of identity," not an Article III court. Plaintiffs request that the Court find that the "name of the product" is synonymous with the "statement of identity" under the FDCA. Amended Compl. ¶ 143. However, this is a non-justiciable issue before this Court because only the FDA can make this declaration.

Because the conjectural injury stemming from hypothetical, future enforcement is

Plaintiffs' only hope of establishing injury, any redressability is merely speculative and insufficient to confer standing.

     **5.**   **Plaintiffs similarly lack standing to bring a Due Process unconstitutional vagueness claim.**

Plaintiffs lack standing for their Due Process claims as Plaintiffs preemptively challenge the Amendment prior to enforcement. *Nat'l Press Photographers Ass'n v. McCraw*, No. 22-50337, 2023 WL 6968750, at *5 (5th Cir. Oct. 23, 2023).

In *National Press Photographers Association*, the Fifth Circuit recently held that plaintiffs lacked standing to bring their Due Process unconstitutional vagueness claims because plaintiffs had never been arrested or prosecuted for violating the statute and the "available evidence suggest[ed] that Defendants have never enforced [the statute] against Plaintiffs (or anybody else.)" *Id*. The Court further declared that whether the contested provisions of the statute were "unlawfully vague in their proscriptions is therefore a mere hypothetical dispute lacking the concreteness and imminence required by Article III." *Id*. (citations omitted). "In the absence of any imminent or even credible threat of prosecution under [the statute], Plaintiffs lack standing to preemptively challenge [the statute] under the Due Process Clause. *Id*. (citations omitted).

The same is true here. As previously stated, Plaintiffs have not alleged that Defendants have threatened or even attempted enforcement in any manner. Therefore, Plaintiffs lack standing to bring a Due Process vagueness claim. This claim should be dismissed.

     **6.**   **Plaintiffs lack standing as to any provision in the Amendment related to "cell-cultured products" because Plaintiffs allege they are solely plant-based organizations.**

Plaintiffs lack standing to bring claims as to any section of the Amendment that refers to "cell-cultured products" because Plaintiffs affirmatively allege that they are solely plant-based organizations and do not allege that either Tofurky or PBFA sell, package, or take any interest in

cell-cultured products. *See generally*, Amended Compl. For example, Tofurky alleges that its "target market is people who want to *avoid* meat made from animals. To that end, its products are all prominently marked and packaged as vegan and 100% plant-based, with labels that unmistakably convey that they are 'PLANT-BASED.'" *Id*. ¶ 26 (emphasis in original); *see also* ¶¶ 40–41 ("[a]ll of Tofurky's products are clearly labeled as 'plant-based,' or 'vegan'. . ." and "Tofurky products include plant-based chick'n . . . plant-based deli slices . . . plant-based burgers . . .). PBFA likewise alleges that it is a "nonprofit trade association that represents leading manufacturers and sellers of 100% plant-based foods, including plant-based meat producers" and that all "PBFA company-members manufacture or sell one or more 100% plant-based food products." *Id*. ¶¶ 28, 36.

Plaintiffs judicially admit that they are solely "plant-based" entities, and thus, they lack standing to contest Section 433.0415 "Labeling cell-cultured products" and any reference to "cell-cultured products" in Section 431.0805 because "cell-cultured products" are irrelevant to both Tofurky or PBFA's mission and food products. Accordingly, the Court should find that both Tofurky and PBFA lack standing as to Sections 433.0415 and 431.0805 as it relates to "cell-cultured products."

### 7.   Plaintiffs do not have standing to bring claims on behalf of third parties.

To the extent that Plaintiffs are attempting to make third party claims, they are barred from doing so. Plaintiffs repeatedly make allegations on behalf of "companies" generally, or third parties lacking the requisite standing to bring claims against Defendants. *Id*. ¶¶ 13, 19, 27, 45. The United States Supreme Court has created an exception to the general Article III requirement in the U.S. Constitution that a litigant must assert his own injury: litigants may assert the rights of third parties when (1) the litigant has "a close relationship" with the third party; and (2) some

"hindrance" affects the third party's ability to protect her own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004); *see also Powers v. Ohio,* 499 U.S. 400, 411 (1991).

Such is not the case here as this is not a class action suit, and Plaintiffs do not have the requisite "close relationship" with all other third party "companies" that could possibly be affected by the Amendment to assert claims on behalf of *all* companies. Therefore, this Court should dismiss any claims on behalf of unnamed third parties for lack of standing.

### B.  PLAINTIFFS' CLAIMS ARE NOT RIPE.

#### 1.  HHSC has not adopted "rules" to enforce the Amendment yet.

A claim is ripe, *i.e.*, "fit for judicial decision," if it presents a pure legal question requiring no further factual development. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586–87 (5th Cir. 1987). If a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is unripe. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (citation omitted).

Plaintiffs contend they have "presented a case of actual controversy" and that "absent injunctive and declaratory relief," the Amendment "will . . . expose them to substantial risk of prosecution." Amended Compl ¶¶ 92, 140. Plaintiffs also claim that "Tofurky is likely to experience other serious harms" and that "[t]he cost to allow otherwise, both in terms of financial and human resources and harm to budding companies' bottom lines and goodwill, would be astronomical." *Id*. ¶¶ 72, 97.

As previously stated, *supra* at 3, 11, 12, Executive Commissioner Young has not adopted enforcement rules as to the Amendment yet and DSHS has taken no enforcement measures against Plaintiffs. Accordingly, Plaintiffs' claims are therefore premature and not ripe.

### 2.   Any claims related to "cell-cultured products" are premature and not ripe.

In addition to lacking standing as to "cell-cultured products," Plaintiffs' challenge to labeling "cell-cultured products" is premature because as Plaintiffs allege, there is no current USDA regulation or other federal law for cultivated meat from livestock, poultry, or catfish. *Id*. ¶ 56. Plaintiffs also allege that cell-cultivated products are not even sold in grocery stores yet. *Id*. ¶¶ 9, 54. Therefore, any of Plaintiffs' allegations or claims related to "cell-cultivated products" and "cell-cultivated meats" are not ripe and should be dismissed.

In fact, none of Plaintiffs' claims are presently ripe for resolution. Because Plaintiffs have not plausibly alleged any harm—actual or imminent—Plaintiffs' theories of harm are entirely "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *Thomas*, 473 U.S. at 580–81.

### C.  DEFENDANTS ARE ENTITLED TO SOVEREIGN IMMUNITY.

The Eleventh Amendment deprives a federal court of jurisdiction to hear a suit against the State of Texas, regardless of the relief sought, unless sovereign immunity is expressly waived, or Congress has abrogated it. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). A suit against a state official in his or her official capacity is effectively a suit against the state. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As a preliminary matter, then, any Section 1983 claim or request for declaratory relief against Defendants in their official capacities is barred by sovereign immunity unless an exception applies. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citation omitted).

Under the *Ex parte Young* exception, sovereign immunity may be overcome when a suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an

alleged ongoing violation of the federal constitution." *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013). Plaintiffs cannot show this exception applies for several reasons.

First, Defendants lack a sufficient connection to enforcement of the Amendment. "*Ex parte Young* allows suits for injunctive or declaratory relief against state officials [in their official capacities], provided they have sufficient 'connection' to enforcing" a state action that allegedly violates federal law. *In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020) (citations omitted), *cert. granted, judgment vacated as moot sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021). If there is no such connection to enforcement, "the suit is effectively against the state itself and thus barred by the Eleventh Amendment and sovereign immunity." *Id.* (citations omitted).

To have the requisite connection to enforcement, an official must have more than "the general duty to see that the laws of the state are implemented." *City of Austin v. Paxton*, 943 F.3d 993, 999–1000 (5th Cir. 2019); *Ostrewich v. Tatum*, 72 F.4th 94, 100 (5th Cir. 2023) (First Amendment challenger could not rely on Secretary of State's "broad duties to oversee administration of Texas's election laws."). Rather, the official must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (citation omitted). This means the analysis is "provision-by-provision": The officer must enforce "the particular statutory provision that is the subject of the litigation." *Id.* (citation omitted); *see also Mi Familia Vota v. Abbott*, 977 F.3d 461, 467–68 (5th Cir. 2020). "'[E]nforcement' means 'compulsion or constraint.'" *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (quoting *City of Austin*, 943 F.3d at 1000). "If the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Id.* (citing *Air Evac EMS, Inc. v.*

*Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)). In sum, if the requisite connection to enforcement has not been sufficiently demonstrated, the party in question is not a proper defendant. *Id*.

Here, Plaintiffs do not plead facts indicating that any of the Defendants are tasked with "enforcement" of the Amendment, within the meaning of *Ex parte Young*. Plaintiffs do not indicate what "enforcement" actions, if any, Governor Abbott, Attorney General Paxton, Commissioner Shuford, and Executive Commissioner Young could take against them. *See City of Austin*, 943 F.3d at 1000. Defendants have not overtly threatened any enforcement, and any implied threat of "enforcement" by Defendants alleged by Plaintiffs is certainly not *imminent*. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (*Ex parte Young* permits enjoinment when officers "who threaten and are about to commence proceedings, either of a civil or criminal nature"). The "Article III standing analysis and *Ex parte Young* analysis 'significant[ly] overlap.'" *City of Austin*, 943 F.3d at 1002. Nothing alleged has "intimat[ed] that formal enforcement was on the horizon" based on a specific Defendants' conduct. *NiGen*, 804 F.3d at 392. Thus, absent any actual imminent compulsion, Plaintiffs cannot invoke *Ex parte Young* against the Defendants.

Even had Plaintiffs alleged that Commissioner Shuford or Executive Commissioner Young are proper defendants, *Ex parte Young* is *still* not applicable because there is no ongoing violation of federal law. A complaint must demonstrate that the defendant is *currently violating* federal law, not that they have done so in the past or may do so in the future. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015); *see also Green v. Mansour,* 474 U.S. 64, 71–73 (1985). Plaintiffs plead no facts to show that Commissioner Shuford or Executive Commissioner Young are actively violating any of Plaintiffs' rights. Plaintiffs generally plead that the Amendment violates various federal laws, but Plaintiffs fail to state a claim for violation of any federal law,

barring application of the *Ex parte Young* exception to Plaintiffs' claims.

Plaintiffs' requested relief also does not fall within the *Ex parte Young* exception because seeking injunctive relief ostensibly prevents Defendants from implementing the Amendment, *see* Amended Compl. at 36, Plaintiffs improperly seek to "'control an officer in the exercise of his [or her] discretion.'" *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 242 (5th Cir. 2020) (citation omitted). Under *Ex parte Young*, a federal court "cannot control the exercise of the discretion of an officer. It can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action." 209 U.S. 123, 158 (1908).

If, as here, "a statute, regulation, or policy leaves it to . . . [an] agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary." *Richardson*, 978 F.3d at 242 (quoting *St. Tammany Par. ex rel. Davis v. FEMA*, 556 F.3d 307, 323 (5th Cir. 2009)). Because the injunctive relief sought seeks to restrain the exercise of discretion, Plaintiffs cannot invoke *Ex parte Young*.

Even if this Court were to find *Ex parte Young* applicable, the relief sought would be impermissible. Statewide relief would be especially improper here because Plaintiffs seek an overly vague and overbroad injunction. An injunction is considered "overly vague if it fails to satisfy the specificity requirements set out in Rule 65(d)(1), and it is overbroad if it is not narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order as determined by the substantive law at issue." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016). Additionally, "[i]njunctions must be narrowly tailored within the context of the substantive law at issue to address the specific relief sought." *E.T. v. Paxton*, 19 F.4th 760, 769 (5th Cir. 2021). Plaintiffs requested statewide injunction is not narrowed to the issues raised in this lawsuit and is thereby

impermissible. Accordingly, Defendants are entitled to sovereign immunity, and all claims should be dismissed.

### III. PLAINTIFFS FAIL TO STATE ANY CLAIM AGAINST DEFENDANTS.

#### A. THE DECLARATORY JUDGMENT ACT DOES NOT CREATE A CAUSE OF ACTION.

The Declaratory Judgment Act is not a cause of action. It is "not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see also Sid Richardson Carbon & Gasoline Co. v. Interenergy Res. Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996). A request for a declaratory judgment is not a substantive claim. Accordingly, to the extent Plaintiffs bring standalone claims under the Declaratory Judgment Act, they should be dismissed for failure to state a claim.

#### B. PLAINTIFFS FAIL TO STATE AN EXPRESS PREEMPTION CLAIM.

Plaintiffs fail to allege a viable express preemption claim. Instead, they merely allege that the Food, Drug, and Cosmetic Act ("FDCA") "expressly preempts the [Amendment's] disclosure requirements" without naming any specific provisions of the FDCA that preempt the Amendment's requirements. Amended Compl. ¶ 103. They also claim that the Amendment "frustrates Congress's intent to create a uniform labeling scheme," and that the Amendment "conflicts with, is expressly preempted by, and otherwise impedes the accomplishment and execution of the full purposes and objectives of federal law." *Id*. ¶¶ 104-106.

Plaintiffs' inability to state factual allegations that communicate to Defendants what, if any, facts they have to support an express preemption claim, necessitates the dismissal of this claim. While the Court must accept all factual allegations as true, the Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP*

*Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

However, in an effort to clarify the issues before the Court, Defendants will discuss how the FDCA interacts with the Amendment to show that the FDCA and FDA do not preempt the Amendment. The Supreme Court emphasized:

> [the Court's] inquiry into the scope of a statute's pre-emptive effect is guided by the rule that [t]he purpose of Congress is the ultimate touchstone in every pre-emption case. Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose. If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains. Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law. When addressing questions of express or implied pre-emption, we begin our analysis with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Altria Grp., Inc. v. Good*, 555 U.S. 70, 76–77 (2008) (internal citations omitted) (cleaned up).

Plaintiffs' express preemption claim is brought as a means to distract the Court. To date, there is no statement of identity for "plant-based" or "cell-cultivated" meats. Plaintiffs allege that under the FDCA, "a state law governing the 'common or usual' product name is expressly preempted" without stating which section of the FDCA expressly preempts the Amendment. Amended Compl. ¶ 70.

While the FDCA has an express preemption provision, the contours of that provision barely touch Plaintiffs' claims for food labeling these products as Plaintiffs' currently allege. Moreover, it is Plaintiffs' burden to establish that any federal provisions expressly preempt the Amendment, which has not been met by failing to provide which sections of the FDCA specifically preempt the Amendment or by identifying Congressional intent for "common or usual" products that have not been identified with "statements of identity" to preempt state statutes for "plant-based" or "cell-cultivated" meat product labels.

The FDCA "express preemption" provision, or 21 U.S.C. § 343-1(a)(3), states, "Except as provided in subsection (b), no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by section 343(b), 343(d), 343(f) ("Prominence Provision"), 343(h), 343(i)(1), or 343(k) of this title that is not identical to the requirements of such section…." Within those provisions, the only potentially applicable provisions are: 343(f) and 343(i)(3).

| 343(f) | **PROMINENCE OF INFORMATION ON LABEL** <br> "A food shall be deemed to be misbranded . . . [i]f any word, statement, or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." |
| --- | --- |
| 343(i)(3) | **LABEL WHERE NO REPRESENTATION AS TO DEFINITION AND STANDARD OF IDENTITY** <br> "A food shall be deemed to be misbranded . . . [u]nless its label bears (1) the common or usual name of the food, if any there be, and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient and if the food purports to be a beverage containing vegetable or fruit juice, a statement with appropriate prominence on the information panel of the total percentage of such fruit or vegetable juice contained in the food; except that spices, flavorings, and colors not required to be certified under section 379e(c) of this title [1] unless sold as spices, flavorings, or such colors, may be designated as spices, flavorings, and colorings without naming each. To the extent that compliance with the requirements of clause (2) of this paragraph is impracticable, or results in deception or unfair competition, exemptions shall be established by regulations promulgated by the Secretary." |

Neither of these provisions preempt or conflict with the Amendment. The FDCA Prominence Provision only states that the label must be "prominently placed." *See* 21 U.S.C. § 343(f). However, the Amendment states that the label must bear "in prominent type equal to or

greater in size than the surrounding type and in close proximity to the name of the product" one of the listed terms, including "analogue", "meatless," etc. The FDCA Prominence Provision does not conflict with the Amendment's provision because the Amendment discusses the size of the font while the FDCA Prominence Provision regulates placement generally on the product.

Further, Section 343(i)(3) only states that the label list the "common or usual name of the food," which has not even been firmly established for "plant-based" or "cell-cultivated" meats. Therefore, this provision is inapposite.

Because Plaintiffs have failed to allege facts and cite to specific provisions of the FDCA and state how they actually expressly preempt the Amendment, Plaintiffs fail to state an express preemption claim, and this claim should be dismissed.

## C.  THE SUPREMACY CLAUSE IS A RULE OF DECISION, NOT A SOURCE OF A FEDERAL RIGHT.

Plaintiffs' Supremacy Clause claim is not a cause of action. The Supremacy Clause is a rule of decision, not a source of a federal right. "[T]he Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (internal quotations and citations omitted); *see also Jefferson Cmty. Health Care Ctrs, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 626 (5th Cir. 2017). Rather, it merely "creates a rule of decision." *Armstrong*, 575 U.S. at 324. As the Supreme Court has explained, the Supremacy Clause instructs courts to "not give effect to state laws that conflict with federal laws." *Id.* In other words, state law cannot "violate" the Supremacy Clause; instead, the Supremacy Clause merely "instructs courts what to do when state and federal law clash." *Id.* at 325–26. Plaintiffs' Supremacy Clause claim should therefore be dismissed.

### D.  PLAINTIFFS DO NOT ASSERT COGNIZABLE SECTION 1983 CLAIMS.

Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105 (1989). "Section 1983 speaks in terms of 'rights, privileges, or immunities,' not violations of federal law." *Id.* at 106. "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

Plaintiffs allege violations of the Due Process Clause, Dormant Commerce Clause, and First Amendment rights under Section 1983. *See generally*, Amended Compl. However, as will be discussed, *infra* at 24–37, Plaintiffs have not sufficiently alleged a violation of any of these rights and specifically, that any of the named Defendants violated these federal laws. Thus, all of Plaintiffs' Section 1983 claims should be dismissed.

### 1.  Plaintiffs fail to state a claim under the Dormant Commerce Clause.

Plaintiffs fail to state a Dormant Commerce Claim because Plaintiffs fail to allege facts to show that the Amendment's purpose or effect are discriminatory towards out-of-state competitors.

Plaintiffs claim that the Amendment's "purpose and effect are to protect in-state Texas animal-based meat producers from out-of-state competitors who produce plant-based and cultivated meat." Amended Compl. ¶ 110–11. They further allege that the "disclosure requirements" "confe[r] a benefit on in-state meat producers requiring burdensome and expensive disclosure requirements and necessary changes to marketing and labeling that are only imposed on plant-based and cultivated-meat producers, the vast majority of which are outside of Texas."

*Id*. ¶ 111.

Plaintiffs claim the effect of the Amendment would "cost the company millions of dollars to change labels and marketing representations," "prevent the company from accurately communicating to consumers the nature and contents of its products—what the products taste like, what they're made from, what they do and do not contain, and how to use them," and "prevent companies from selling and distributing plant-based meat products nationwide—regardless of whether they even intend for them to be sold to Texas consumers." *Id*. ¶ 91.

"A statute violates the dormant Commerce Clause where it discriminates against interstate commerce either facially, by purpose, or by effect." *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007). "In this context, 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007) (internal citations omitted). If the statute is found to impermissibly discriminate, it can be upheld if the state can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest. *Id*. at 339. (citations omitted).

The party challenging a statute has the burden of proving the discriminatory purpose under the Commerce Clause. *Allstate Ins. Co.*, 495 F.3d at 159. The Supreme Court has emphasized that the following factors are "relevant in determining whether purposeful discrimination has animated a state legislature's action: (1) whether a clear pattern of discrimination emerges from the effect of the state action; (2) the historical background of the decision, which may take into account any history of discrimination by the decisionmaking body; (3) the specific sequence of events leading up the challenged decision, including departures from normal procedures; and (4) the legislative or administrative history of the state action, including contemporary statements by

decisionmakers." *Id*. at 160 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). "Legislators' awareness of a discriminatory effect 'is not enough: the law must be passed <u>because of</u>' that discriminatory effect. The challenger must show that the discriminatory effect was 'a substantial or motivating factor' leading to the enactment of the statute. If the challenger meets that burden, defendants must 'demonstrate that the law would have been enacted without this factor.'" *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 945 F.3d 206, 214 (5th Cir. 2019) (internal citations omitted) (emphasis supplied).

In this case, Plaintiffs have not met their burden of establishing a discriminatory purpose under the Commerce Clause. *Tesla, Inc. v. La. Auto. Dealers Ass'n*, No. CV 22-2982, 2023 WL 4053438, at *25 (E.D. La. June 16, 2023). In applying *The Village of Arlington Heights* factors, Plaintiffs have not alleged any facts to show a clear pattern of discrimination that emerges from the Amendment's effect because all "plant-based" and "cell-cultivated" meat producers in and out-of-state are treated equally. All must label their foods in the same fashion. Further, all in-state traditional meat producers must abide by Texas statutes in labeling their products as well. Plaintiffs claim that "the State of Texas has bowed to pressure from cattle industry lobbyists," but this is entirely speculative and lacks any factual support. Amended Compl. ¶ 20.  Plaintiffs have not cited to any specific testimony or documents that would support their discrimination claim. Moreover, Plaintiffs have completely failed to allege facts to show that traditional meat companies are benefitting from out-of-state and in-state "plant-based" and "cell-cultivated" meat companies having to follow the Amendment's requirements.

Second, Plaintiffs have not alleged any facts to show that the Texas Legislature has a history of discriminating against "plant-based" and "cell-cultivated" meat producers. It would be nearly impossible to show such a history of discrimination as "plant-based" and "cell-cultivated"

meats are a new development in food production and legislative intent shows that the Texas Legislature enacted this Amendment because of the novelty of these types of food products.[13] Plaintiffs attempt to apply the Oklahoma Cattlemen's Association's testimony to the Texas Legislature generally, but this shows no discriminatory animus or discrimination on behalf of the Texas Legislature. Amended Compl. ¶ 77. Nor have Plaintiffs demonstrated that Texas has departed from its normal procedures in enacting this Amendment—the Amendment went through the traditional legislative process of enactment and was passed almost unanimously by the House[14] and Senate.[15] The Legislature's intent is transparent and unambiguous as it shows that with "recent technological advancements [that] have given the ability for companies to create food products from non-traditional sources that mimic traditional sources of protein, . . . it is important for the consumer to understand the nature of the products they are purchasing to feed themselves and their families."[16]

Importantly, as the Fifth Circuit recently recognized, for a law to be found discriminatory under the Commerce Clause, it "must be passed <u>because of that discriminatory effect</u>." *Wal-Mart Stores, Inc.*, 945 F.3d at 214 (emphasis supplied). Plaintiffs wholly fail to show *any* discriminatory intent or effect in the passing of the Amendment let alone the requisite "substantial or motivating factor leading to the enactment" of the Amendment. *Id*.

Here, Plaintiffs claim that the Amendment will cost them and other companies "millions" to change labels to market their products and that it will "prevent companies" from selling and distributing plant-based meats nationwide. Amended Compl. ¶ 91. These claims are far-fetched as

---

[13] S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/analysis/pdf/SB00664F.pdf.

[14] H. Rep, 88th Sess., 2724-25 (Tex. 2023), https://journals.house.texas.gov/hjrnl/88r/pdf/88RDAY53FINAL.PDF.

[15] S. Rep. 88th Sess., 1097 (Tex. 2023), https://journals.senate.texas.gov/sjrnl/88r/pdf/88RSJ04-20-F1.PDF.

[16] S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/analysis/pdf/SB00664F.pdf.

modifying a label on a product is a matter of editing the label and printing these new labels for food sold in Texas. Nothing will prevent Plaintiffs from modifying its labels for these foods in Texas and then labeling them the same or with slight modifications in other states. Any incidental monetary cost is insufficient to support a Dormant Commerce discrimination claim because the Supreme Court recently held that even when the majority of the compliance costs will be borne by out-of-state companies, the Dormant Commerce Clause is not offended. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 363, 367 (2023) (upholding a California statute that bans "in-state sale of certain pork products derived from breeding pigs confined in stalls so small they cannot lie down, stand up, or turn around" despite the majority of the California statute's compliance costs being initially borne by out-of-state firms.). The Supreme Court emphasized that "[i]n our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior." *Id*. at 374 (emphasis supplied).

Under the Amendment, Plaintiffs are also not prevented from communicating the nature and contents of its products to consumers, as they allege. Amended Compl. ¶ 91. Rather, the Amendment will strengthen customers' understanding of the contents and nature of the "plant-based" and "cell-cultivated" meat products. And as Plaintiffs have alleged, plant-based companies, more than anyone, want their customers to know that they are purchasing non-traditional meat. *See Id*. ¶ 42 ("[P]roducers of plant-based meat alternatives do not want their products to be mistaken for animal-based counterparts, lest their products lose their primary appeal—that they are meat options not made from animals.").

Accordingly, because Plaintiffs failed to allege facts to support a discrimination claim under the Dormant Commerce Clause, this claim must be dismissed.

## 2. Plaintiffs similarly fail to state an excessive burden Dormant Commerce Clause claim.

The Amendment also passes the *Pike* balancing test because health and safety are well-established legitimate local interests. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Plaintiffs have not stated an excessive burden claim under the Dormant Commerce Clause but instead continue to make broad, vague allegations claiming that the Amendment will increase costs to consumers, create a "logistical nightmare in distribution channels," and substantially burden the national and international sale of plant-based foods. *Id.* ¶¶ 118-124. They allege that the burdens imposed by the law exceed any legitimate local benefit. *Id.* ¶ 124. Plaintiffs claim that "no non-biased, empirical evidence exists to support a presumption that consumers are confused by the marketing and labeling of plant-based meat products . . .," Amended Compl. ¶ 116, and that this somehow demonstrates that Texas does not have a legitimate local interest.

To state a claim for excessive burden, a plaintiff must allege that "[i]f the statute does not discriminate, then the statute is valid unless the burden imposed on interstate commerce is 'clearly excessive' in relation to the putative local benefits." *Pike*, 397 U.S. at 142. "Laws that 'merely impose[ ] an incidental burden on interstate commerce . . . face[ ] much smoother sailing' than those that facially discriminate against interstate commerce." *Tesla, Inc.*, 2023 WL 4053438, at *24 (quoting *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 325 (5th Cir. 2022).

Even if this Court were to find that the Amendment impermissibly discriminates against out-of-state non-traditional meat producers (which it does not), the Amendment should be upheld because Texas has no other means of advancing its legitimate local interest of protecting Texans' health and safety. *See United Haulers Ass'n, Inc.*, 550 U.S. at 343 (emphasizing that "[l]aws favoring local government, by contrast, may be directed toward any number of legitimate goals unrelated to protectionism."). The Texas Legislature is entitled to enact statutes that will protect

the health and safety of its citizens, a long-established legitimate and important local interest. *Gen.*
*Motors Corp. v. Tracy*, 519 U.S. 278, 306 (1997) (internal citations omitted) (finding that health
and safety were important local interests in natural gas regulations and emphasizing that "[The
Supreme Court has] consistently recognized the legitimate state pursuit of such interests as
compatible with the Commerce Clause, which was 'never intended to cut the States off from
legislating on all subjects relating to the health, life, and safety of their citizens, though the
legislation might indirectly affect the commerce of the country.'").

Texas indeed has a legitimate local interest in protecting the health and safety of its citizens
and has no other means of protecting its citizens from misleading and harmful labeling than to
enact an Amendment clarifying the law as to food labeling in this burgeoning market of non-
traditional meat sources. Because the "plant-based" and "cell-cultivated" meat market is newer
and growing rapidly, Texas owes it to its citizens to enact laws that will protect its citizens from
misleading food labels as to "plant-based" and analogue meats.

Because Plaintiffs have failed to allege facts to support an excessive burden claim, it must
be dismissed.

### 3. Plaintiffs' Due Process claims fail because the Amendment is not unconstitutionally vague.

The constitutional vagueness claim is wholly insufficient. Plaintiffs base their Due Process
constitutional vagueness claim on one allegation— that the Amendment is "unclear" as to what
the "name of the product" means and where "producers must display the required disclosure."
Amended Compl. ¶ 89.

"[P]erfect clarity and precise guidance have never been required even of regulations that
restrict expressive activity." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1891 (2018) (alteration
in original) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989)). Instead, "[t]he

Fourteenth Amendment's guarantee of Due Process proscribes laws so vague that persons 'of common intelligence must necessarily guess at [their] meaning and differ as to [their] application.'" *Women's Med. Ctr. of Nw. Hous. v. Bell,* 248 F.3d 411, 421 (5th Cir. 2001) (alterations in original) (quoting *Smith v. Goguen,* 415 U.S. 566, 572 n.8 (1974)). "A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *Id.* at 421 (citing *Grayned v. City of Rockford,* 408 U.S. 104, 108–9 (1972)). An act does not fail this minimal standard because it did not specifically define common terms like "name of the product" or state where required disclosures about the name of a product should be displayed.

The Amendment is not unconstitutionally vague because it does not define "name of the product." Amended Compl. ¶ 89. A provision is not unconstitutionally vague just because "it requires a person to conform his conduct to an imprecise but comprehensible normative standard"; there has to be "no standard of conduct . . . specified at all." *Goguen,* 415 U.S. at 578. Any company or consumer would know that the "name of the product" is the language most prominently displayed on the front of the container. Consumers in a grocery store are not confused about the name for "Frosted Flakes," "Trix—Minis," or "Lucky Charms S'mores" because they are the largest font on the container, closely printed together, and on the front-facing side of the container.

Nor is it "unclear" where "producers must display the required disclosure" because the Amendment defines "close proximity." *See* Section 431.0805. Under the Amendment, "close proximity" is defined as "(A) immediately before or after the name of the product; (B) in the line of the label immediately before or after the line containing the name of the product; or (C) within the same phrase or sentence containing the name of the product." *Id*.

Far from creating a "trap [for] the innocent," *Grayned,* 408 U.S. at 108, a common term like "name" of a product and explicitly defining where to place the required information on the food label gives a more-than "reasonable opportunity to know what conduct is prohibited," *Bell,* 248 F.3d at 421.

Because ordinary persons are perfectly capable of understanding the meaning of the term "name of the product" and the definition of "close proximity," Plaintiffs' vagueness challenge to the Amendment fails.

> ### 4. The "speech" in question is commercial speech which withstands intermediate scrutiny under First Amendment analysis.

The Amendment is quintessential commercial speech that should be upheld under the *Central Hudson* analysis. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,* 447 U.S. 557, 561 (1980). Plaintiffs allege that they have the right to engage in "truthful speech and to control the content of that speech." Amended Compl. ¶ 131. Plaintiffs claim that the Amendment is "a content-based regulation of speech" and that there is "no substantial state interest to support this regulation . . .." *Id.* ¶¶ 132, 136.

Commercial speech is defined as, "expression related solely to the economic interests of the speaker and its audience," *Houston Balloons & Promotions, LLC v. City of Houston*, 589 F. Supp. 2d 834, 847 (S.D. Tex. 2008) (citing *Central Hudson Gas & Elec. Corp.*, 447 U.S. at 561; *see also Va. Pharm. Bd. v. Va. Citizens Consumer Council,* 425 U.S. 748 (1976)), and is "speech that does no more than propose a commercial transaction." *Id.* (quoting *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.,* 413 U.S. 376, 385 (1973) (internal quotations omitted). Here, the speech which Plaintiffs allege is restricted is related solely to the economic interests of the speakers (Tofurky, a national "plant-based" meat company that wants its sales to thrive regardless of the effect on consumers and PBFA, a non-profit association created by Tofurky to advance

Tofurky and about 200 other companies' profits) and its audience (consumers); its commercial nature is uncontested by Plaintiffs. Amended Compl. ¶ 52 ("This Law commercially harms the plant-based meat industry—effectively making nationwide sales of plant-based meats impossible—and in turn, protects conventional meat producers from competition.").

"Commercial speech that is not false or deceptive and does not concern unlawful activities, however, may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638 (1985) (citing *Central Hudson Gas*, 447 U.S. at 566). If the speech in question *is* misleading or related to unlawful activities, the inquiry ends, and there can be no constitutional objection to restricting the commercial message. *Central Hudson Gas*, 447 U.S. at 563. It is only if the message is *not* misleading *or* related to unlawful activity wherein an inquiry into a substantial state interest would be warranted. *Id.*

### i. The speech in question is misleading and not protected.

Misleading speech is defined as statements which "deceive or are inherently likely to deceive." *Turtle Island Foods, S.P.C.*, 65 F. at 220 (citing *Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*, 916 F.3d 483, 488 (5th Cir. 2019)).

Here, Plaintiffs repeatedly assert their right to engage in truthful commercial communications. *See generally*, Amended Compl. ¶¶ 13, 95, 131. To that end, Plaintiffs unsurprisingly attempt to circumvent the *Central Hudson Gas* standard by cyclically arguing that the speech they wish to convey is truthful, thereby inferring it must not be misleading. This fails because truthful statements can still be misleading.

Plaintiffs also repeatedly allege that because there are federal and Texas laws that prohibit "misleading" labeling and because no empirical studies have been done to show that consumers are confused about plant-based food labels, Plaintiffs' labels are therefore not misleading. *Id.* ¶¶

4, 43, 49, 59, 83, 84, 116. However, these arguments fail to disprove the misleading nature of foods labeled as "meat" that wholly consist of plants or cell-cultivated meats. Tofurky and PBFA's labels can and do mislead traditional meat-eating customers into buying their product instead of the intended beef or chicken meat product, the impetus for enacting the Amendment. Without the Amendment, Plaintiffs might include terms like "plant-based" or "analogue" (as they have in the illustrations in their Complaint) but fail to enlarge the print so that customers can easily identify that the "burger" or "chorizo" is not meat from an actual bovine or swine. This is inherently misleading and not constitutionally-protected speech.

### ii. The speech in question concerns unlawful activity.

In *Ford Motor Co. v. Tex. Dep't of Transp.*, the Fifth Circuit rejected the Plaintiffs' argument that for commercial speech to be unlawful, "it must be inherently unlawful or otherwise prohibited by some law independent from [the challenged statute]." 264 F.3d 493, 505 (5th Cir. 2001). "[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Ohralik*, 436 U.S. at 456 (citing *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 502 (1949)). Further, "the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Ohralik*, 436 U.S. at 456. As *Giboney* explained, "[s]uch an expansive interpretation of the constitutional guaranties of speech and press would make it practically impossible ever to enforce laws against agreements in restraint of trade as well as many other agreements and conspiracies deemed injurious to society." 336 U.S. at 502.

Such is the case here. Texas has sought to prioritize clarity and transparency to consumers when purchasing "meat" products in the grocery store.[17] In so doing, Texas has specified—via the Amendment—parameters within which "plant-based" and "cell-cultivated" meat producers must operate.[18] That Plaintiffs seek to continue engaging in communications that now exceed those parameters is in and of itself unlawful and therefore the commercial speech analysis should go no further.  However, should the Court find that Plaintiffs' speech is not misleading nor relating to unlawful activity, the Amendment serves a substantial government interest and should be upheld under an intermediate scrutiny analysis.

### iii. The Amendment serves a substantial or important governmental interest only through means that directly advances that interest.

The state has a "general interest in protecting consumers and regulating commercial transactions." *Ohralik*, 436 U.S. at 460. In fact, the Supreme Court has long recognized the "premise that legislative power to regulate trade and commerce includes the power to determine what groups, if any, shall be regulated, and whether certain regulations will help or injure businessmen, workers, and the public in general." *Giboney*, 336 U.S. at 497. In passing the Amendment—with overwhelming bipartisan support—the Texas Legislature emphasized its concerns for the health and safety of Texan citizens. The Legislature clearly stated its intent in drafting and passing the Amendment to the Texas Health and Safety Code—"[t]he increase in variety at the food counter can be a positive for consumers, but it is important for the consumer to understand the nature of the products they are purchasing to feed themselves and their families" and "[the Amendment] adds clarity and transparency for protection to Texas consumers by giving

---

[17] S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/analysis/pdf/SB00664F.pdf.
[18] Tex. S.B. 664, 88th Sess. Bill, https://capitol.texas.gov/tlodocs/88R/billtext/pdf/SB00664F.pdf (last visited Nov. 14, 2023).

labeling guidelines for products to be labeled prominently and uniformly to indicate the product being made from alternative proteins."[19]

Protecting the health and safety of citizens is a well-established important and substantial government interest. *See Gen. Motors Corp.*, 519 U.S. at 306 (internal citations omitted) (finding that health and safety were important local interests). The Texas Legislature enacted the Amendment to protect Texans from purchasing and ingesting foods that could either be harmful or against the culinary interests of the patron.

Plaintiffs' commercial speech is appropriately restricted by the Amendment because the State of Texas has no other means than implementing laws that will inform Texans in stores buying weekly groceries about the contents in the packages than to direct companies like Tofurky and PBFA into creating labels that will educate the public about the food they are actually purchasing. No disclaimer could meet this need. In fact, most disclaimers are so small that consumers can never even read the fine print. To that end, when one "uses the economic power which he has over other men and their jobs to influence their action, he is doing more than exercising the freedom of speech protected by the First Amendment." *Thomas v. Collins*, 323 U.S. 516, 543 (1945) (Douglas, J., concurring).

The Amendment is a proper restriction on commercial speech and withstands intermediate scrutiny as outlined in *Central Hudson*. Accordingly, this Court should find that the First Amendment is not offended and uphold the Amendment.

## PRAYER

For the foregoing reasons, Greg Abbott, in his official capacity as Governor of the State of Texas, Dr. Jennifer A. Shuford, in her official capacity as Commissioner of Texas Department of

---

[19] S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/analysis/pdf/SB00664F.pdf.

State Health Services, Cecile Erwin Young, in her official capacity as Executive Commissioner of the Texas Department of Health and Human Services Commission, and Ken Paxton, in his official capacity as Attorney General for the State of Texas, respectfully request that this Court grant Defendants' Motion to Dismiss in its entirety, dismissing all claims against Defendants. Defendants further request all other relief both at law and in equity to which they may be justly entitled, including but not limited to attorney fees and costs.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ *Kirstin M. Erickson*
**KIRSTIN ERICKSON**
Texas Bar No. 24134194
Assistant Attorney General
General Litigation Division
Kirstin.Erickson@oag.texas.gov
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 475-4031
Fax: (512) 320-0667
**COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served electronically through the court's CM/ECF electronic-filing system on this 21st day of November, 2023, to:

Madeline Cohen
The Good Food Institute
1120 Connecticut Ave. NW, Ste. 1080
Washington, DC 20036
(914) 475-0377
Email: madelinec@gfi.org
Admitted Pro hac vice
**Attorney for Plaintiffs**

Michael Swistara
Animal Legal Defense Fund
525 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533
Email: mswistara@aldf.org
Admitted Pro hac vice
**Attorney for Plaintiffs**

Tarak Anada
Jones Walker, LLP
201 St. Charles Avenue, Ste. 4900
New Orleans, LA 70170
(504) 582-8322
Email: tanada@joneswalker.com
**Attorney for Plaintiffs**

Martin Darren Hebel Woodward
Kitner Woodward PLLC
13101 Preston Road
Suite 110
Dallas, TX 75240
(214) 443-4304
Email: martin@kitnerwoodward.com
**Attorney for Plaintiffs**

/s/ *Kirstin M. Erickson*
**KIRSTIN M. ERICKSON**
Assistant Attorney General