IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TURTLE ISLAND FOODS INC. *d/b/a* THE TOFURKY COMPANY and PLANT BASED FOOD ASSOCIATION, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:23-CV-1032-DII |
| GREG ABBOTT, *in his official capacity as Texas Governor*; JENNIFER SHUFORD, *in her official capacity as Commissioner of State Health Services*; CECILE ERWIN YOUNG, *in her official capacity as Executive Commissioner of the Texas Department of Health and Human Services Commission*; and KEN PAXTON, *on behalf of himself and all Texas prosecuting attorneys*, | § § § § § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Defendants Greg Abbott, in his official capacity as Texas Governor; Jennifer Shuford, in her official capacity as Commissioner of State Health Services; Cecile Erwin Young, in her official capacity as Executive Commissioner of the Texas Department of Health and Human Services Commission; and Ken Paxton's, on behalf of himself and all Texas prosecuting attorneys, (collectively, "Defendants") Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. 17). Plaintiffs Turtle Island Foods Inc. d/b/a The Tofurky Company ("Tofurky") and Plant Based Food Association ("PBFA") (collectively, "Plaintiffs") filed a response. (Dkt. 22). Defendants filed a reply. (Dkt. 24). Having considered the parties' briefs, the record, and the relevant law, the Court enters the following order.

## I. BACKGROUND

In the 88th Legislative Session, the Texas Legislature amended the Texas Health and Safety Code (the "THSC") to add provisions concerning food labels for "analogue" and "cell-cultured"

meat products via Senate Bill 663 (the "Amendment"). (Mot. Dismiss, Dkt. 17, at 2). Defendants state that the Amendment "clarifies the labeling requirements for both 'analogue' and 'cell-cultured' products." (*Id.*). Specifically, the Amendment modified Section 431.0805, "Definitions"; Section 431.0082, "Misbranded Food"; and Section 433.0415, "Labeling cell-cultured product" of the THSC. (*Id.*).

Adding a new term to Section 431.0805, "Definitions," the Amendment defines "analogue product" as "a food product derived by combining processed plant products, insects, or fungus with food additives to approximate the texture, flavor, appearance, or other aesthetic qualities or the chemical characteristics of any specific type of egg, egg product, fish, meat, meat food product, poultry, or poultry product." Tex. Health & Safety Code § 431.0805(1). The Amendment also adds a provision in Section 431.0082, "Misbranded Food," which states that a food shall be deemed to be misbranded

> if it is an analogue product of meat, a meat food product, poultry, a poultry product, an egg product, or fish, unless its label bears in prominent type equal to or greater in size than the surrounding type and in close proximity to the name of the product one of the following:
> (1) "analogue";
> (2) "meatless";
> (3) "plant-based";
> (4) "made from plants"; or
> (5) a similar qualifying term or disclaimer intended to clearly communicate to a consumer the contents of the product[.]

Tex. Health & Safety Code § 431.082(d-1). Similarly, the Amendment defines "cell-cultured product" as "a food product derived by harvesting animal cells and artificially replicating those cells in a growth medium in a laboratory to produce tissue," *id.* § 431.0805(2), and adds a provision entitled "Labeling cell-cultured product" that states in relevant part:

> A cell-cultured product must be labeled in prominent type equal to or greater in size than the surrounding type and in close proximity to the name of the product using one of the following:
> (1) "cell-cultured";
> (2) "lab-grown"; or

2

> (3) a similar qualifying term or disclaimer intended to clearly communicate to a consumer the contents of the product.

Tex. Health & Safety Code § 433.0415(b). Further, the Amendment defines "close-proximity" as "(A) immediately before or after the name of the product; (B) in the line of the label immediately before or after the line containing the name of the product; or (C) within the same phrase or sentence containing the name of the product." *Id.* § 431.0805(3). In short, the Amendment requires plant-based and cell-cultivated meat producers to adhere to certain labeling requirements to avoid misbranding their food products under Texas law.

Section 4 of the Amendment "provides that the Executive Commissioner of the [Health and Human Services Commission ("HHSC")] 'shall adopt any rules necessary to implement the changes in law made by the Amendment.'" (Mot. Dismiss, Dkt. 17, at 3 (citing Tex. S.B. 644, 88th Sess. Bill)). HHSC is "still in the process of drafting and adopting rules that [the Department of State Health Services ("DSHS")] and HHSC will use to enforce the Amendment." (*Id.*). However, the Amendment went into effect on September 31, 2023. (*Id.* at 2).

Plaintiff Tofurky "develops, produces, markets, and sells a popular line of 100% plant-based meat products including vegan burgers, meat slices, and sausages in various flavors." (Am. Compl., Dkt. 13, ¶ 24). Tofurky markets and sells its products nationwide, including in Texas. (*Id.*). Plaintiff PBFA is "a nonprofit trade association that represents the leading manufactures and sellers of 100% plant-based foods, including plant-based meat producers." (*Id.* ¶ 28). Of PBFA's over 200 company-members, at least 92 company-members manufacture and sell plant-based meat alternatives. (*Id.* ¶ 29). Tofurky is one such member of PBFA. (*Id.* ¶ 50). PBFA "has developed comprehensive voluntary standards for the labeling of plant-based meat alternatives such as plant-based sausages and burgers." (*Id.* ¶ 30). Both Tofurky's labeling practices and PBFA's labeling standards use qualifying language like "vegan" or "plant-based" alongside terms like "sausage," "nuggets," or "burger." (*Id.* ¶¶ 26, 30). Tofurky's labels and PBFA's labeling standards also strive to comply with

the federal Food, Drug and Cosmetic Act (the "FDCA"), (*id.* ¶50), which categorizes a food product as "misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

On August 31, 2023, Plaintiffs filed their lawsuit in this Court, bringing several claims against Defendants, who Plaintiffs allege are charged with implementing and/or enforcing the Amendment. (Compl., Dkt. 1). Plaintiffs filed an amended complaint on October 10, 2023. (Dkt. 13). In their amended complaint, Plaintiffs allege that the Amendment "relating to the labeling of 'analogue' and 'cell-cultured' products . . . institutes an unreasonably burdensome and protectionist trade barrier that contravenes and is preempted by federal law and imposes vague standards . . . ." (*Id.* at 1). Specifically, Plaintiffs claim that the Amendment (1) is preempted by federal law; (2) violates the Supremacy Clause; (3) violates the dormant Commerce Clause by discriminating against out-of-state producers of meat products; (4) violates the dormant Commerce Clause by imposing excessive burdens on interstate and foreign commerce; (5) violates the Fourteenth Amendment Due Process Clause; and (6) violates the First Amendment. (*Id.* at 29–35). Plaintiffs request that the Court declare the Amendment as unconstitutional both on its face and as applied to Plaintiffs and grant a permanent injunction preventing the enforcement of the Amendment. (*Id.* at 36).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on

the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."

*Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the

complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the

complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d

548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts

'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina*

*Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area*

*Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a

complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for

entitlement to relief—including factual allegations that when assumed to be true 'raise a right to

relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the

complaint, its proper attachments, "documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338

(5th Cir. 2008) (citations and internal quotation marks omitted).

### III. DISCUSSION

A party seeking to challenge the court's subject matter jurisdiction to hear a case may file a

motion under Rule 12(b)(1). *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010

(5th Cir. 1998). When a Rule 12(b)(1) motion is filed in conjunction with other motions under Rule

12, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on

the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Thus, the Court will first

address Defendants' contentions that they are entitled to sovereign immunity, as well as Defendants'

arguments that Plaintiffs lack standing and bring unripe claims.

#### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

#### 1. Sovereign Immunity

The Eleventh Amendment typically deprives federal courts of jurisdiction over "suits against

a state, a state agency, or a state official in his official capacity unless that state has waived its

sovereign immunity or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary & Secondary

Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). However, under the *Ex parte Young* exception to sovereign

immunity, lawsuits may proceed in federal court when a plaintiff requests prospective relief against

state officials in their official capacities for ongoing federal violations. 209 U.S. 123, 159–60 (1908).

Thus, "[t]here are three basic elements of an *Ex parte Young* lawsuit. The suit must: (1) be brought

against state officers who are acting in their official capacities; (2) seek prospective relief to redress

ongoing conduct; and (3) allege a violation of federal, not state, law." *Williams ex rel. J.E. v. Reeves*,

954 F.3d 729, 736 (5th Cir. 2020).

"For the [*Ex parte Young*] exception to apply, the state official, 'by virtue of his office,' must

have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely

making him a party as a representative of the state, and thereby attempting to make the state a party.'" *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019) (quoting *Young*, 209 U.S. at 157); *see also In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020) ("*Ex parte Young* allows suits for injunctive or declaratory relief against state officials, provided they have sufficient 'connection' to enforcing an allegedly unconstitutional law."). Absent such a connection, "the suit is effectively against the state itself and thus barred by the Eleventh Amendment and sovereign immunity." *Id.*

While "[t]he precise scope of the 'some connection' requirement is still unsettled," the Fifth Circuit has stated that "it is not enough that the official have a 'general duty to see that the laws of the state are implemented.'" *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400–01 (5th Cir. 2020) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). And "[i]f the official sued is not 'statutorily tasked with enforcing the challenged law,' then the requisite connection is absent and '[the] *Young* analysis ends.'" *In re Abbott*, 956 F.3d at 709 (quoting *City of Austin*, 943 F.3d at 998). There need only be a "scintilla of enforcement by the relevant state official" for *Ex parte Young* to apply. *City of Austin*, 943 F.3d at 1002 (quotations omitted).

Defendants make several arguments as to why this suit is barred by sovereign immunity. First, Defendants argue that they "lack a sufficient connection to enforcement of the Amendment." (Mot. Dismiss, Dkt. 17, at 17). Specifically, Defendants state that "Plaintiffs do not indicate what 'enforcement' actions, if any, Governor Abbot, Attorney General Paxton, Commissioner Shuford, and Executive Commissioner Young could take against them." (*Id.* at 18). In their amended complaint, Plaintiffs allege that Governor Abbott "has direct authority over executive branch personnel and the officers charged with enforcing the [Amendment]." (Am. Compl., Dkt. 13, ¶ 32). Plaintiffs further argue in their response that Governor Abbott has enforcement authority with respect to the Amendment because he oversees the executive branch and appoints the Executive Commissioner of HHSC. (Resp., Dkt. 22, at 23). However, the THSC does not task Governor

Abbott with the enforcement of the Amendment, and Plaintiffs do not allege that Governor Abbott

has any connection to the Amendment other than his ability to appoint the Executive Commissioner

of HHSC. Therefore, the Court finds that Governor Abbott lacks a sufficient connection to the

enforcement of the Amendment, and Plaintiffs' claims against him are barred by sovereign

immunity. *See Morris*, 739 F.3d at 746 (finding that the governor is not a proper defendant because

the statute at issue did not "specially task" the governor with its enforcement or suggest he will play

any role in its enforcement); *see also Air Evac EMS, Inc. v. Texas, Dep't of Ins., Div. of Workers' Comp.*,

851 F.3d 507, 517 (5th Cir. 2017) ("[A] state governor with a broad duty to uphold state law is not a

proper defendant."). Thus, the Court will dismiss Governor Abbott as a party in this case.

Plaintiffs allege that Attorney General Paxton, along with all prosecuting attorneys, is

"charged with enforcing the [Amendment] as it pertains to both plant-based and cell-cultivated meat

producers." (Am. Compl., Dkt. 13, ¶ 35). As for Executive Commissioner Young, Plaintiffs plead

that she is the head of the Texas Department of Health and Human Services Commission

("HHSC") and that she is "charged with adopting rules necessary to implement the [Amendment]."

(*Id.* ¶ 33). And as for Commissioner Shuford, Plaintiffs plead that she is the Commissioner of the

Texas Department of State Health Services ("DSHS") and is "charged with enforcing the

[Amendment] and referring violations of the [Amendment] for prosecution. (*Id.* ¶ 34).

Section 4 of the Amendment provides that the Executive Commissioner of the HHSC "shall

adopt any rules necessary to implement the changes in law made by the [Amendment]." (Mot.

Dismiss, Dkt. 17, at 3 (citing Tex. S.B. 664, 88th Sess. Bill,

https://capitol.texas.gov/tlodocs/88R/billtext/pdf/SB00664F.pdf)). Chapter 431 of the THSC

provides for several enforcement mechanisms. Under Section 431.047, DSHS "may petition the

district court for a temporary restraining order to restrain a continuing violation" if the violation

"creates an immediate threat to the health and safety of the public." Under Sections 431.048,

431.049, and 431.0495, DSHS can detain, embargo, remove, and recall products that are misbranded "so that the article is dangerous or fraudulent under this chapter." Under Section 431.054, DSHS "may assess an administrative penalty against a person who violates" Chapter 431. Further, Section 431.058 states that the "attorney general at the request of [DSHS] may bring a civil action to recover an administrative penalty under this subchapter." Section 431.0585 provides that "[a]t the request of [DSHS], the attorney general or a district, county, or city attorney shall institute an action in district court to collect a civil penalty from a person who has" misbranded any food in commerce. Finally, Sections 431.059 and 431.060 provide that the "attorney general, or a district, county, or municipal attorney to whom [DSHS] or a health authority reports a violation of this chapter, shall initiate" criminal proceedings for misbranding food products if the "violation is committed with the intent to defraud or mislead."

It is clear from Chapter 431 of the THSC that Attorney General Paxton, Executive Commissioner Young, and Commissioner Shuford have more than a "scintilla of enforcement" when it comes to misbranded food products as the statute tasks each of them with pieces of its enforcement. *City of Austin*, 943 F.3d at 1002. Notably, in their reply, Defendants concede that "DSHS may enforce the [Amendment] and HHSC may adopt rules regarding the enforcement of the [Law.]" (Reply, Dkt. 24, at 15). Further, Defendants concede that the HHSC is currently "in the process of drafting and adopting rules that DSHS and HHSC will use to enforce the Amendment." (Mot. Dismiss, Dkt. 17, at 3). The Court finds that Attorney General Paxton, Executive Commissioner Young, and Commissioner Shuford have a sufficient connection to the enforcement of the Amendment such that the claims against them are not merely claims against the state.

Second, Defendants argue that Plaintiffs fail to allege an ongoing violation of federal law, as required for the *Ex parte Young* exception to apply. (*Id.* at 18). However, the Fifth Circuit has held that "an allegation in a plaintiff's complaint of federal preemption of the law at issue satisfies" the

requirement for an ongoing violation of federal law. *City of Austin*, 943 F.3d at 999 (citing *Air Evac EMS, Inc.*, 851 F.3d at 519 (holding that because the complaint claimed federal law "expressly preempt[ed] the [challenged Texas law] and [sought] an injunction and declaratory judgment," plaintiff claimed "an ongoing violation of federal law and [sought] prospective relief")). Here, Plaintiffs allege in their amended complaint that federal law preempts the Amendment. (Am. Compl., Dkt. 13, ¶ 106). Therefore, the Court finds that Plaintiffs have alleged an ongoing violation of federal law as required for the *Ex parte Young* exception to apply.

Third, Defendants argue that "Plaintiffs' requested relief also does not fall within the *Ex parte Young* exception because seeking injunctive relief ostensibly prevents Defendants from implementing the Amendment." (Mot. Dismiss, Dkt. 17, at 19). Specifically, Defendants claim that Plaintiffs' requested relief improperly seeks to control the exercise of the discretion of an officer. (*Id.* at 19 (citing *Richardson v. Texas Sec'y of State*, 978 F.3d 220 (5th Cir. 2020)). The Court finds this argument unpersuasive. Plaintiffs do not request any relief that would control the exercise of the discretion of Defendants. Rather, Plaintiffs request that "the Court bar the Defendants from enforcing an unconstitutional law." (Resp., Dkt. 22, at 26); *see Ex parte Young*, 209 U.S. 123, 159 (1908) ("An injunction to prevent him from doing that which he has no legal right to do is not an interference with the discretion of an officer.").

Fourth, Defendants argue that even if the Court found *Ex parte Young* applicable, "the relief sought would be impermissible" because "Plaintiffs seek an overly vague and overbroad injunction." (Mot. Dismiss, Dkt. 17, at 19). Defendants fail to explain how an injunction barring the enforcement of an allegedly unconstitutional law is overly vague and broad. The type of injunction sought by Plaintiffs is routinely granted in situations where courts determine that a state law is unconstitutional. For the reasons above, the Court finds that Plaintiffs' claims against Attorney

General Paxton, Executive Commissioner Young, and Commissioner Shuford are not barred by sovereign immunity.

## 2. Tofurky's Standing

Defendants argue that Tofurky does not have standing to bring any of their claims. (Mot. Dismiss, Dkt. 17, at 5). Standing is a component of subject matter jurisdiction, and it is properly raised by a motion to dismiss under Rule 12(b)(1). *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016). The requirement of standing has three elements: (1) injury in fact, (2) causation, and (3) redressability. *Bennett v. Spear*, 520 U.S. 154, 167 (1997). The injury cannot be merely "conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Causation requires that the injury "fairly can be traced to the challenged action of the defendant," rather than to "the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976). Redressability requires that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The party invoking federal subject matter jurisdiction bears the burden of establishing each element. *Ramming*, 281 F.3d at 161. Each element must be supported with the "manner and degree of evidence required at the successive stages of litigation." *Id.*

### a. Tofurky's Standing as to Labeling Requirements for Plant-Based Meat Products

#### i. Tofurky has sufficiently alleged an injury in fact.

In their motion to dismiss, Defendants argue that Tofurky fails to allege an "actual, imminent, particularized harm." (Mot. Dismiss, Dkt. 17, at 8). "In pre-enforcement free speech challenges, 'chilled speech or self-censorship is an injury sufficient to confer standing.'" *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 215 (5th Cir. 2023) (quoting *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021)). Plaintiffs "need not have experienced 'an actual arrest, prosecution, or

other enforcement action' to establish standing." *Barilla*, 13 F.4th at 431 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). "Instead, all [Plaintiffs] must show is that: (1) [they] intend[] to engage in a course of conduct arguably affected with a constitutional interest; (2) that the course of action is arguably proscribed by statute; and (3) that there exists a credible threat of prosecution under the statute." *Turtle Island Foods*, 65 F.4th at 215–16 (citing *Driehaus*, 573 U.S. at 159). As to the third requirement, "courts will assume a credible threat of prosecution in the absence of compelling contrary evidence" when the pre-enforcement challenge is to a recently enacted statute. *Barilla*, 13 F.4th at 432.

In its amended complaint, Tofurky alleges each element of injury-in-fact for a pre-enforcement claim. First, Tofurky alleges that it currently uses FDCA-compliant product labels and corresponding marketing materials and that it plans to continue using labels to market its products. (Am. Compl., Dkt. 13, ¶ 13). The Fifth Circuit has already held in a previous case involving Tofurky that "Tofurky's labels and marketing . . . are just the kind of commercial activity the First Amendment protects." *Turtle Island Foods*, 65 F.4th at 216. Second, Tofurky alleges that their current labels as well as any future labels are arguably proscribed by the Amendment because "it is unclear whether [the Amendment] requires additional or more prominent disclosures." (Am. Compl., Dkt. 13, ¶ 93). While Tofurky already labels and markets its products as "plant-based" or "vegan," (*id.* ¶ 40), the Amendment requires such qualifying terms to be "in prominent type equal or greater in size than the surrounding type and in close proximity to the name of the product," (*id.* ¶ 10 (citing Tex. Health & Safety Code § 431.082(d-1)). The examples of Tofurky's labels in the amended complaint show that Tofurky's products may be considered misbranded under the Amendment. For example, the "Burger" label does include the qualifying term "Plant-Based," but the qualifying term is smaller in size than some of the surrounding type. (*See id.* at 11). Third, Tofurky alleges that it faces a credible threat of prosecution under the statute. Defendants argue that Tofurky must allege that

Defendants have given them notice of a violation in order to show that there is a credible threat of prosecution under the Amendment. (Mot. Dismiss, Dkt. 17, at 11). However, "[w]hen we face a pre-enforcement challenge to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, we will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Turtle Island Foods*, 65 F.4th at 218 (internal citations omitted). Tofurky's amended complaint clearly establishes that the Amendment is a recently enacted law and that the Amendment restricts how plant-based food companies, like Tofurky, can market their products in Texas. Thus, the Court finds that Tofurky has sufficiently alleged an injury.

ii. Tofurky has alleged that its injury is traceable to Defendants.

Defendants further contest whether Tofurky's alleged injury is fairly traceable to Defendants. (Mot. Dismiss, Dkt. 17, at 12). Defendants' main contention on this point is that Defendants have never taken any enforcement action against Tofurky related to the Amendment. (*Id.*). As discussed in the previous section, when a plaintiff brings a pre-enforcement challenge to a recently enacted statute that facially restricts the plaintiff's expression by restricting the class to which the plaintiff belongs, "we will assume a credible threat of prosecution." *Turtle Island Foods*, 65 F.4th at 218. The Amendment has been in effect since September 2023, and the Court has already found above that Attorney General Paxton, Executive Commissioner Young, and Commissioner Shuford have the authority to enforce the Amendment. *See supra*, Section III.A.1. Tofurky's amended complaint sufficiently alleges that the threat of enforcement of the Amendment is traceable to these Defendants.

iii. Tofurky has alleged that its injury would be redressed by a favorable decision by this Court.

Defendants argue that Tofurky's alleged injuries are "non-redressable." (Mot. Dismiss, Dkt. 17, at 12). Defendants base this argument on their claim that Plaintiffs fail to allege an imminent

injury, (*id.*), which the Court has already found to be unpersuasive. Tofurky has alleged that its injury is redressable. If the Court enjoins the Amendment as unconstitutional, either on its face or as applied to Tofurky, Defendants would be unable to enforce it against Tofurky, relieving Tofurky both from the threat of prosecution or enforcement and from having to assume the burden of redesigning its product labels.

**b. Tofurky's Standing as to Labeling Requirements for Cell-Cultured Meat Products**

Although the Court finds that Tofurky has standing to bring claims related to the Amendment's regulation of plant-based meat product labels, Tofurky does not have standing to bring claims related to the Amendment's regulation of cell-cultured meat product labels. Tofurky only alleges that it sells "100% plant-based meat products including vegan burgers, meat slices, and sausages in various flavors." (Am. Compl., Dkt. 13, ¶ 24). Tofurky has not alleged that any injury related to Sections 431.0805 and 433.0415(b) of the Amendment. Accordingly, the Court will dismiss Tofurky's claims related to the Amendment's regulation of cell-cultured meat product labels.

**3. PBFA's Associational Standing as to Labeling Requirements for Plant-Based Meat Products**

Defendants argue that PBFA lacks standing for the same reasons that Tofurky lacks standing. An association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Here, the Court has found that Tofurky, which is a member of PBFA, has standing to sue in its own right. Further, the amended complaint makes clear that PBFA's interests in this lawsuit are germane to PBFA's purpose. PBFA's mission is to support plant-based companies and ensure a level regulatory playing field for their products. (Am. Compl., Dkt. 13, ¶ 28–31). In order to carry

out this mission, PBFA creates voluntary labeling standards to help its members comply with federal law and accurately label their products. (*Id.*). The Amendment frustrates PBFA's efforts to put forth a single voluntary standard that complies with both federal law and the laws of different states. (Resp., Dkt. 22, at 18). Finally, the participation of individual PBFA members is not required. Participation of individual members generally is not required when the association seeks prospective or injunctive relief, as opposed to damages. *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996). Here, Tofurky and PBFA only seek declaratory and injunctive relief; a finding that the Amendment is unconstitutional would not require the participation of any single PBFA member. The Court therefore finds that PBFA has alleged sufficient facts to show standing at this stage of the litigation.

### 4. PBFA's Associational Standing as to Labeling Requirements for Cell-Cultured Meat Products

Like Tofurky itself, PBFA lacks standing to bring claims in regard to the provisions of the Amendment that deal with the labeling of cell-cultured meat products. In its amended complaint, Plaintiffs describe PBFA as "a nonprofit trade association that represents the leading manufactures and sellers of 100% plant-based foods, including plant-based meat producers." (Am. Compl., Dkt. 13, ¶ 28). Nowhere in the amended complaint do Plaintiffs allege that PBFA represents manufacturers and sellers of cultivated meat products. In its response to Defendants' motion to dismiss, Plaintiffs claim that "PBFA has at least one dues-paying member that makes both plant-based and cultivated meat." (Resp., Dkt. 22, at 14). Plaintiffs give no further detail regarding this member and again, any such allegations are completely lacking from the amended complaint. Accordingly, the Court will dismiss PBFA's claims related to the Amendment's regulation of cell-cultured meat product labels.

**5. Ripeness**

Ripeness is a constitutional prerequisite to the exercise of subject matter jurisdiction. *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). It is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). "A case or controversy must be ripe for decision, meaning that it must not be premature or speculative." *Shields*, 289 F.3d at 835. In assessing ripeness, a court must consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), overruled on other grounds by *Califano v. Sanders*, 430 U.S. 99, 105 (1977). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987).

Defendants claim that Plaintiffs' claims are not ripe because Executive Commissioner Young and HHSC have not yet adopted any rules to enforce the Amendment. (Mot. Dismiss, Dkt. 17, at 15). Defendants also note that DSHS has not taken any enforcement action against Plaintiffs. (*Id.*). Plaintiffs respond that there is "nothing in the text of the Amendment [that] requires the adoption of rules before it can be enforced." (Resp., Dkt. 22, at 20). Further, Plaintiffs emphasize that the Amendment "adds to the list of actions that constitute misbranding" under Texas law, and "Texas already includes enforcement mechanisms for misbranding" in the THSC. (*Id.* (citing Tex. Health & Safety Code Ann. §§ 431.0495, 431.054, 431.0585, 431.059, 433.081)).

The Court finds that Plaintiffs' claims are ripe. Defendants' argument that HHSC has not yet adopted rules to enforce the Amendment is unpersuasive when Defendants have acknowledged that there are already several means of enforcement prescribed by the THSC. Further, although Defendants have not threatened Plaintiffs directly with enforcement, the Court has already found that it can assume a credible threat of prosecution when there is a pre-enforcement challenge to a

16

recently enacted statute. *Barilla*, 13 F.4th at 432. Plaintiffs successfully allege in their complaint that their current labels could be seen as a violation of the Amendment, making them susceptible to enforcement actions. The Court does not require further factual development to decide whether the Amendment is constitutional.

### B. Motion to Dismiss for Failure to State a Claim

Plaintiffs bring the following claims against Defendants: (1) preemption under federal law; (2) violation of the Supremacy Clause; (3) discrimination in violation of the dormant Commerce Clause; (4) excessive burden in violation of the dormant Commerce Clause; (5) violation of the Fourteenth Amendment Due Process Clause; and (6) violation of the First Amendment. (Am. Compl., Dkt. 13). Plaintiffs request declaratory judgments pursuant to 28 U.S.C. § 2201, declaring as much, should the Court determine that (1) the Amendment does not prohibit Tofurky's labels or those of other plant-based meat producers because their conduct is compliant under the Amendment; (2) the Amendment does not require disclosures different from or in addition to the FDCA; (3) the Amendment requires disclaimers in the same size and prominence as the name of the product; and (4) the Amendment does not apply to marketing or advertising materials. (*Id.* at 35–36). Defendants argue that Plaintiffs have failed to sufficiently plead each of their claims. The Court will address the sufficiency of each of Plaintiffs' claims in turn.

### 1. Supremacy Clause and Preemption Claims

In their amended complaint, Plaintiffs brings claims for both preemption under federal law and violation of the supremacy clause. (Am. Compl., Dkt. 13, at 29–30). Defendants allege that Plaintiffs' Supremacy Clause claim is not a cause of action because the "Supremacy Clause is a rule of decision, not a source of a federal right." (Mot. Dismiss, Dkt. 17, at 23 (citing *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015)). The Fifth Circuit's interpretation of *Armstrong* in *Air Evac EMS, Inc.*, 851 F.3d 507, is instructive:

> *Armstrong* holds the Supremacy Clause does not create a right to challenge state laws on preemption grounds; rather, the clause "instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court." Thus, the Court held: "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity," not the Supremacy Clause. In *Armstrong*, the Court reaffirmed that plaintiffs' seeking injunctive relief against state officers must satisfy *Ex parte Young*'s equitable exception.

*Id.* at 515 (citing *Armstrong*, 575 U.S. at 324–27). Accordingly, Plaintiffs may bring a claim by virtue of the Supremacy Clause as long as they satisfy *Ex parte Young*'s equitable exception, which the Court has already addressed in this order. *See Air Evac EMS, Inc.*, 851 F.3d at 515 ("[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.") (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983)). However, the Court notes that Plaintiff's claim for violation of the Supremacy Clause and Plaintiff's claim for federal preemption are one in the same, and the Court will address them as a single claim.

Plaintiffs allege that the Food, Drug, and Cosmetic Act's (FDCA) "expressly preempts the [Amendment]'s disclosure requirements. The [Amendment] imposes disclosure requirements as a part of products' names that are different from, or in addition to, federal regulations governing statements of identity." (Am. Compl., Dkt. 13, ¶ 103). According to Plaintiffs, the Amendment "frustrates Congress's intent to create a uniform labeling scheme" nationwide and would instead "create and contribute to a patchwork of separate and potentially conflicting labeling requirements for plant-based meat products from different states." (*Id.* ¶ 105). Defendants argue that "Plaintiffs' express preemption claim is brought as a means to distract the Court." (Mot. Dismiss, Dkt. 17, at

21). Defendants do not deny that the FDCA has an express preemption provision; however, they argue that the "contours of that provision barely touch Plaintiffs' claims." (*Id.*).

In their amended complaint, Plaintiffs state that "plant-based meat producers must comply with the federal FDCA provision that prohibits any marketing or packaging that is 'false or misleading in any particular,' as well FDCA requirements governing the names of products." (Dkt. 13 ¶ 4 (citing 21 U.S.C. § 343(a); 21 C.F.R. §§ 102.5, 101.3)). Plaintiffs further state that the Amendment is "either redundant, or in conflict, with federal law" because "it requires labeling different from or in addition to that required by the FDCA's standards governing the names of food products, or any regulations promulgated thereunder." (*Id.* ¶ 17). Additionally, Plaintiffs plead that the FDCA contains an express preemption provision that provides that "states may not impose any non-identical 'requirement for the labeling of food of the type required by' section 343(i)(1)." (*Id.* ¶ 20 (citing 21 U.S.C. § 343-1(a)(3)).

Section 343-1(a)(3) states as follows:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by section 343(b), 343(d), 343(f), 343(h), 343(i)(1), or 343(k) of this title that is not identical to the requirement of such section . . . .

Section 343(i)(1) states, in relevant part, that a food with no standard of identity shall be deemed to be misbranded unless its label bears "the common or usual name of the food, if any there be." 21 U.S.C.A. § 343. Both parties agree that there is no standard of identity for plant-based meat products. However, while Defendants argue that Section 343(i)(1) is not applicable to plant-based meat products as they have no "common or usual name," Plaintiffs argue that Defendants incorrectly conflate a "common or usual name" with a standard of identity. The Court agrees with Plaintiffs. While it is true that the FDA has not promulgated a standard of identity for plant-based meat products, this does not mean that the express preemption clause does not apply to the labeling

of plant-based meat products. Indeed, the heading of Section 343(i)(1) specifically states that it is applicable to labels with "no representation as to definition and standard of identity."

That being said, it is not abundantly clear to the Court whether the Amendment does require anything different from or in addition to Section 343(i)(1). When a packaged food does not have a standard of identity, the principal display panel of the package must feature a statement of identity that is either the "common or usual name of the food" or "an appropriately descriptive term." 21 C.F.R. § 101.3(a)-(b). Either of these options inherently include a qualifier indicating that the product is not derived from animals. For example, plant-based meat producers do not refer to their products just as "ham" or "sausage." Rather, they call them "plant-based ham" or "veggie sausage." Tofurky itself states that all of its products are clearly marketed and labeled as "plant-based" or "vegan." (Am. Compl., Dkt. 13, ¶ 40). However, Plaintiffs seem to be arguing that the Amendment may require an additional qualifier beyond the qualifier that is part of the common or usual name. (Am. Compl., Dkt. 13, ¶ 127 ("it is unclear whether the Law requires a second product name in addition to a product's statement of identity")). Further, Plaintiffs argue that the Amendment imposes additional prominence and location requirements. (*Id.* ("It is also unclear whether the FDA's prominence requirements for standards of identity are sufficient.")). Given that Plaintiffs have alleged that the Amendment requires something different than the FDCA, the Court will allow Plaintiffs' preemption claim to go forward at the motion to dismiss stage.

## 2. Section 1983 Claims

Section 1983 provides an avenue for individuals to assert violations of preexisting federal rights. 42 U.S.C. § 1983; *see Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks and citation omitted). "To bring an action within the purview of section 1983, a claimant must first identify a protected life, liberty, or property interest, and then

prove that government action resulted in a deprivation of that interest." *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)).

### a. Dormant Commerce Clause

Under the Commerce Clause, the federal government has the power to "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. Under the dormant Commerce Clause, a judicial creation, "the states lack the power to impede this interstate commerce with their own regulations." *Dickerson v. Bailey*, 336 F.3d 388, 395 (5th Cir. 2003). The dormant Commerce Clause serves as "a substantive restriction on permissible state regulation of interstate commerce." *Dennis v. Higgins*, 498 U.S. 439, 447 (1991).

A state law can violate the dormant Commerce Clause in several ways. "A statute violates the dormant Commerce Clause where it discriminates against interstate commerce either facially, by purpose, or by effect." *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007) (citation omitted). "In this context, 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007) (internal citations omitted). A law that discriminates like this "is valid only if the state can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Id.* Even a statute that does not discriminate can be found invalid under the dormant Commerce clause if "the burden imposed on interstate commerce is 'clearly excessive' in relation to the putative local benefits." *Allstate Ins. Co.*, 495 F.3d at 160 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). Because both discriminatory claims and excessive burden claims "turn on intent and effects," they require factual development. *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 327 (5th Cir. 2022), cert. denied, 144 S. Ct. 485, 217 L. Ed. 2d 251 (2023) (citing *W. Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 201 (1994) (recognizing that Commerce Clause decisions require a "sensitive, case-by-case analysis

of purposes and effects"); *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 945 F.3d 206 (5th Cir.
2019) (noting that "discriminatory intent is factual matter"); *Colon Health Ctrs. of Am., LLC v. Hazel*,
733 F.3d 535, 545 (4th Cir. 2013) (reversing the Rule 12 dismissal of dormant Commerce Clause
purpose and effects claims because of the "fact-intensive quality of the substantive inquiry"); *Cachia
v. Islamorada*, 542 F.3d 839, 840–41 (11th Cir. 2008) (reversing the dismissal of a discriminatory-
effects claim); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 334 (4th Cir. 2001) (denying
summary judgment because whether the challenged law discriminated in its effects or purpose were
"[q]uite obviously ... questions of fact")). Thus, dismissal of these claims at the 12(b)(6) stage may be
premature. (*Id.*). Plaintiffs allege both that the Amendment is facially discriminatory in its purpose
and effect and that the Amendment—even if it is not discriminatory—places an excessive burden
on interstate commerce. (Am. Compl., Dkt. 13, at 30, 32). Defendants contend that both of
Plaintiffs' allegations of dormant Commerce Clause violations are insufficient to survive their
motion to dismiss. (Mot. Dismiss, Dkt. 17, at 24).

        In order to survive a 12(b)(6) motion to dismiss on their discriminatory purpose claim,
Plaintiffs must raise plausible allegations that the Amendment had a discriminatory purpose or
effect. *See NextEra Energy Cap. Holdings, Inc.*, 48 F.4th at 327 ("Because NextEra has at least raised
plausible allegations that SB 1983 had a discriminatory purpose, that claim gets to the discovery
stage."). To determine whether "purposeful discrimination animated a state legislature's action," the
Supreme Court has identified several factors as relevant, including the "historical background of the
decision," the "specific sequence of events leading up the challenged decision," and the "legislative
or administrative history of the state action." *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir.
2007) (citing *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266–68
(1977)). Defendants argue that Plaintiffs have failed to raise such allegations: "Plaintiffs have not
alleged any facts to show that the Texas Legislature has a history of discriminating against 'plant-

based' . . . meat producers." (Mot. Dismiss, Dkt. 17, at 26). Defendants also argue that "Plaintiffs have completely failed to allege facts to show that traditional meat companies are benefitting from out-of-state and in-state 'plant-based' . . . meat companies having to follow the Amendment's requirements."

The Court finds that Plaintiffs sufficiently plead that the Amendment had a discriminatory purpose and effect. Plaintiffs claim that the Amendment's purpose is to "protect in-state Texas animal-based meat producers from out-of-state competitors who produce plant-based . . . meat." (Am. Compl., Dkt. 13, ¶ 111). Specifically, Plaintiffs claim that the Amendment's labeling requirements "confer[] a benefit on in-state meat producers by requiring burdensome and expensive disclosure requirements and necessary changes to marketing and labeling that are only imposed on plant-based . . . meat products, the vast majority of which are outside of Texas." (*Id.* ¶ 112). Plaintiffs allege that the Amendment "cites consumer confusion and concerns about truthful labeling as its motivation," yet there is no evidence or consumer confusion or complaints regarding the labeling of plant-based meat products. (Am. Compl., Dkt. 13, ¶ 78). Plaintiffs further allege that the study upon which the Texas lawmakers based their assertions of consumer confusion was funded by the Texas Cattle Feeders Association and the raw data has never been disclosed to the public. (*Id.* ¶ 84). Additionally, Plaintiffs note that Texas is the top cattle producer in the nation and that the Amendment was backed by the Texas Farm Bureau and the Texas Cattle Feeders Association. (*Id.*). They also point to several other recent circumstances on both the national and state levels where "players in the meat industry have vigorously lobbied legislatures and government entities to take action against their plant-based competitors." (*Id.* ¶ 74). These allegations, taken as true, are sufficient to raise a plausible allegation that the Amendment has a discriminatory purpose and effect. Given that the Fifth Circuit has recently stated that dormant Commerce Clause claims

are fact intensive, the Court will allow Plaintiffs' dormant Commerce Clause claim based on discriminatory purpose and effect to proceed. *See NextEra Energy Cap. Holdings, Inc.*, 48 F.4th at 327.

Dormant Commerce Clause claims based on an excessive burden are similarly fact intensive. *Id.* Even a law that is not discriminatory will be struck down if the burden it imposes on interstate commerce "is clearly excessive in relation to its putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Defendants contend that Plaintiffs "have not stated an excessive burden claim under the Dormant Commerce Clause" as their claims that they will be burdened by the Amendment are "broad, vague allegations." (Mot. Dismiss, Dkt. 17, at 29). Defendants also contend that Plaintiffs do not sufficiently allege that any burden to Plaintiffs outweighs the benefit of protecting Texans from "misleading and harmful labeling." (*Id.* at 29–30). According to Defendants, "Texas has no other means of advancing its legitimate local interest of protecting Texans' health and safety." (*Id.* at 29).

The Court, however, finds that Plaintiffs sufficiently plead their excessive-burden claim under the dormant Commerce Clause. In their amended complaint, Plaintiffs contend that even if the Amendment did not have a discriminatory purpose, it violates the dormant Commerce Clause because "PBFA's members, including Tofurky and other plant-based meat producers, will be required to make significant changes to their marketing and packaging in order to attempt to comply with the Law—at great cost," while the Amendment cannot be "justified by any valid consumer protection purpose." (Am. Compl., Dkt. 13, ¶¶ 121, 124). Plaintiffs argue that the Amendment imposes a "significant, burdensome, and . . . impracticable disclosure requirement on plant-based meat products' principal display panels." (*Id.* ¶ 85). According to Plaintiffs, "[p]lant-based meat producers across the country, including Tofurky and other PBDA members, would be forced to spend millions of dollars in an attempt to develop Texas-specific labels" or to redesign all of their labels. (*Id.* ¶ 13). Plaintiffs additionally emphasize that current legislative efforts across numerous

states to regulate the labeling of plant-based meat products will only increase the burden on plant-based meat companies who will have to comply with the Amendment and other similar state laws while having "no control over which of their products end up in which states." (*Id.* ¶¶ 78, 85). Finally, Plaintiffs allege that there are no putative local benefits because "there is no evidence of any consumer confusion." (*Id.* ¶ 88). Given that Plaintiffs plead specific facts as to how they will be burdened in adjusting their products' labels—and in the case of PBFA, their labeling guidelines—to comply with the Amendment and that Plaintiffs allege that there is zero local benefit to Texas, the Court finds that Plaintiffs sufficiently state a claim for violation of the dormant commerce clause based on an excessive burden.

### b. Due Process Clause

"The Fourteenth Amendment's guarantee of Due Process proscribes laws so vague that persons 'of common intelligence must necessarily guess at [their] meaning and differ as to [their] application.'" *Women's Med. Ctr. of Nw. Houston v. Bell*, 248 F.3d 411, 421 (5th Cir. 2001) (citing *Smith v. Goguen*, 415 U.S. 566, 572 n.8 (1974)). A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement. *Id.* (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)).

In their motion to dismiss, Defendants state that Plaintiffs' Due Process claim is entirely based on one allegation—"that the Amendment is 'unclear' as to what the 'name of the product' means and where 'producers must display the required disclosure.'"(Mot., Dkt. 17, at 30). Specifically, Defendants argue that the Amendment is not unconstitutionally vague merely because it does not define "name of product." (*Id.* at 31). Defendants concede that the Amendment may be "imprecise" but argue that it is certainly comprehensible and prescribes a standard of conduct. (*Id.*). Defendants then state, "Any company or consumer would know that the 'name of the product' is

25

the language most prominently displayed on the front of the container." (*Id*.). In their amended complaint, Plaintiffs allege that it is unclear whether the term "product name," used in the Amendment, refers to the product's statement of identity[1] or some other identifier. (Am. Compl., Dkt. 13, ¶ 127). Plaintiffs give the following example in their response to Defendants' motion to dismiss: "It is unclear if 'name of the product' refers to the category (e.g., 'deli slices' or 'burgers'), the flavor (e.g., 'hickory smoked' or 'smoky maple'), the brand (e.g., 'Tofurky'), the ingredients (e.g., 'tempeh'), or some combination of all these phrases (e.g., 'Tofurky plant-based hickory smoked deli slices')." (Resp., Dkt. 22, at 39). Defendants give the examples of "Frosted Flakes," "Trix—Minis," or "Lucky Charms S'mores" as names of products. (Mot. Dismiss, Dkt. 17, at 31). However, Defendants examples fail to clarify the issue. A consumer might assume that "cereal" was the name of the product or that "Kellogg's" is inherently part of the product name. To understand how to comply with the Amendment, a company must know which identifier is the name of the product, as the Amendment requires them to place the qualifying term in "close proximity"[2] to "the name of the product."

In addition to alleging that the Amendment is "unclear" as to what the "name of the product" means, Plaintiffs provide multiple examples of why plant-based meat producers would not have a reasonable opportunity to know what conduct is prohibited. Plaintiffs allege that "it is unclear whether the Law requires a second product name in addition to a product's statement of identity" and that "it is unclear whether the FDA's prominence requirements for standards of identity are sufficient, or if characterizing ingredients are sufficient qualifiers under the [Amendment] (e.g.

---

[1] A food product's statement of identity is its "name . . . specified in or required by any applicable Federal law or regulation," or, if there is no applicable law or regulation, the "common or usual name of the food" or an "appropriately descriptive term." 21 U.S.C. § 101.3(b).

[2] Under the Amendment, "close proximity" is defined as "(A) immediately before or after the name of the product; (B) in the line of the label immediately before or after the line containing the name of the product; or (C) within the same phrase or sentence containing the name of the product." (Mot. Dismiss, Dkt. 17, at 31).

'tempeh bacon').'" (Am. Compl., Dkt. 13, ¶ 127). Finally, Plaintiffs allege that the law fails to specify

what "surrounding type" is and whether "the product's statement of identity can be larger than the

required qualifying language, so long as the qualifying language is the same size or larger as *other*

nearby text." (*Id.* (emphasis in original)). Thus, the Court finds that Plaintiffs sufficiently allege that a

person of ordinary intelligence would have to guess at the meaning of the Amendment and could

differ in their own application of the Amendment.

### c. First Amendment

Defendants argue that the Amendment is a regulation of "quintessential commercial speech

that should be upheld under the *Central Hudson* analysis." (Mot, Dkt. 17, at 32 (citing *Central Hudson

Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980)). Defendants largely

base this argument on an allegation that Plaintiffs' speech is misleading and unlawful. (See *id.* at 32–

33 (citing *Central Hudson Gas* for the proposition that there can be no constitutional objection to the

regulation of misleading or unlawful commercial speech)). Whether Plaintiffs' speech is misleading

or unlawful is a fact issue that is inappropriate for a motion to dismiss.

In *Central Hudson*, the Supreme Court held that commercial speech is protected if it is neither

"misleading nor related to unlawful activity." 447 U.S. at 564. A government cannot restrict such

protected commercial speech unless it satisfies a three-part test: (1) the state must assert a

"substantial" interest justifying the restriction; (2) the restriction must "directly advance[] the

governmental interest asserted;" and (3) the restriction must not be "more extensive than is

necessary to serve that interest." *Id.* at 566. Here, Plaintiffs sufficiently allege that their speech is

neither misleading nor related to unlawful activity and that the Amendment's speech restriction fails

to pass constitutional muster.[3]

---

[3] Plaintiffs allege that the Amendment is a content-based regulation of speech that "prescribes two distinct sets of rules: one set for food producers who make plant-based . . . meat, and one for food producers who make anything else, including conventional animal meat." (Am. Compl., Dkt. 13, ¶ 133). The Court notes that

In their Amended Complaint, Plaintiffs state that "Tofurky's labels and marketing materials all clearly indicate its products are meat substitutes that are plant-based and vegan and, thus, are entirely truthful. There is no evidence of consumer confusion about the ingredients or source of any of Tofurky's foods." (Dkt. 13, ¶ 51). They further state that PBFA "promotes uniform labeling standards that comply with the FDCA and truthfully convey the nature and contents of plant-based meats to consumers." (*Id.* ¶ 50). In a study of public comments submitted to the FDA regarding naming conventions for plant-based meat products, "PBFA found that 76% of consumers support the current labeling conventions used by plant-based products." (*Id.*). Plaintiffs have clearly alleged that their speech is neither misleading nor unlawful.

Plaintiffs also allege that Texas has failed to assert a substantial interest justifying the Amendment. The Amendment "cites consumer confusion and concerns about truthful labeling as its motivation—yet it . . . follows a dearth of consumer complaints or any evidence of confusion at all." (*Id.* ¶ 78). Plaintiffs also allege that the Amendment does not advance Texas's alleged interest in truthful labeling because the Amendment is "impractical and unclear." They note that "state-mandated changes to labeling conventions may actually *create* consumer confusion where none previously existed" as labels would vary from state to state. (*Id.* ¶ 50) (emphasis in original). Finally, Plaintiffs sufficiently allege that the Amendment is more extensive than necessary to protect Texas consumers from false or misleading labels. Plaintiffs point out that the FDCA already prohibits false

the Fifth Circuit has not decided whether a content-based regulation of commercial speech receives strict scrutiny, or intermediate scrutiny under *Central Hudson Gas*, although a split has developed among several circuits. *See Int'l Outdoor, Inc. v. City of Troy, Michigan*, 974 F.3d 690 (6th Cir. 2020) (holding that the intermediate-scrutiny standard applicable to commercial speech applies only to a speech regulation that is content-neutral on its face but noting that other circuit courts have held that the intermediate standard still applies to the regulation of any commercial speech). For the purposes of this motion, the Court only assesses whether Plaintiffs sufficiently plead that the Amendment fails the *Central Hudson Gas* three-part test. However, the Court does not preclude Plaintiffs from arguing for and adducing evidence in support of stronger protection of their commercial speech. *See, e.g. Gibson v. Texas Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 235 (5th Cir. 2012) ("we also reserve to Gibson his right in those proceedings to argue for and adduce evidence in support of stronger protection of his domain name as ordinary, communicative speech, and not merely as commercial speech").

or misleading labeling, (*id.* ¶ 59), and would require Tofurky and other members of PBFA to overhaul their nationwide marketing scheme as it is impossible to control which of its products are distributed to Texas stores, (*id.* ¶ 91). Accordingly, the Court finds that Plaintiffs have sufficiently alleged that the Amendment would not survive under *Central Hudson*.

### 3. Declaratory Judgment Claims

As stated above, Plaintiffs ask that the Court issue several declaratory judgments stating that: (1) the Amendment does not prohibit Tofurky's labels or those of other plant-based meat producers, because their conduct is compliant under the law; (2) the Amendment does not require disclosures different from or in addition to the FDCA; (3) the Amendment requires disclaimers in the same size and prominence as the name of the product; (4) the "name of the product" is synonymous with "statement of identity" as defined by the FDCA; and/or (5) the Amendment does not apply to marketing or advertising materials. (Am. Compl., Dkt. 13, at 35–36). Plaintiffs clarify in their response to the motion to dismiss that they request these declaratory judgments as alternative relief in the case that the Court upholds the Amendment as constitutional. (Resp., Dkt. 22, at 14).

Defendants argue that the Declaratory Judgment Act ("DJA") is not a cause of action, and that Plaintiffs' claims for declaratory judgments—to the extent that they are standalone claims— should be dismissed. (Mot. Dismiss, Dkt. 17, at 20). Defendants are correct that the DJA is "not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *See Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (citation omitted). While the DJA does not create an independent cause of action, the act does provide for declaratory and injunctive relief. *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (noting that the DJA "provides the statutory mechanism for seeking pre-enforcement review of a statute"). Here, Plaintiffs do assert claims under 42 U.S.C. § 1983 and several constitutional provisions. (*See generally* Am. Compl., Dkt. 13). Thus, Plaintiffs' request for an injunction preventing enforcement of the

29

Amendment upon a finding that the Amendment is unconstitutional is proper. (*See* Am. Compl., Dkt. 13, at 36 (requesting "a permanent injunction preventing the enforcement of the Law, both on its face and as applied to Tofurky and PBFA's members")); *see also Book People, Inc. v. Wong*, 692 F. Supp. 3d 660, 685 (W.D. Tex. 2023), *aff'd in part, vacated in part, remanded*, 91 F.4th 318 (5th Cir. 2024). However, the Court will not take up Plaintiffs' requests for declaratory judgments in the alternative because Plaintiffs do not sufficiently assert a valid cause of action underlying these alternate declaratory judgment claims. *See Hopkins v. Cornerstone Am.*, No. 4:05-CV-332-Y, 2009 WL 10721229, at 6 (N.D. Tex. June 15, 2009) (denying summary judgment motion on declaratory judgment counterclaims because "Defendants never refer to an independent cause of action as a basis for their declaratory-judgment action"). Thus, the Court will dismiss Plaintiffs' alternative claims for declaratory judgments.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendants' motion to dismiss, (Dkt. 17), is **GRANTED** in part and **DENIED** in part.

Defendants' motion is **GRANTED** as to the dismissal of Governor Abbott as a defendant. **IT IS ORDERED** that Governor Abbott is terminated as a party in this suit.

Defendants' motion is **GRANTED** as to the dismissal of Plaintiffs' alternative declaratory judgment claims. Plaintiffs' alternative declaratory judgment claims are **DISMISSED WITHOUT PREJUDICE**.

Defendants' motion is **DENIED** in all other aspects. Plaintiffs may proceed with their preemption claim, dormant Commerce Clause claims, Due Process claim, and First Amendment claim. Plaintiffs may also proceed with their request for an injunction enjoining Defendants from enforcing the Amendment upon a finding that the Amendment is unconstitutional on its face or as applied to Plaintiffs.

**IT IS FURTHER ORDERED** that Defendants shall file an answer to Plaintiffs' complaint on or before **October 14, 2024**.

**IT IS FINALLY ORDERED** that the stay in the case is **LIFTED**. The parties shall consult the website for the United States District Court for the Western District of Texas (www.txwd.uscourts.gov), the "Judges' Info" tab, "Standing Orders," "Austin Division," and submit a joint proposed scheduling order using District Judge Robert Pitman's form on or before **October 14, 2024**.

**SIGNED** on September 23, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE