# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **TURTLE ISLAND FOODS SPC d/b/a/ THE TOFURKY COMPANY, and the PLANT BASED FOODS ASSOCIATION,** | § § § § | |
| *Plaintiffs,* | § § | |
| **v.** | § § | **Civil Action No. 1:23-cv-01032-CM** |
| **GREG ABBOTT, in his official capacity as Texas Governor; JENNIFER A. SHUFORD, in her official capacity as Commissioner of State Health Services; CECILE ERWIN YOUNG, in her official capacity as Executive Commissioner of the Texas Department of Health and Human Services Commission; and Attorney General KEN PAXTON, on behalf of himself and all Texas prosecuting attorneys,** | § § § § § § § § § § § § | |
| *Defendants.* | § | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

| | |
|---|---|
| KEN PAXTON<br>Attorney General of Texas | WILLIAM H. FARRELL<br>Assistant Attorney General<br>Attorney-In-Charge |
| BRENT WEBSTER<br>First Assistant Attorney General | Texas Bar No. 00796531<br>Federal ID No. 21733<br>Office of the Attorney General |
| RALPH MOLINA<br>Deputy First Assistant Attorney General | General Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548 |
| AUSTIN KINGHORN<br>Deputy Attorney General for Civil Litigation | Telephone:  (512) 979-5561<br>Facsimile:  (512) 320-0667 |
| KIMBERLY GDULA<br>Division Chief, General Litigation | **ATTORNEYS FOR DEFENDANTS** |

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ..........................................................................................iv

STATEMENT OF THE CASE ....................................................................................... 1

ARGUMENTS AND AUTHORITIES ......................................................................... 2

    I.    STANDARD OF REVIEW.......................................................................... 2

    II.   THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE
         PLAINTIFFS LACK STANDING AND THEIR CLAIMS ARE NOT RIPE. ...............3

       A.    Plaintiffs Lack Article III Standing. ...............................................................3

          1.    Plaintiffs cannot show injury-in-fact. ........................................... 4

          2.    Plaintiffs lack standing to bring a pre-enforcement First Amendment challenge.......5

             i.    Plaintiffs failed to allege a pre-enforcement speech injury. ................... 6

             ii.    There is no credible threat of prosecution. .................................7

             iii.   PBFA does not have associational standing. ........................... 8

          3.    Plaintiffs' speculative injuries are not fairly traceable to any action by any Defendant........... 8

          4.    Plaintiffs cannot prove an injury redressable by Defendants. .................... 9

          5.    Plaintiffs similarly lack standing to bring a Due Process unconstitutional vagueness claim........... 9

    III.    PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW. .......................................10

       A.    The Declaratory Judgment Act Does Not Create a Cause of Action. ...........................10

       B.    Plaintiffs' Express Preemption Claim Fails. .................................................. 11

       C.    The Supremacy Clause is a Rule of Decision. .............................................. 13

       D.    Plaintiffs' Section 1983 Claims Fail. ..............................................................14

          1.    Plaintiffs fail to state a claim under the Dormant Commerce Clause. ....................14

          2.    Plaintiffs' Dormant Commerce Clause claim fails.............................18

          3.    Plaintiffs' Due Process claims fail..........................................19

          4.    The "speech" in question is commercial speech which withstands intermediate scrutiny under First Amendment analysis...........................21

             i.    The speech in question is misleading and not protected. ................... 22

              ii.    The speech in question concerns unlawful activity. ...............................23

              iii.   S.B. 664 serves a substantial or important governmental interest only through means that directly advances that interest. ................... 24

    PRAYER ................................................................................................................... 26

**CERTIFICATE OF SERVICE** ....................................................................................... **28**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance for Hippocratic Medicine,*
  602 U.S. 367 (2024) ................................................................................... 8

*Allstate Ins. Co. v. Abbott,*
  495 F.3d 151  (5th Cir. 2007) ............................................................... 15, 16

*Altria Grp., Inc. v. Good,*
  555 U.S. 70 (2008) ...................................................................................12

*Am. Fid. & Cas. Co. v. Penn. Threshermen & Farmers' Mut. Cas. Ins. Co.,*
  280 F.2d 453 (5th Cir. 1960) ..................................................................... 4

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .................................................................................... 2

*Armstrong v. Exceptional Child Ctr., Inc.,*
  575 U.S. 320 (2015) ..................................................................................14

*Babbitt v. United Farm Workers Nat. Union,*
  442 U.S. 289 (1979) .................................................................................5, 6

*Barber v. Bryant,*
  860 F.3d 345 (5th Cir. 2017) ..................................................................... 4

*Bates v. State Bar of Ariz.,*
  433 U.S. 350 (1977) ................................................................................... 6

*Bd. of Trs. of State Univ. of N.Y. v. Fox,*
  492 U.S. 469 (1989) ................................................................................... 6

*California v. Texas,*
  593 U.S. 659 (2021) ................................................................................... 9

*Casillas v. Madison Ave. Assocs., Inc.,*
  926 F.3d 329 (7th Cir. 2019) ..................................................................... 9

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ................................................................................1, 2

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
  *447 U.S.* 557 (1980) ........................................................................... 21, 22, 23

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ...................................................................................3, 4, 6

*Ctr. for Individual Freedom v. Carmouche,*
  449 F.3d 655 (5th Cir. 2006) ........................................................................ 6

*Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors,*
  916 F.3d 483 (5th Cir. 2019) ........................................................................23

*Ford Motor Co. v. Tex. Dep't of Transp.,*
  264 F.3d 493, (5th Cir. 2001) ...................................................................... 24

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) ...................................................................................4, 5

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) ...................................................................................... 9

*Gen. Motors Corp. v. Tracy,*
  519 U.S. 278 (1997) ...............................................................................19, 25

*Giboney v. Empire Storage & Ice Co.,*
  336 U.S. 490 (1949) ...............................................................................24, 25

*Golden State Transit Corp. v. City of Los Angeles,*
  493 U.S. 103 (1989) ....................................................................................14

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ...............................................................................20, 21

*Hignell-Stark v. City of New Orleans,*
  46 F.4th 317 (5th Cir. 2022) .......................................................................19

*Houston Balloons & Promotions, LLC v. City of Houston,*
  589 F. Supp. 2d 834 (S.D. Tex. 2008) ...................................................... 22

*Hunt v. Washington State Apple Adv. Comm'n,*
  432 U.S. 333 (1977) .................................................................................... 8

*James v. Collin Cnty.,*
  535 F.3d 365 (5th Cir. 2008) .......................................................................14

*Jefferson Cmty. Health Care Ctrs, Inc. v. Jefferson Par. Gov't,*
  849 F.3d 615 (5th Cir. 2017) .......................................................................14

*Legacy Cmty. Health Servs., Inc. v. Smith*,
   881 F.3d 358 (5th Cir. 2018) .................................................................. 4

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................... 3

*Minn. Voters All. v. Mansky*,
   138 S. Ct. 1876 (2018) ......................................................................... 20

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024) ............................................................................. 10

*Moore v. Willis Indep. Sch. Dist.*,
   233 F.3d 871 (5th Cir. 2000) ............................................................... 14

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ............................................................................... 6

*Nat'l Pork Producers Council v. Ross*,
   598 U.S. 356 (2023) ............................................................................. 18

*Nat'l Press Photographers Ass'n v. McCraw*,
   No. 22-50337, 2023 WL 6968750 (5th Cir. Oct. 23, 2023) ................... 9, 10

*Ohralik v. Ohio State Bar Assn.*,
   436 U.S. 447 (1978) ...................................................................... 6, 24, 25

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970) ......................................................................... 18, 19

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
   413 U.S. 376 (1973) ............................................................................. 22

*Plant Based Foods Ass'n v. Stitt*,
   739 F.Supp.3d 966 (W.D. Ok. June 24, 2024) ....................................... 8

*Prestage Farms, Inc. v. Bd. of Supervisors of Noxubee Cty.*,
   205 F.3d 265 (5th Cir. 2000) ................................................................. 4

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992) ............................................................................... 6

*Schilling v. Rogers*,
   363 U.S. 666 (1960) ............................................................................. 11

*Sid Richardson Carbon & Gasoline Co. v. Interenergy Res. Ltd.*,
   99 F.3d 746 (5th Cir. 1996) ................................................................. 11

*Smith v. Goguen,*
    415 U.S. 566 (1974) .................................................................................20, 21

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) ......................................................................... 8

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ...............................................................................3, 4, 5

*Steffel v. Thompson,*
    415 U.S. 452 (1974) ....................................................................................... 6

*Stringer v. Whitley,*
    942 F.3d 715 (5th Cir. 2019) ........................................................................ 4

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ...................................................................................5, 6

*Tesla, Inc. v. La. Auto. Dealers Ass'n,*
    No. CV 22-2982, 2023 WL 4053438 (E.D. La. June 16, 2023)........................... 16, 19

*Thomas v. Collins,*
    323 U.S. 516 (1945) ..................................................................................... 26

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ...................................................................................3

*Turner v. Baylor Richardson Med. Ctr.,*
    476 F.3d 337 (5th Cir. 2007) .........................................................................3

*Turtle Island Foods, S.P.C. v. Strain,*
    65 F.4th 211 (5th Cir. 2023) ............................................................... passim

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.,*
    550 U.S. 330 (2007) ............................................................................. 15, 19

*United States v. Stevens,*
    559 U.S. 460 (2010) ..................................................................................... 22

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
    425 U.S. 748 .............................................................................................. 6, 22

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977) .....................................................................................16

*Voting for Am., Inc. v. Steen,*
    732 F.3d 382 (5th Cir. 2103) ........................................................................21

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n,*
　　945 F.3d 206 (5th Cir. 2019) ................................................................ 16, 17

*Ward v. Rock Against Racism,*
　　491 U.S. 781 (1989) ................................................................................ 20

*Washington State Grange v. Wash. State Rep. Party,*
　　552 U.S. 442 (2008) ................................................................................ 10

*Women's Med. Ctr. of Nw. Hous. v. Bell,*
　　248 F.3d 411 (5th Cir. 2001) ............................................................ 20, 21

*Zauderer v. Office of Disciplinary Counsel,*
　　471 U.S. 626 (1985) ................................................................................ 22

**Statutes**

21 U.S.C. § 343(f) .......................................................................................... 13

21 U.S.C. § 343(i)(3) ...................................................................................... 13

21 U.S.C. § 343-1(a)(3) .................................................................................. 12

28 U.S.C. § 1983 .................................................................................... passim

28 U.S.C. § 2201 .............................................................................................. 2

LA. Rev. Stat. § 3:4744 .................................................................................... 3

Tex. Health and Safety Code § 431.0805 .................................................. 1, 21

Tex. Health and Safety Code § 431.082 .................................................. 22, 26

Tex. Health and Safety Code § 431.082(d-1) .................................................. 2

**Rules**

Fed. R. Civ. P. 56 ............................................................................................. 1

Fed. R. Civ. P. 56(a) ........................................................................................ 2

**Regulations**

*Labeling of Plant-Based Alternatives to Animal-Derived Foods,*
　　90 Fed. Reg. 1141 (Jan. 7, 2025) .................................................. 11, 16, 19

**Other Authorities**

S.B. 664 .............................................................................................. passim

**Secondary Sources**

Tex. S.B. 664, 88th Sess. Bill,
    https://capitol.texas.gov/tlodocs/88R/billtext/pdf/SB00664F.pdf/ ......................................1

S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023),
    https://capitol.texas.gov/tlodocs/88R/analysis/pdf/SB00664F.pdf/ .......................... 1, 16, 25

H. Rep, 88th Sess., 2724-25 (Tex. 2023),
    https://journals.house.texas.gov/hjrnl/88r/pdf/88RDAY53FINAL.PDF. ...........................17

S. Rep. 88th Sess., 1097 (Tex. 2023),
    https://journals.senate.texas.gov/sjrnl/88r/pdf/88RSJ04-20-F1.PDF....................................17

## STATEMENT OF THE CASE[1]

In the 88th Legislative Session, the Texas Legislature ("Legislature") approved amending the Texas Health and Safety Code related to food labels for analogue and cell-cultured products[2] with Senate Bill 664 ("S.B. 664"), which went into effect on September 1, 2023.[3] Due to recent technological advancements with food products, the Legislature sought to address the lack of rules for alternative proteins using analogue food products in order to clarify food labels for these food products for consumers.[4] With this advancement, the Legislature emphasized that while "[t]he increase in variety at the food counter can be a positive for consumers, [] it is important for the consumer to understand the nature of the products they are purchasing to feed themselves and their families."[5]

Senate Bill 664 clarifies the labeling requirements for both "analogue" and "cell-cultured" products.[6] Specifically, S.B. 664 modified Tex. Health and Safety Code § 431.0805, "Definitions"; Section 431.0082, "Misbranded Food"; and § 433.0415, "Labeling cell-cultured product."[7] Notably, S.B. 664 defines "analogue product" and "close proximity."[8] It also added a provision in the "Misbranded Food" section stating that "[a] food shall be deemed to be misbranded . . . if it is an analogue product of meat, a meat food product, poultry, a poultry product,

---

[1] Many of the arguments set forth herein mirror those made in Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, Dkt. 17. As Plaintiffs have shown either an inability to prove its claims or the evidence conclusively disproves Plaintiffs' claims, Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 342 (1986).

[2] The Court dismissed Plaintiffs' claims relating to the S.B. 664's regulation of cell-cultured meat product labels, and are, therefore, not discussed herein. *See* Dkt. 25.

[3] Tex. S.B. 664, 88th Sess. Bill, https://capitol.texas.gov/tlodocs/88R/billtext/pdf/SB00664F.pdf.

[4] *Id.*

[5] S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/analysis/pdf/SB00664F.pdf.

[6] *Id.*

[7] *Id.*

[8] *See* Tex. Health and Safety Code § 431.0805.

an egg product, or fish, unless its label bears in prominent type equal to or greater in size than the surrounding type and in close proximity to the name of the product one of the following: (1) 'analogue'; (2) 'meatless'; (3) 'plant-based'; (4) 'made from plants'; or (5) 'a similar qualifying term or disclaimer intended to clearly communicate to a consumer the contents of the product . . . .'"[9]

Plaintiffs have brought a facial and as-applied constitutional challenge to S.B. 664 seeking a preliminary injunction preventing enforcement and declaratory relief. Specifically, Plaintiffs bring the following claims: 1) express preemption under federal law; 2) Supremacy Clause; 3) § 1983 Discrimination under the Dormant Commerce Clause; 4) § 1983 Excessive Burden under the Dormant Commerce Clause; 5) § 1983 Fourteenth Amendment Due Process Clause; 6) § 1983 First Amendment; and 7) 28 U.S.C. § 2201 Declaratory Judgment. Defendants are entitled to summary judgment on all of Plaintiffs' claims because Plaintiffs still lack standing, and Plaintiffs have failed to establish that S.B. 664 fails to pass constitutional scrutiny under any of the claims asserted. As such, Defendants are entitled to summary judgment as a matter of law on all of Plaintiffs' claims.

## ARGUMENTS AND AUTHORITIES

### I. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant satisfies its initial responsibility of showing "the absence of a material fact," the burden shifts to the non-movant to identify "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 323.

The substantive law governing a plaintiff's claims determines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Further, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of

---

[9] *See* Tex. Health and Safety Code § 431.082(d-1).

evidence." *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (internal quotation marks omitted).

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS LACK STANDING AND THEIR CLAIMS ARE NOT RIPE.

### A. Plaintiffs Lack Article III Standing.

To establish standing, Plaintiffs must demonstrate "(1) an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent'; (2) the injury is fairly traceable to the defendant's actions; and (3) it is likely to be redressed by a favorable decision." *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 215 (5th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).[10] A plaintiff must clearly allege facts demonstrating each element of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs bear the burden of pleading and proving concrete facts showing that the defendant's actual action has caused the substantial risk of harm.").

Not every dispute is entitled to judicial review. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes," as federal courts "do not possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Put another way, "[f]ederal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities." *Id.* "And federal courts do not issue advisory opinions." *Id.*

---

[10] Defendants emphasize that in *Turtle Island Foods, S.P.C. v. Strain*, the Fifth Circuit was persuaded that the second prong of the pre-enforcement Free Speech standard was met because Plaintiffs were using "'plant-based' labels that use meat-esque words," which was proscribed by the Louisiana law because use of the term "meat" in a variety of forms was strictly prohibited. 65 F.4th at 216-17; *see also* LA. Rev. Stat. § 3:4744. This case is distinguishable because Texas S.B. 664 does not proscribe the use of the term "meat" at all, and because Plaintiffs cannot specify any action that Plaintiffs are currently taking that is proscribed by S.B. 664 other than vague references to "disclosure requirements." Am. Comp. ¶¶ 5, 13, 16. *See infra* at 5-7 for pre-enforcement challenge analysis.

### 1. Plaintiffs cannot show injury-in-fact.

Plaintiffs must show a concrete and particularized injury-in-fact. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The alleged "injury in fact" will suffice only if it is "concrete, particularized, and actual or imminent." *Clapper*, 568 U.S. at 409. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339, *as revised* (May 24, 2016). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340; *see* Black's Law Dictionary 479 (9th ed. 2009). Because standing "'is not dispensed in gross,' a party must have standing to challenge each 'particular inadequacy in government administration.'" *Legacy Cmty. Health Servs., Inc. v. Smith*, 881 F.3d 358, 366 (5th Cir. 2018). At the preliminary-injunction stage, plaintiffs must make a "clear showing" that they have standing. *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017).

The Supreme Court and Fifth Circuit have consistently rejected claims of standing contingent on future outcomes in pending litigation. "It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case" *Whitmore v. Arkansas*, 495 U.S. 149, 159–60 (1990). An anticipated injury in litigation is nothing more than uncertain potentiality, and standing cannot be based on a predicted harm that "depend[s] on the occurrence of numerous uncertain future events." *Prestage Farms, Inc. v. Bd. of Supervisors of Noxubee Cty.*, 205 F.3d 265, 268 (5th Cir. 2000); *see also Am. Fid. & Cas. Co. v. Penn. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960) ("It is not the function of a United States District Court to sit in judgment on these nice and intriguing questions which today may readily be imagined, but may never come to pass."). Even when injunctive and declaratory relief is sought, a plaintiff must still establish a threatened future injury that "like all injuries supporting Article III standing, must be an injury in fact." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). "For a threatened future injury to satisfy the imminence requirement, there must be at least a 'substantial risk' that the injury will occur." *Id.* at 721. "[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate

plaintiffs." *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298 (1979).

Here, Plaintiffs have not shown a "concrete and particularized injury-in-fact." *Friends of the Earth, Inc.,* 528 U.S. at 180. Instead, Plaintiffs simply make broad conclusory statements like S.B. 664 "would hobble Tofurky and other plant-based meat companies represented by PBFA" and that it "would simultaneously [] cost the company millions of dollars to change labels and marketing representations." Am. Comp. ¶ 91.  In fact, the evidence proves just the opposite. Despite reiterating several times that S.B. 664 would cost Plaintiffs "millions," *see generally*, *Id.* ¶¶ 13, 21, Plaintiffs' own testimony reveals such an estimate to be grossly exaggerated. Erin Ransom, the Chief Growth Officer for Turtle Island Foods testified that she agreed with Jamie Athos' (former CEO of Turtle Island Foods) previous estimate that a label redesign effort would cost "75[,000] to $100,000." Ex. A., Depo of Ransom, 43:2-7. For a company with $36 million in revenue, Ex. A, 19:17-21, such nominal expenses hardly amount to "millions." Plaintiffs cannot point to any concrete harm in any of their allegations. For these reasons, Plaintiffs have not shown any particularized injury, nor have they established any injury that actually exists. *See Spokeo*, 578 U.S. at 339. Plaintiffs fail to satisfy the first element of Article III standing.

### 2. Plaintiffs lack standing to bring a pre-enforcement First Amendment challenge.

Plaintiffs lack standing to bring a pre-enforcement First Amendment challenge. For pre-enforcement free speech challenges, a plaintiff must show that: "(1) it intends to engage in a course of conduct arguably affected with a constitutional interest; (2) that the course of action is arguably proscribed by statute; and (3) that there exists a credible threat of prosecution under the statute." *Turtle Island Foods, S.P.C.*, 65 F.4th at 215–16 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). Plaintiffs have not adequately demonstrated a cognizable forward-looking injury. Even in the First Amendment context where the requirements of demonstrating an Article III injury are slightly relaxed, a plaintiff must show a substantial threat of enforcement that is not "chimerical." *Steffel v. Thompson,* 415 U.S. 452, 459 (1974).

i. **Plaintiffs failed to allege a pre-enforcement speech injury.**

Neither Tofurky nor PBFA have established their commercial speech has been chilled or subject to self-censorship under S.B. 664. Plaintiffs allege that S.B. 664 "will . . . chill companies' protected speech," absent injunctive and declaratory relief. Am. Comp. ¶ 94. However, when evaluating the breadth of free speech, commercial speech is "more hardy" and less likely to be chilled. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481 (1989) (citing *Bates v. State Bar of Ariz.*, 433 U.S. 350, 380-381 (1977)). This is because "advertising is the sine qua non of commercial profits," is driven by the profit motive, and therefore is more durable and has "little likelihood of its being chilled by proper regulation." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 n. 24 (1976). "[A] State may choose to regulate . . . one industry but not [] others, because the risk of fraud (one of the characteristics of commercial speech that justifies depriving it of full First S.B. 664 protection) is in its view greater there." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388–89 (1992) (internal citation omitted); *see also Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992) (state regulation of airline advertising); *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447 (1978) (state regulation of lawyer advertising).

Allegations of chilled speech of "self-censorship must arise from a fear of prosecution that is not 'imaginary or wholly speculative.'" *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) (quoting *Babbitt v. UFW Nat'l Union,* 442 U.S. 289 (1979)). The Supreme Court has "repeatedly reiterated that the threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (emphasis in original); *see also Driehaus*, 573 U.S. at 158.

Here, the speech of Tofurky or PBFA can only be considered commercial and has not been chilled or subject to self-censorship. Tofurky's speech on food labels is commercial, profit driven, and therefore, less likely to be chilled. PBFA also alleges that its speech is commercial because it creates "comprehensive voluntary standards" for labeling for 200 company members, with at least 92 of them manufacturing plant-based meat alternatives. Am. Comp. ¶ 30. However, Plaintiffs

have not shown any threatened or potential enforcement action taken against them by Defendants. In fact, the evidence again proves just the opposite. None of the Defendants have taken any steps against a plant-based food manufacturer, retailer or distributor, either in the form of a letter, detaining product or administrative penalty as a result of an alleged violation of S.B. 664. *See* Ex. B., Depo. of Dr. Timothy Stevenson, Deputy Commissioner for Consumer Protection Division, Dept. of State Health Services, 260:18-25; *see also,* Ex. A, 91:16-24; Ex. C., Depo. of Lewis Ressler, Operations Manager, Manufactured Foods Program, Dept. of State Health Services, 153:8-20. Tofurky and PBFA have continued to run their businesses without any interruption, or even threat of interruption, since S.B. 664 took effect. Accordingly, Tofurky and PBFA cannot show any injury is "certainly impending" to support a pre-enforcement free speech challenge.

### ii.    There is no credible threat of prosecution.

Plaintiffs have not shown any threat whatsoever of enforcement activity by any Defendant relating to actions proscribed by the statute. Nor have they proven that any currently existing label or advertisement currently runs afoul of any language in S.B. 664. Dr. Stevenson testified that he's not currently aware of "any plant-based product that's been determined to be misleading in Texas." Ex. A, 126:21-24. Plaintiffs have alleged that Tofurky must now either "choose to continue to have its products sold in Texas as packaged at a substantial risk of prosecution," design and produce new marketing and packaging for Texas, or change its nationwide marketing and packaging "at considerable expense," "causing confusion to its consumers." *Id.* ¶ 95. Yet, Plaintiffs have failed to prove or even offer any evidence in support of such allegations. While courts "assume a credible threat of enforcement in the absence of compelling evidence," *Speech First, Inc. v. Fenves,* 979 F.3d 319, 335 (5th Cir. 2020), all of the evidence in this case indicates none of the provisions of S.B. 664 have been enforced against any of the Plaintiffs. The existence of a credible threat of prosecution under S.B. 664 simply does not exist.

It cannot be overstated that Plaintiffs have not shown what, if any, provisions of S.B. 664 they cannot meet. Because Plaintiffs have not shown any action arguably proscribed by S.B. 664

nor any indication of a threat of prosecution, Plaintiffs lack standing to bring a pre-enforcement First Amendment challenge. Defendants are entitled to judgment as a matter of law on Plaintiffs' free speech claims.

### iii.    PBFA does not have associational standing.

"[A]n organization may not establish standing simply based on the intensity of the [organization's] interest or because of strong opposition to the government's conduct, no matter how longstanding the interest and no matter how qualified the organization." *Alliance for Hippocratic Medicine,* 602 U.S. 367, 394 (2024). As such, PBFA "cannot assert standing simply because it objects to [S.B. 664]." *Plant Based Foods Ass'n v. Stitt,* 739 F.Supp.3d 966, 975 (W.D. Ok. June 24, 2024). In order to invoke standing as the representative of its members, PBFA must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and, (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 976 (citing *Hunt v. Washington State Apple Adv. Comm'n,* 432 U.S. 333, 343 (1977)).

Here, PBFA has not established any independent basis to support its organizational standing. Since both Tofurky and PBFA essentially proffer the same arguments to address the elements of standing, for the reasons set forth *supra* at II.A., "PBFA has not shown that its members would otherwise have standing to sue in their own right." *Id.* at 984.

### 3.    Plaintiffs' speculative injuries are not fairly traceable to any action by any Defendant.

Plaintiffs have not proven a single enforcement action—past, present, or imminent—taken against them by Defendants. Plaintiffs have alleged in the hypothetical a "substantial risk of prosecution;" yet, Plaintiffs have not shown they ever received a notice of violation from Defendants or any similar facts to suggest that they are at risk of "substantial risk of prosecution." Am. Comp. ¶ 95. Moreover, Plaintiffs' alleged injuries are not fairly traceable to Attorney General Paxton since the only evidence in the case regarding General Paxton conclusively proves that none

of the Defendants have sent "anything" to the Attorney General relating to S.B. 664. Ex. C, 153:8-20. *See Turtle Island Foods, S.P.C.*, 65 F.4th at 215. As Plaintiffs have failed to prove the existence of any injury, any such hypothetical injury cannot be traceable to any action by Defendants.

### 4. Plaintiffs cannot prove an injury redressable by Defendants.

To satisfy standing's redressability requirement, a plaintiff must show that "it is *likely*, as opposed to merely *speculative*, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (emphasis added). When determining redressability, the Court "consider[s] the relationship between 'the judicial relief requested' and the 'injury' suffered." *California*, 593 U.S. at 671. When a defendant has not harmed the plaintiff, "there is no injury for a federal court to redress." *Casillas v. Madison Ave. Assocs., Inc.,* 926 F.3d 329, 332 (7th Cir. 2019). So too here. As explained herein, there is no allegation that any Defendants have taken any action to implement S.B. 664. Lacking same, Plaintiffs do not have any injury for this Court to address.

### 5. Plaintiffs similarly lack standing to bring a Due Process unconstitutional vagueness claim.

Plaintiffs lack standing for their Due Process claims as Plaintiffs preemptively challenge S.B. 664 prior to enforcement. *Nat'l Press Photographers Ass'n v. McCraw*, No. 22-50337, 2023 WL 6968750, at *5 (5th Cir. Oct. 23, 2023). In *National Press Photographers Association*, the Fifth Circuit recently held that plaintiffs lacked standing to bring their Due Process unconstitutional vagueness claims because plaintiffs had never been arrested or prosecuted for violating the statute and the "available evidence suggest[ed] that Defendants have never enforced [the statute] against Plaintiffs (or anybody else.)" *Id.* The Court further declared that whether the contested provisions of the statute were "unlawfully vague in their proscriptions is therefore a mere hypothetical dispute lacking the concreteness and imminence required by Article III." *Id.* (citations omitted). "In the absence of any imminent or even credible threat of prosecution under [the statute],

Plaintiffs lack standing to preemptively challenge [the statute] under the Due Process Clause. *Id.* (citations omitted).

Plaintiffs' Amended Complaint can only be considered a facial attack on S.B. 664 since there have not been any enforcement efforts. *See* Ex. B., 260:18-25; *see also,* Ex. A, 91:16-24; Ex. C., 153:8-20. And, the distinction between a facial attack and an as-applied challenge is critical because "facial challenges are disfavored." *Moody v. NetChoice, LLC,* 603 U.S. 707, 744 (2024). In fact, they are so disfavored that every single justice emphasized such difficulty in the *Moody* opinion. "Claims of facial invalidity often rest on speculation" about the law's coverage and future enforcement, and "facial challenges threaten to short circuit the democratic process" by preventing duly enacted laws from being implemented in constitutional ways." *Id.* at 723 (quoting *Washington State Grange v. Wash. State Rep. Party,* 552 U.S. 442, 450-51 (2008)). The Supreme Court has "therefore made facial challenges hard to win." *Id.* Such is the situation here. As previously explained, Plaintiffs cannot establish Defendants have threatened or even attempted enforcement in any manner. Therefore, Plaintiffs lack standing to bring a Due Process vagueness claim.

### III. PLAINTIFFS' CLAIMS FAIL AS A MATTER OF LAW.

#### A. The Declaratory Judgment Act Does Not Create a Cause of Action.

The Declaratory Judgment Act is not a cause of action. It is "not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see also Sid Richardson Carbon & Gasoline Co. v. Interenergy Res. Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996). A request for a declaratory judgment is not a substantive claim, and for the reasons stated herein, all substantive claims of Plaintiffs withstand constitutional scrutiny thereby immolating Plaintiffs' request for declaratory judgment.

### B. Plaintiffs' Express Preemption Claim Fails.

Plaintiffs' allegation that the Food, Drug, and Cosmetic Act ("FDCA") "expressly preempts [S.B. 664's] disclosure requirements" fails as a matter of law. Am. Comp. ¶ 103. Plaintiffs' claim that S.B. 664 "frustrates Congress's intent to create a uniform labeling scheme," and that S.B. 664 "conflicts with, is expressly preempted by, and otherwise impedes the accomplishment and execution of the full purposes and objectives of federal law," *id.* ¶¶ 104-106, also fails because the FDA has specifically indicated that "standards of identity have not been established for plant-based alternative foods." Labeling of Plant-Based Alternatives to Animal-Derived Foods, 90 Fed. Reg. 1141 (Jan. 7, 2025).  Explaining further, the Food and Drug Administration indicated "[m]any plant-based alternative foods are novel foods and do not have common or usual names established by common usage. Currently, products appear to be identified in multiple ways, sometimes inconsistently across the category. Thus, the purpose of this guidance is to provide our recommendations on best practices for naming and labeling of certain plant-based foods that are marketed and sold as alternatives for animal-derived foods." *Id.* Clearly, the FDA has recognized that there is not currently any "uniform labeling scheme" which is why it is attempting to craft some guidance for plant-based food labeling requirements. Absent conflicting federal law, Plaintiffs' pre-emption claim fails.

The Supreme Court has explained:

> [The Court's] inquiry into the scope of a statute's pre-emptive effect is guided by the rule that [t]he purpose of Congress is the ultimate touchstone in every pre-emption case. Congress may indicate pre-emptive intent through a statute's express language or through its structure and purpose. If a federal law contains an express pre-emption clause, it does not immediately end the inquiry because the question of the substance and scope of Congress' displacement of state law still remains. Pre-emptive intent may also be inferred if the scope of the statute indicates that Congress intended federal law to occupy the legislative field, or if there is an actual conflict between state and federal law. When addressing questions of express or implied pre-emption, we begin our analysis with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Altria Grp., Inc. v. Good*, 555 U.S. 70, 76–77 (2008) (internal citations omitted) (cleaned up).

Plaintiffs' express preemption claim is simply based on the express pre-emption clause, Am.

Comp. ¶ 67, without any attempt to satisfy the substance and scope of any potential displacement of state law due to the FDA's recognition that it lacks any plant-based food labeling laws and same are necessary to "help ensure that that consumers understand the nature or source of individual plant-based alternative foods, including differences among these products, and have the information they need to make informed purchasing decisions." *See* Ex. E, Labeling of Plant-Based Alternatives to Animal-Derived Foods: Draft Guidance for Industry at 3.

While the FDCA has an express preemption provision, the contours of that provision barely touch Plaintiffs' claims for food labeling these products as Plaintiffs currently allege. Moreover, Plaintiffs have failed to prove that any federal provisions expressly preempt the S.B. 664 provisions. Congress has expressed no intent to preempt state statutes for "plant-based" meat product labels, which are "common or usual" products that have not been identified with "statements of identity."

The FDCA "express preemption" provision, or 21 U.S.C. § 343-1(a)(3), states, "Except as provided in subsection (b), no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food of the type required by section 343(b), 343(d), 343(f) ("Prominence Provision"), 343(h), 343(i)(1), or 343(k) of this title that is not identical to the requirements of such section…." Within those provisions, the only potentially applicable provisions are: 343(f) and 343(i)(3).

| 343(f) | **PROMINENCE OF INFORMATION ON LABEL**<br>"A food shall be deemed to be misbranded . . . [i]f any word, statement, or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." |
|--------|---------------------------------------------------------------------------|

| 343(i)(3) | LABEL WHERE NO REPRESENTATION AS TO DEFINITION AND STANDARD OF IDENTITY<br><br>"A food shall be deemed to be misbranded . . . [u]nless its label bears (1) the common or usual name of the food, if any there be, and (2) in case it is fabricated from two or more ingredients, the common or usual name of each such ingredient and if the food purports to be a beverage containing vegetable or fruit juice, a statement with appropriate prominence on the information panel of the total percentage of such fruit or vegetable juice contained in the food; except that spices, flavorings, and colors not required to be certified under section 379e(c) of this title [1] unless sold as spices, flavorings, or such colors, may be designated as spices, flavorings, and colorings without naming each. To the extent that compliance with the requirements of clause (2) of this paragraph is impracticable, or results in deception or unfair competition, exemptions shall be established by regulations promulgated by the Secretary." |
|---|---|

Neither of these provisions preempt or conflict with S.B. 664. The FDCA Prominence Provision only states that the label must be "prominently placed." *See* 21 U.S.C. § 343(f). However, S.B. 664 states that the label must bear "in prominent type equal to or greater in size than the surrounding type and in close proximity to the name of the product" one of the listed terms, including "analogue", "meatless," etc. The FDCA Prominence Provision does not conflict with S.B. 664's provision because S.B. 664 discusses the size of the font while the FDCA Prominence Provision regulates placement generally on the product. Further, Section 343(i)(3) only states that the label list the "common or usual name of the food," which has not even been firmly established for "plant-based" meats. Therefore, this provision is inapposite. Because Plaintiffs have failed to establish the specific provisions of the FDCA and prove how they expressly preempt S.B. 664, Plaintiffs' express preemption claim fails.

### C. The Supremacy Clause is a Rule of Decision.

Plaintiffs' Supremacy Clause claim is not a cause of action. The Supremacy Clause is a rule of decision, not a source of a federal right. "[T]he Supremacy Clause is not the source of any federal rights and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324–25 (2015) (internal quotations and citations omitted); *see also Jefferson*

*Cmty. Health Care Ctrs, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 626 (5th Cir. 2017). Rather, it merely "creates a rule of decision." *Armstrong*, 575 U.S. at 324. As the Supreme Court has explained, the Supremacy Clause instructs courts to "not give effect to state laws that conflict with federal laws." *Id.* In other words, state law cannot "violate" the Supremacy Clause; instead, the Supremacy Clause merely "instructs courts what to do when state and federal law clash." *Id.* at 325–26.

### D. Plaintiffs' Section 1983 Claims Fail.

Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105 (1989). "Section 1983 speaks in terms of 'rights, privileges, or immunities,' not violations of federal law." *Id.* at 106. "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

Plaintiffs allege violations of the Due Process Clause, Dormant Commerce Clause, and First Amendment rights under Section 1983. *See generally*, Am. Comp. However, as will be discussed, *infra* at pp. 14–25, Plaintiffs cannot demonstrate a violation of any of these rights and, more specifically, that any of the named Defendants violated these federal laws. Thus, all of Plaintiffs' Section 1983 fail as a matter of law.

### 1. Plaintiffs fail to state a claim under the Dormant Commerce Clause.

Plaintiffs' Dormant Commerce Claim fails as a matter of law because S.B. 664's purpose or effect is not discriminatory towards out-of-state competitors. Plaintiffs claim that S.B. 664's "purpose and effect are to protect in-state Texas animal-based meat producers from out-of-state competitors who produce plant-based and cultivated meat." Am. Comp. ¶ 110–11. They further allege that the "disclosure requirements" "confe[r] a benefit on in-state meat producers requiring

burdensome and expensive disclosure requirements and necessary changes to marketing and labeling that are only imposed on plant-based and cultivated-meat producers, the vast majority of which are outside of Texas." *Id.* ¶ 111.

"A statute violates the dormant Commerce Clause where it discriminates against interstate commerce either facially, by purpose, or by effect." *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007). "In this context, 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007) (internal citations omitted). If the statute is found to impermissibly discriminate, it can be upheld if the state can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest. *Id.* at 339. (citations omitted).

The party challenging a statute has the burden of proving the discriminatory purpose under the Commerce Clause. *Allstate Ins. Co.*, 495 F.3d at 159. The Supreme Court has emphasized that the following factors are "relevant in determining whether purposeful discrimination has animated a state legislature's action: (1) whether a clear pattern of discrimination emerges from the effect of the state action; (2) the historical background of the decision, which may take into account any history of discrimination by the decision-making body; (3) the specific sequence of events leading up the challenged decision, including departures from normal procedures; and (4) the legislative or administrative history of the state action, including contemporary statements by decisionmakers." *Id.* at 160 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). "Legislators' awareness of a discriminatory effect 'is not enough: the law must be passed' because of that discriminatory effect. The challenger must show that the discriminatory effect was 'a substantial or motivating factor' leading to the enactment of the statute. If the challenger meets that burden, defendants must 'demonstrate that the law would have been enacted without this factor.'" *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 945 F.3d 206, 214 (5th Cir. 2019) (internal citations omitted) (emphasis supplied).

Here, Plaintiffs cannot meet their burden of establishing a discriminatory purpose under the Commerce Clause. *Tesla, Inc. v. La. Auto. Dealers Ass'n*, No. CV 22-2982, 2023 WL 4053438, at *25 (E.D. La. June 16, 2023). In applying *The Village of Arlington Heights* factors, Plaintiffs cannot establish a clear pattern of discrimination that emerges from S.B. 664's effect because all "plant-based" meat producers in and out-of-state are treated equally. All must label their foods in the same fashion. Even the FDA is in the process of promulgating rules relating to labeling requirements for plant-based foods since none currently exist. *See* Ex. D, 90 Fed. Reg. at 1139-41. In-state traditional meat producers must also abide by Texas statutes regarding labeling. Plaintiffs claim that "the State of Texas has bowed to pressure from cattle industry lobbyists" wholly lacks any evidentiary or factual support. Am. Comp. ¶ 20.  Plaintiffs have not elicited any testimony or documents that would support their discrimination claim. Moreover, Plaintiffs cannot show that traditional meat companies are benefitting from out-of-state and in-state "plant-based" meat companies having to follow S.B. 664's requirements.

Second, Plaintiffs cannot show the Texas Legislature has a history of discriminating against "plant-based" meat producers. Indeed, it would be nearly impossible to show such a history of discrimination as "plant-based" meats are a new development in food production, and the legislative intent indicates that the Texas Legislature enacted this S.B. 664 because of the novelty of these types of food products.[11] Plaintiffs attempt to apply the Oklahoma Cattlemen's Association's testimony to the Texas Legislature generally, but this shows no discriminatory animus or discrimination on behalf of the *Texas* Legislature. Am. Comp. ¶ 77. Nor have Plaintiffs shown that Texas has departed from its normal procedures in enacting S.B. 664—S.B. 664 went through the traditional legislative process of enactment and was passed almost unanimously by the

---

[11] S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/analysis/pdf/SB00664F.pdf.

House[12] and Senate.[13] The Legislature's intent is transparent and unambiguous as it shows that with "recent technological advancements [that] have given the ability for companies to create food products from non-traditional sources that mimic traditional sources of protein, . . . it is important for the consumer to understand the nature of the products they are purchasing to feed themselves and their families."[14] Importantly, as the Fifth Circuit recently recognized, for a law to be found discriminatory under the Commerce Clause, it "must be passed *because of that discriminatory effect.*" *Wal-Mart Stores, Inc.*, 945 F.3d at 214 (emphasis supplied). Plaintiffs wholly fail to show *any* discriminatory intent or effect in the passing of S.B. 664 let alone the requisite "substantial or motivating factor leading to the enactment" of S.B. 664. *Id.*

Here, Plaintiffs claim that S.B. 664 will cost them and other companies "millions" to change labels to market their products. Am. Comp. ¶ 91. However, as explained *supra* at p. 7, Plaintiffs' claim is not accurate. Any incidental monetary cost is insufficient to support a Dormant Commerce discrimination claim as the Supreme Court recently held that even when the majority of the compliance costs will be borne by out-of-state companies, the Dormant Commerce Clause is not offended. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 363, 367 (2023) (upholding a California statute that bans "in-state sale of certain pork products derived from breeding pigs confined in stalls so small they cannot lie down, stand up, or turn around" despite the majority of the California statute's compliance costs being initially borne by out-of-state firms.). The Supreme Court emphasized that "[i]n our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior." *Id.* at 374 (emphasis added).

Under S.B. 664, Plaintiffs are also not prevented from communicating the nature and

---

[12] H. Rep, 88th Sess., 2724-25 (Tex. 2023), https://journals.house.texas.gov/hjrnl/88r/pdf/88RDAY53FINAL.PDF.
[13] S. Rep. 88th Sess., 1097 (Tex. 2023), https://journals.senate.texas.gov/sjrnl/88r/pdf/88RSJ04-20-F1.PDF.
[14] S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/analysis/pdf/SB00664F.pdf.

contents of its products to consumers. *Cf.* Am. Comp. ¶ 91. Rather, S.B. 664 will strengthen customers' understanding of the contents and nature of the "plant-based" meat products. As explained by Dr. Stevenson, "[S.B. 664] ensure[s] clear labeling regarding those products that may be sold as meat, poultry, or fish, and that it's clear on the label that it is plant-based to indicate it's not the same kind of meat that's in the standard of identity under the Code of Federal Regulations." Ex. A, 127:7-17 (cleaned up). And Plaintiffs agree that plant-based companies, more than anyone, want their customers to know that they are purchasing non-traditional meat. *See Id.* ¶ 42 ("[P]roducers of plant-based meat alternatives do not want their products to be mistaken for animal-based counterparts, lest their products lose their primary appeal—that they are meat options not made from animals."). S.B. 664 is not discriminatory, and Plaintiffs' attempt to state a claim under the Dormant Commerce Clause fail.

### 2.  Plaintiffs' Dormant Commerce Clause claim fails.

S.B. 664 also passes the *Pike* balancing test because health and safety are well-established legitimate local interests. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Unable to show any excessive burden claim under the Dormant Commerce Clause, Plaintiffs make broad, vague allegations claiming that S.B. 664 will increase costs to consumers, create a "logistical nightmare in distribution channels," and substantially burden the national and international sale of plant-based foods. *Id.* ¶¶ 118-124. They allege that the burdens imposed by the law exceed any legitimate local benefit. *Id.* ¶ 124. Plaintiffs claim that "no non-biased, empirical evidence exists to support a presumption that consumers are confused by the marketing and labeling of plant-based meat products . . .," Am. Comp. ¶ 116, and that this somehow demonstrates that Texas does not have a legitimate local interest. Yet, there is certainly no doubting the Defendants' mission to protect the health and safety of the citizens of Texas. Ex. A, 22:12-22.

To state a claim for excessive burden, a plaintiff must allege that "[i]f the statute does not discriminate, then the statute is valid unless the burden imposed on interstate commerce is 'clearly excessive' in relation to the putative local benefits." *Pike*, 397 U.S. at 142. "Laws that 'merely

impose[ ] an incidental burden on interstate commerce . . . face[ ] much smoother sailing' than those that facially discriminate against interstate commerce." *Tesla, Inc.*, 2023 WL 4053438, at *24 (quoting *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 325 (5th Cir. 2022). Even if the Court were to find that S.B. 664 impermissibly discriminates against out-of-state non-traditional meat producers (which it does not), S.B. 664 should be upheld because Texas has no other means of advancing its legitimate local interest of protecting Texans' health and safety. *See United Haulers Ass'n, Inc.*, 550 U.S. at 343 (emphasizing that "[l]aws favoring local government, by contrast, may be directed toward any number of legitimate goals unrelated to protectionism."). In fact, the FDA is currently promulgating similar, if not more restrictive, labeling rules. *See* 90 Fed. Reg. at 1139. The Texas Legislature is entitled to enact statutes that will protect the health and safety of its citizens--a long-established legitimate and important local interest. *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 306 (1997) (internal citations omitted) (finding that health and safety were important local interests in natural gas regulations and emphasizing that "[The Supreme Court has] consistently recognized the legitimate state pursuit of such interests as compatible with the Commerce Clause, which was 'never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country.'").

Texas indeed has a legitimate local interest in protecting the health and safety of its citizens and has no other means of protecting its citizens from misleading and harmful labeling than to enact S.B. 664 clarifying the law as to food labeling in this burgeoning market of non-traditional meat sources. Because the "plant-based" meat market is newer and growing rapidly, Texas owes it to its citizens to enact laws that will protect its citizens from misleading food labels as to "plant-based" and analogue meats.

### 3. Plaintiffs' Due Process claims fail.

Plaintiffs' vagueness claim is also without merit. Plaintiffs base their Due Process constitutional vagueness claim on one allegation— that S.B. 664 is "unclear" as to what the "name

of the product" means and where "producers must display the required disclosure." Am. Comp. ¶ 89. "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1891 (2018) (alteration in original) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989)). Instead, "[t]he Fourteenth Amendment's guarantee of Due Process proscribes laws so vague that persons 'of common intelligence must necessarily guess at [their] meaning and differ as to [their] application.'" *Women's Med. Ctr. of Nw. Hous. v. Bell,* 248 F.3d 411, 421 (5th Cir. 2001) (alterations in original) (quoting *Smith v. Goguen,* 415 U.S. 566, 572 n.8 (1974)). "A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory enforcement." *Id.* at 421 (citing *Grayned v. City of Rockford,* 408 U.S. 104, 108–9 (1972)). An act does not fail this minimal standard because it did not specifically define common terms like "name of the product" or state exactly where required disclosures about the name of a product should be displayed.

S.B. 664 is not unconstitutionally vague because it does not define "name of the product." Am. Comp. ¶ 89. A provision is not unconstitutionally vague just because "it requires a person to conform his conduct to an imprecise but comprehensible normative standard"; there has to be "no standard of conduct . . . specified at all." *Goguen,* 415 U.S. at 578. Any company or consumer would know that the "name of the product" is the language most prominently displayed on the front of the container. Consumers in a grocery store are not confused about the name for "Frosted Flakes," "Trix—Minis," or "Lucky Charms S'mores" because they are the largest font on the container, closely printed together, and on the front-facing side of the container.

Nor is it "unclear" where "producers must display the required disclosure" because S.B. 664 defines "close proximity." *See* Tex. Health & Safety Code § 431.0805. Under S.B. 664, "close proximity" is defined as "(A) immediately before or after the name of the product; (B) in the line of the label immediately before or after the line containing the name of the product; or (C) within

the same phrase or sentence containing the name of the product." *Id.* Far from creating a "trap [for] the innocent," *Grayned,* 408 U.S. at 108, a common term like "name" of a product and explicitly defining where to place the required information on the food label gives a more-than "reasonable opportunity to know what conduct is prohibited," *Bell,* 248 F.3d at 421. Plaintiffs' vagueness challenge to S.B. 664 fails as a matter of law since ordinary persons are perfectly capable of understanding the meaning of the term "name of the product" and the definition of "close proximity."

### 4. The "speech" in question is commercial speech which withstands intermediate scrutiny under First Amendment analysis.

S.B. 664 is quintessential commercial speech that should be upheld under the *Central Hudson* analysis. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,* 447 U.S. 557, 561 (1980). Plaintiffs' claim that S.B. 664 is "a content-based regulation of speech" and that there is "no substantial state interest to support this regulation . . .."is simply without merit and fails as a matter of law. *Id.* ¶¶ 132, 136.

"Principles of judicial restraint must be employed before a federal court may declare a state law unconstitutional." *Voting for Am., Inc. v. Steen,* 732 F.3d 382, 386 (5th Cir. 2103). In the commercial speech context, "[t]o succeed in a typical facial attack, [Tofurky] would have to establish 'that no set of circumstances exists under which [S.B. 664] would be valid,' or that the statute lacks any 'plainly legitimate sweep . . ." *Strain,* 65 F.4th at 219 (citing *United States v. Stevens,* 559 U.S. 460, 472 (2010)). Furthermore, pursuant to the constitutional avoidance canon, courts "shun an interpretation that raises serious constitutional doubts and instead adopts an alternative that avoids those problems." *Id.*

Commercial speech is defined as "expression related solely to the economic interests of the speaker and its audience," *Houston Balloons & Promotions, LLC v. City of Houston*, 589 F. Supp. 2d 834, 847 (S.D. Tex. 2008) (citing *Central Hudson Gas & Elec. Corp.*, 447 U.S. at 561; *see also Va. Pharm. Bd. v. Va. Citizens Consumer Council,* 425 U.S. 748 (1976)), and is "speech that does no

more than propose a commercial transaction." *Id.* (quoting *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.,* 413 U.S. 376, 385 (1973) (internal quotations omitted). Here, the speech which Plaintiffs allege is restricted is related solely to the economic interests of the speakers (Tofurky, a national "plant-based" meat company that wants its sales to thrive regardless of the effect on consumers and PBFA, a non-profit association created by Tofurky to advance Tofurky and about 200 other companies' profits) and its audience (consumers); its commercial nature is uncontested by Plaintiffs. Am. Comp. ¶ 52 ("This Law commercially harms the plant-based meat industry—effectively making nationwide sales of plant-based meats impossible—and in turn, protects conventional meat producers from competition.").

"Commercial speech that is not false or deceptive and does not concern unlawful activities, however, may be restricted only in the service of a substantial governmental interest, and only through means that directly advance that interest." *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638 (1985) (citing *Central Hudson Gas*, 447 U.S. at 566). If the speech in question *is* misleading or related to unlawful activities, the inquiry ends, and there can be no constitutional objection to restricting the commercial message. *Central Hudson Gas*, 447 U.S. at 563. It is only if the message is *not* misleading *or* related to unlawful activity wherein an inquiry into a substantial state interest would be warranted. *Id*. S.B. 664 only targets "labeling that is false or misleading." *See* Tex. Health and Safety Code § 431.082.

### i. The speech in question is misleading and not protected.

Misleading speech is defined as statements which "deceive or are inherently likely to deceive." *Strain*, 65 F.4th at 220 (citing *Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*, 916 F.3d 483, 488 (5th Cir. 2019)). Here, Plaintiffs repeatedly assert their right to engage in truthful commercial communications. *See generally*, Am. Comp. ¶¶ 13, 95, 131. To that end, Plaintiffs unsurprisingly attempt to circumvent the *Central Hudson Gas* standard by cyclically arguing that the speech they wish to convey is truthful, thereby inferring it must not be misleading. This fails because truthful statements can still be misleading.

Plaintiffs also repeatedly allege that because there are federal and Texas laws that prohibit "misleading" labeling and because no empirical studies have been done to show that consumers are confused about plant-based food labels, Plaintiffs' labels are therefore not misleading. *Id.* ¶¶ 4, 43, 49, 59, 83, 84, 116. However, these arguments fail to disprove the misleading nature of foods labeled as "meat" that wholly consist of plants. Tofurky and PBFA's labels can and do mislead traditional meat-eating customers into buying their product instead of the intended beef or chicken meat product, the impetus for enacting S.B. 664. Without S.B. 664, Plaintiffs, or any other plant-based meat manufacturer, might include terms like "plant-based" or "analogue" (as they have in the illustrations in their Complaint) but fail to enlarge the print so that customers can easily identify that the "burger" or "chorizo" is not meat from an actual bovine or swine. Such speech is inherently misleading and not constitutionally-protected speech.

### ii. The speech in question concerns unlawful activity.

In *Ford Motor Co. v. Tex. Dep't of Transp.,* 264 F.3d 493, 505 (5th Cir. 2001), the Fifth Circuit rejected the Plaintiffs' argument that for commercial speech to be unlawful, "it must be inherently unlawful or otherwise prohibited by some law independent from [the challenged statute]." . "[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Ohralik*, 436 U.S. at 456 (citing *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 502 (1949)). Further, "the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Ohralik*, 436 U.S. at 456. As *Giboney* explained, "[s]uch an expansive interpretation of the constitutional guaranties of speech and press would make it practically impossible ever to enforce laws against agreements in restraint of trade as well as many other agreements and conspiracies deemed injurious to society." 336 U.S. at 502.

Such is the case here. Texas has sought to prioritize clarity and transparency to consumers when purchasing "meat" products in the grocery store.[15] In so doing, Texas has specified—via S.B. 664—parameters within which "plant-based" meat producers must operate.[16] That Plaintiffs seek to continue engaging in communications that now exceed those parameters is in and of itself unlawful, and, therefore, the commercial speech analysis should go no further.  However, should the Court find that Plaintiffs' speech is not misleading nor relating to unlawful activity, S.B. 664 serves a substantial government interest and should be upheld under an intermediate scrutiny analysis.

### iii. S.B. 664 serves a substantial or important governmental interest only through means that directly advances that interest.

The state has a "general interest in protecting consumers and regulating commercial transactions." *Ohralik*, 436 U.S. at 460; *see also,* Ex. A, 22:14-22. In fact, the Supreme Court has long recognized the "premise that legislative power to regulate trade and commerce includes the power to determine what groups, if any, shall be regulated, and whether certain regulations will help or injure businessmen, workers, and the public in general." *Giboney*, 336 U.S. at 497. In passing S.B. 664—with overwhelming bipartisan support—the Texas Legislature emphasized its concerns for the health and safety of Texan citizens. The Legislature clearly stated its intent in drafting and passing S.B. 664 to the Texas Health and Safety Code—"[t]he increase in variety at the food counter can be a positive for consumers, but it is important for the consumer to understand the nature of the products they are purchasing to feed themselves and their families" and "[S.B. 664] adds clarity and transparency for protection to Texas consumers by giving labeling guidelines for products to be labeled prominently and uniformly to indicate the product being made from

---

[15] S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/analysis/pdf/SB00664F.pdf.
[16] Tex. S.B. 664, 88th Sess. Bill, https://capitol.texas.gov/tlodocs/88R/billtext/pdf/SB00664F.pdf.

alternative proteins."[17]

Protecting the health and safety of citizens is a well-established important and substantial government interest. *See Gen. Motors Corp.*, 519 U.S. at 306 (internal citations omitted) (finding that health and safety were important local interests). The Texas Legislature enacted S.B. 664 to protect Texans from purchasing and ingesting foods that could either be harmful or against the culinary interests of the patron. Similarly, the FDA has explained the basis of its plant-based labeling regulations as "its view on best practices for plant-based alternative food labels that are clear and accurate, to help enable consumers to quickly ascertain the attributes of products they are purchasing." *See* Ex. D at 4.

Plaintiffs' commercial speech is appropriately restricted by S.B. 664 because the State of Texas has no other means than implementing laws that will inform Texans in stores buying weekly groceries about the contents in the packages than to direct companies like Tofurky and PBFA into creating labels that will educate the public about the food they are actually purchasing. No disclaimer could meet this need. In fact, most disclaimers are so small that consumers can never even read the fine print. To that end, when one "uses the economic power which he has over other men and their jobs to influence their action, he is doing more than exercising the freedom of speech protected by the First Amendment." *Thomas v. Collins*, 323 U.S. 516, 543 (1945) (Douglas, J., concurring). S.B. 664 is a proper restriction on commercial speech and withstands intermediate scrutiny as outlined in *Central Hudson*.

"In a facial challenge, Tofurky bears the heavy burden of showing that either 'no set of circumstances exists under which [S.B. 664] would be valid,' or that statute lacks any 'plainly legitimate sweep . . .'" *Strain,* 65 F.4th at 220. "In determining whether a law is facially invalid, [courts] must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Id.* Similar to the statute at issue in *Strain,* "nothing in the

---

[17] S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/analysis/pdf/SB00664F.pdf.

statute's language requires the State to enforce [S.B. 664] on a company that sells its products in a way that just so happens to confuse a customer." *Id.* at 221. Since Tex. Health and Safety Code § 431.082 targets labeling that is *actually* "false or misleading," S.B. 664 withstands First Amendment scrutiny for the same reasons set forth in *Strain*. Accordingly, S.B. 664 does not violate the First Amendment's protection of commercial speech.

**PRAYER**

For the foregoing reasons, Dr. Jennifer A. Shuford, in her official capacity as Commissioner of Texas Department of State Health Services, Cecile Erwin Young, in her official capacity as Executive Commissioner of the Texas Department of Health and Human Services Commission, and Ken Paxton, in his official capacity as Attorney General for the State of Texas, respectfully request that this Court grant Defendants' Motion for Summary Judgment. Defendants further request all other relief both at law and in equity to which they may be justly entitled, including but not limited to attorney fees and costs.

Respectfully submitted.

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

/s/ *William H. Farrell*

**William H. Farrell**
Texas Bar No. 00796531
Assistant Attorney General
General Litigation Division
biff.farrell@oag.texas.gov
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 979-5561
Fax: (512) 320-0667
**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served electronically through the court's CM/ECF electronic-filing system on this 31st day of July 2025, to:

Michael Swistara
Animal Legal Defense Fund
525 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533
Email: mswistara@aldf.org
Admitted Pro hac vice
**Attorney for Plaintiffs**

Tarak Anada
Jones Walker, LLP
201 St. Charles Avenue, Suite 4900
New Orleans, LA 70170
(504) 582-8322
Email: tanada@joneswalker.com
**Attorney for Plaintiffs**

Martin Darren Hebel Woodward
Kitner Woodward PLLC
13101 Preston Road
Suite 110
Dallas, TX 75240
(214) 443-4304
Email: martin@kitnerwoodward.com
**Attorney for Plaintiffs**

/s/ *William H. Farrell*
**William H. Farrell**
Assistant Attorney General