IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TURTLE ISLAND FOODS SPC d/b/a/ THE TOFURKY COMPANY, and the PLANT BASED FOODS ASSOCIATION, | § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 1:23-cv-01032-CM |
| GREG ABBOTT, in his official capacity as Texas Governor; JENNIFER A. SHUFORD, in her official capacity as Commissioner of State Health Services; CECILE ERWIN YOUNG, in her official capacity as Executive Commissioner of the Texas Department of Health and Human Services Commission; and Attorney General KEN PAXTON, on behalf of himself and all Texas prosecuting attorneys, | § § § § § § § § § § § § § § | |
| *Defendants.* | § | |

---

**DEFENDANTS' RESPONSE TO PLAINTIFFS' COMBINED BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

KIMBERLY GDULA
Division Chief, General Litigation

WILLIAM H. FARRELL
Assistant Attorney General
Attorney-In-Charge
Texas Bar No. 00796531
Federal ID No. 21733
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 979-5561
Facsimile: (512) 320-0667

**ATTORNEYS FOR DEFENDANTS**

# TABLE OF CONTENTS

**TABLE OF CONTENTS**..........................................................................................................ii

**TABLE OF AUTHORITIES**..................................................................................................iii

**INTRODUCTION** .................................................................................................................. 1

**ARGUMENTS AND AUTHORITIES**....................................................................................1

    I.    Plaintiffs Lack Standing Depriving the Court of Jurisdiction................................... 1

        A.    Plaintiffs Fail to Prove Injury-in-Fact under *Driehaus*. .................................. 1

            1.    S.B. 664 only proscribes false or misleading labels................................2

            2.    Plaintiffs' products have not been determined to be misbranded. ............................3

            3.    Plaintiffs do not have a credible fear of prosecution...................................3

        B.    Plaintiffs have not established an injury-in-fact. ............................................. 4

        C.    Plaintiffs do not have any injury traceable to Defendants. .............................. 5

        D.    Plaintiffs do not have any injury redressable by the Court. ............................. 5

        E.    Plaintiff PBFA does not have associational standing....................................... 5

    II.  S.B. 664 Does Not Violate the First Amendment............................................... 6

        A.    S.B. 664 advances substantial governmental interests. ................................... 7

        B.    S.B. 664 is necessary to accomplish the State's purpose. ............................... 8

        C.    S.B. 664 is in reasonable proportion to the State's interest............................. 8

        D.    S.B. 664 is not vague....................................................................................... 9

        E.    S.B. 664 is not preempted................................................................................11

        F.    S.B. 664 does not violate the Dormant Commerce Clause. ........................... 13

            1.    S.B. 664 does not discriminate against interstate commerce................................... 13

            2.    S.B. 664 does not burden interstate commerce................................... 14

**PRAYER** .............................................................................................................................16

**CERTIFICATE OF SERVICE** ...........................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Allstate Ins. Co. v. Abbott,*
  495 F.3d 151 (5th Cir. 2007) ................................................................ 15

*Casillas v. Madison Ave. Assocs., Inc.,*
  926 F.3d 329 (7th Cir. 2019) .................................................................. 5

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
  447 U.S. 557 (1980) ......................................................................... 6, 7

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ............................................................................ 2

*Edenfield v. Fane,*
  507 U.S. 761 (1993) ............................................................................ 7

*Exxon Corp. v. Gov. of Maryland,*
  437 U.S. 117 (1978) .......................................................................... 14

*Florida Lime & Avocado Growers, Inc. v. Paul,*
  373 U.S. 132 (1963) .......................................................................... 12

*Friends of the Earth, Inc.,*
  528 U.S. 167 (2000) ............................................................................ 2

*Gen. Motors Corp. v. Tracy,*
  519 U.S. 2378 (1997) ....................................................................... 7, 15

*Giboney v. Empire Stor. & Ice, Co.,*
  336 U.S.490 (1949) ............................................................................. 7

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) .......................................................................... 10

*Hunt v. Washington St. Apple Adv. Comm'n,*
  432 U.S. 333 (1977) ............................................................................ 6

*La Union del Pueblo Entero v. Abbott,*
  751 F.Supp.3d 673 (W.D. Tex.—San Antonio, Sept. 28, 2024) ............................ 10

*Laird v. Tatum,*
  408 U.S. 1 (1972) ............................................................................... 4

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ............................................................................ 2

*Minn. Voters All. v. Mansky,*
  585 U.S. 1 (2018) ........................................................................... 9

*Nat'l Endowment for the Arts v. Finley,*
  524 U.S. 569 (1998) ........................................................................ 11

*NextEra Energy Cap. Holdings, Inc. v. Lake,*
  48 F.4th 306 (5th Cir. 2022) .......................................................... 13

*Ohralik v. Ohio State Bar Ass'n,*
  436 U.S. 447 (1978) .......................................................................... 7

*Perea v. Walgreen Co.,*
  939 F.Supp.2d 1026 (C.D. Cal. 2103) ............................................ 12

*Pike v. Bruce Church, Inc.,*
  397 U.S. 137 (1970) ........................................................................ 15

*Plant Based Foods Ass'n v. Stitt,*
  739 F.Supp.3d 966 (W.D. Ok. June 24, 2024) ........................... 5, 6

*Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cty.,*
  205 F.3d 265 (5th Cir. 2000) ............................................................ 5

*Roark & Hardee LP v. City of Austin,*
  522 F.3d 533 (5th Cir. 2008) ..................................................... 10, 11

*Sabri v. United States,*
  541 U.S. 600 (2004) ........................................................................ 11

*Smith v. Goguen,*
  415 U.S. 566 (1974) .......................................................................... 9

*Speech First Inc. v. Fenves,*
  979 F.3d 319 (5th Cir. 2020) ............................................................ 4

*Spokeo, Inc. v. Robins,*
  578 U.S. 330 (2016) ...................................................................... 2, 3

*Steffel v. Thompson,*
  415 U.S. 452 (1974) .......................................................................... 4

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) ...................................................................... 2, 3

*Turtle Island Foods, S.P.C. v. Strain,*
  65 F.4th 211 (5th Cir. 2023) ................................................... passim

*United States v. Stevens,*
    559 U.S. 460 (2010) ................................................................. 6

*Veasey v. Abbott,*
    830 F.3d 216 (5th Cir. 2016) ................................................. 14

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) ............................................................... 10

*Voting for Am., Inc. v. Steen,*
    732 F.3d 382 (5th Cir. 2013) ................................................... 6

*Wal-Mart Stores, Inc. v. Texas Alc. Bev. Comm'n,*
    945 F.3d 206 (5th Cir. 2019) ........................................... 13, 14

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ................................................................. 9

*Women's Med. Ctr. of Nw. Hous. v. Bell,*
    248 F.3d 411 (5th Cir. 2001) .............................................. 9, 10

**Statutes**

21 U.S.C. § 343(f) ........................................................................ 12

21 U.S.C. §§ 341, 343 ................................................................. 11

U.S. Const. art. III ........................................................................ 4

Tex. Health & Safety Code § 431.0805 .................................... 10

Tex. Health & Safety Code § 431.082(d-1) ............................... 12

Tex. Health & Safety Code § 431.082 ........................................ 8

**Regulations**

Labeling of Plant-Based Alternatives to Animal-Derived Foods,
    90 Fed. Reg. 1141 (Jan. 7, 2025) ....................................... 3, 11

**Other Authorities**

Black's Law Dictionary 479 (9th ed. 2009) ................................. 2

H. Rep, 88th Sess., 2724-25 (Tex. 2023),
    https://journals.house.texas.gov/hjrnl/88r/pdf/88RDAY53FINAL.PDF ............................ 13

Julie Tomascik, *Meat labels subject of truth in labeling bill,* Texas Farm Bureau (Mar. 9, 2023),
https://perma.cc/W8LC-ZU65 ................................................................................. 14

S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023),
https://capitol.texas.gov/tlodocs/88R/analysis/pdf/S.B.00664F.pdf .................................... 13

S. Rep. 88th Sess., 1097 (Tex. 2023),
https://journals.senate.texas.gov/sjrnl/88r/pdf/88RSJ04-20-F1.PDF .................................. 13

S.B. 664 ........................................................................................................... passim

## INTRODUCTION

As Plaintiffs readily admit, the First Amendment does not prevent states from enacting regulations to restrict commercial activity that harms consumers. Such is the basis for the Texas Legislature amending the Texas Health and Safety Code related to food labels for analogue foods with Senate Bill 664 ("S.B. 664") – to protect Texans from false or misleading labels on foods they purchase for themselves and their families. And, the United States Supreme Court has already confirmed states have an interest in protecting consumers in commercial transactions.

Despite Plaintiffs' wild and dramatic claims regarding possible, future injuries stemming from compliance with S.B. 664, there is no disputing that Defendants have neither identified any labels determined to be non-compliant nor initiated or threatened any enforcement action against *any* of the Plaintiffs. This is precisely why the Supreme Court has made facial challenges to duly enacted legislation particularly difficult to win. Plaintiffs' claims inevitably rest on speculation as Plaintiffs are unable to establish any impending or imminent injury from compliance with S.B. 664. Indeed, Plaintiffs' injury claims are premised upon the cost of any necessary label changes; yet, as of today, none of the Plaintiffs have had to redesign any labels in order to comply with S.B. 664 as Defendants have yet to identify any non-compliant labels. As such, Plaintiffs have failed to establish an actual controversy to be decided by the Court and lack standing.

Defendants are entitled to summary judgment on all of Plaintiffs' claims because Plaintiffs still lack standing, and Plaintiffs have failed to establish that S.B. 664 fails to pass constitutional scrutiny under any of the claims asserted.

## ARGUMENTS AND AUTHORITIES

### I.  Plaintiffs Lack Standing Depriving the Court of Jurisdiction.

#### A.  Plaintiffs Fail to Prove Injury-in-Fact under *Driehaus*.

To establish standing, Plaintiffs must demonstrate "(1) an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent'; (2) the injury is fairly traceable to the defendant's actions; and (3) it is likely to be redressed by a favorable decision." *Turtle Island Foods, S.P.C. v.*

*Strain*, 65 F.4th 211, 215 (5th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff must clearly allege facts demonstrating each element of Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) ("[P]laintiffs bear the burden of pleading and proving *concrete* facts showing that the defendant's actual action has caused the substantial risk of harm.") (emphasis added).

When challenging a statute before the initiation of any enforcement proceedings, the Fifth Circuit explained that a plaintiff must show (1) it intends to engage in a course of conduct arguably affected with a constitutional interest; (2) the course of action is arguably proscribed by statute; and (3) that there exists a credible threat of prosecution under the statute. *See Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 159 (2014). While the Court previously determined Plaintiffs had sufficiently *alleged* Article III standing at the pleading stage, Order on Motion to Dismiss, Dkt. 25, at pp. 13-15, at the summary judgment stage, Plaintiffs must cite to specific facts supporting their standing argument. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992). Plaintiffs are unable to meet any of the *Driehaus* requirements.

### 1.  S.B. 664 only proscribes false or misleading labels.

Plaintiff Tofurky has indicated "it intends to continue using its current, FDCA-compliant labels nationwide." Dkt. 53, p. 3 (citing Ransom Decl. at ¶7). No Defendant has determined that Plaintiff Tofurky's labels are proscribed by S.B. 664. Absent any indication that Tofurky, or any other plant-based manufacturer's labels are false or misleading, there cannot be any injury. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339, *as revised* (May 24, 2016). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. at 340; *see* Black's Law Dictionary 479 (9th ed. 2009).

Here, Plaintiffs have not shown a "concrete and particularized injury-in-fact." *Friends of the Earth, Inc.,* 528 U.S. 167, 180 (2000). Instead, Plaintiffs simply make broad conclusory statements that S.B. 664 "would hobble Tofurky and other plant-based meat companies represented by PBFA" and that it "would simultaneously [] cost the company millions of dollars

to change labels and marketing representations." Am. Comp. ¶ 91.  In fact, the evidence proves just the opposite. Despite reiterating several times that S.B. 664 would cost Plaintiffs "millions," *see generally*, *Id.* ¶¶ 13, 21, as explained *infra* at I.B, Plaintiffs' have not had to change any labels or marketing representations due to S.B. 664. Plaintiffs cannot point to any concrete harm in any of their allegations. For these reasons, Plaintiffs have not shown any particularized injury, nor have they established any injury that actually exists. *See Spokeo*, 578 U.S. at 339. Plaintiffs fail to satisfy the first element of Article III standing since they are unable to cite specific facts on the record as required under *Lujan*.

### 2. Plaintiffs' products have not been determined to be misbranded.

Although the Court did previously find that "Tofurky's products *may* be considered misbranded under the Amendment," Dkt. 25, p. 12 (emphasis added), Plaintiffs have yet to identify any specific complaints regarding misbranding.[1] As discussed *infra* at I.A.3, the Food and Drug Administration has recognized that it lacks any plant-based food labeling laws and such laws are necessary to "help ensure that consumers understand the nature or source of individual plant-based alternative foods, including differences among these products, and have the information they need to make informed purchasing decisions." *See* Defs. Motion, Ex. D, Labeling of Plant-Based Alternatives to Animal-Derived Foods: Draft Guidance for Industry at 3. S.B. 664 was enacted to address the national-labeling shortcomings to ensure Texas consumers are fully aware of the choices they are making when purchasing foods.

### 3. Plaintiffs do not have a credible fear of prosecution.

The third factor required under *Driehaus* demands "that there exists a credible threat of prosecution under the statute." *Turtle Island Foods, S.P.C.*, 65 F.4th at 215–16 (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). None exists in this case. As explained by

---

[1] Defendants admittedly did indicate that Plaintiffs' labels "can and do mislead [consumers]" in Defendants' Motion for Summary Judgment; however, such statement cannot be considered accurate as all of the evidence indicates exactly the opposite. Dkt. 52, p. 7. The undersigned counsel should not have included such language in its original Motion.

Plaintiffs, when considering a facial challenge, "courts will assume a credible threat of prosecution," *Speech First Inc. v. Fenves,* 979 F.3d 319, 334-35 (5th Cir. 2020); but, any such assumption is rebutted once the Defendants provide "compelling contrary evidence." *Id.,* Resp. at p. 4. In this case, *all* of the evidence indicates that Defendants have not taken *any* enforcement action against *any* Plaintiff. *See* Defs. Motion, Ex. A, Depo. of Dr. Timothy Stevenson, Deputy Commissioner for Consumer Protection Division, Dept. of State Health Services, 260:18-25; *see also,* Ex. B, Depo. of Erin Ransom, Chief Growth Officer of Tofurky, 91:16-24; Ex. C., Depo. of Lewis Ressler, Operations Manager, Manufactured Foods Program, Dept. of State Health Services, 153:8-20.

Even in the First Amendment context where the requirements of demonstrating an Article III injury are slightly relaxed, a plaintiff must show a substantial threat of enforcement that is not "chimerical." *Steffel v. Thompson,* 415 U.S. 452, 459 (1974). Plaintiffs are required to show some objective basis to support their allegation of a "credible fear of prosecution," and the evidence belies any such basis. "Allegations of a subjective 'chill' are not an adequate substitute for claim of a specific present objective harm or a threat of specific future harm, 'the federal courts established pursuant to Article III of the Constitution do not render advisory opinions." *Laird v. Tatum,* 408 U.S. 1, 13-14 (1972). Plaintiffs are unable to satisfy any of the factors required under *Driehaus.*

### B. Plaintiffs have not established an injury-in-fact.

Plaintiff Tofurky alleges "just changing the physical labels to comply with Texas law will likely cost Tofurky 'many tens and tens of thousands of [] dollars,' in the form of writing off 'as many as two years' worth of packaging inventory,' heavily discounting product already in the marketplace, and costs associated with buying, designing, ensuring compliance, warehousing, and distributing new packaging." Dkt. 53, p. 6. Yet, Plaintiff Tofurky has not needed to make any changes to its current labeling practice. Nor has Plaintiff Tofurky shown any impact to distributor relationships resulting from compliance with S.B. 664.

Plaintiffs allege their "injuries are based on the real economic costs, to Tofurky and other PBFA members, of attempting to comply with a vague law and risking enforcement" absent any evidence to support such claims; however, at least Plaintiff Tofurky, has indicated it is not aware of any enforcement actions taken by Defendants. Depo. of Erin Ransom, 73: 1-4. All of Plaintiffs' alleged injuries are premised upon future, speculative events that are insufficient to establish the required injury-in-fact. Plaintiffs "future injury under these circumstances is too conjectural and hypothetical to provide Article III standing." *Prestage Farms, Inc. v. Bd. of Sup'rs of Noxubee Cty.,* 205 F.3d 265, 268 (5th Cir. 2000).

### C.  Plaintiffs do not have any injury traceable to Defendants.

Without any threatened or potential enforcement action taken against them by Defendants, Plaintiffs have not suffered any injury traceable to Defendants. In fact, the evidence again proves just the opposite. No Defendant has taken any steps against a plant-based food manufacturer, retailer or distributor, whether in the form of a letter, detaining a product, or the issuance of an administrative penalty as a result of an alleged violation of S.B. 664. *See supra,* Section I.A.3 .

While the Court previously found "Tofurky's amended complaint sufficiently *alleges* that the threat of enforcement of the Amendment is traceable to these Defendants," Dkt. 25, p. 13, the Court can no longer simply assume a credible threat of prosecution when all of the evidence indicates otherwise. Plaintiffs' reliance upon the Court's prior Order is misplaced.

### D.  Plaintiffs do not have any injury redressable by the Court.

When a defendant has not harmed the plaintiff, "there is no injury for a federal court to redress." *Casillas v. Madison Ave. Assocs., Inc.,* 926 F.3d 329, 332 (7th Cir. 2019). So too here. As explained, there is no allegation that any Defendants have taken any action to enforce S.B. 664. Lacking same, Plaintiffs do not have any injury for this Court to address.

### E.  Plaintiff PBFA does not have associational standing.

PBFA "cannot assert standing simply because it objects to [S.B. 664]." *Plant Based Foods Ass'n v. Stitt,* 739 F.Supp.3d 966, 975 (W.D. Ok. June 24, 2024). In order to invoke standing as the

representative of its members, PBFA must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and, (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 976 (citing *Hunt v. Washington St. Apple Adv. Comm'n,* 432 U.S. 333, 343 (1977)). PBFA is unable to satisfy the first requirement.

PBFA lacks standing for the same reasons Tofurky lacks standing. Not only does the evidence indicate the lack of enforcement efforts against Tofurky, the evidence indicates the lack of enforcement against any plant-based food manufacturer. *See* Defs. Motion, Ex. B., Depo. of Dr. Timothy Stevenson, 260:18-25; Ex. C., Depo. of Lewis Ressler, 153:8-20. As such, no member of PBFA can show any injury that may be traced to the conduct of Defendants and redressable by an order of the Court.

## II.  S.B. 664 Does Not Violate the First Amendment.

S.B. 664 regulates commercial speech that should be upheld under the *Central Hudson* analysis. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,* 447 U.S. 557, 561 (1980). "Principles of judicial restraint must be employed before a federal court may declare a state law unconstitutional." *Voting for Am., Inc. v. Steen,* 732 F.3d 382, 386 (5th Cir. 2103). In the commercial speech context, "[t]o succeed in a typical facial attack, [Tofurky] would have to establish 'that no set of circumstances exists under which [S.B. 664] would be valid,' or that the statute lacks any 'plainly legitimate sweep . . . .'" *Strain,* 65 F.4th at 219 (citing *United States v. Stevens,* 559 U.S. 460, 472 (2010)). In addition to innumerable circumstances under which S.B. 664 is valid, the statute also directly affects the State's interest, to which Tofurky agrees, in keeping its consumers informed regarding the products they are purchasing. *See* Def. Motion, Ex. B, 64:13-20. S.B. 664 does not violate the First Amendment.

As agreed by Plaintiffs, the labels at issue are commercial speech. Resp. at 9. And, the Supreme Court has explained "the 'commonsense' distinction between speech proposing a commercial transaction, which occurs in an area traditionally subject to government regulation,

and other varieties of speech." *Central Hudson Gas & Elec. Co. v. Pub. Ser. Comm'n of New York,* 447 U.S. 557, 563 (1980). To determine whether a regulation withstands judicial scrutiny, courts "ask whether the State's interest in proscribing it are substantial, whether the challenged regulation advances these interests in a direct and material way, and whether the extent of the restriction on protected speech is in reasonable proportion to the interests served." *Edenfield v. Fane,* 507 U.S. 761, 767 (1993). S.B. 664 meets all three requirements.

### A. S.B. 664 advances substantial governmental interests.

Plaintiffs agree the State has a "general interest in protecting consumers and regulating commercial transactions." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978); *see also,* Defs. Motion, Ex. A, 22:14-22, Ex. B, 64:13-20. In fact, the Supreme Court has long recognized the "premise that legislative power to regulate trade and commerce includes the power to determine what groups, if any, shall be regulated, and whether certain regulations will help or injure businessmen, workers, and the public in general." *Giboney v. Empire Stor. & Ice, Co.*, 336 U.S. 490, 497 (1949). Protecting the health and safety of citizens is a well-established important and substantial government interest. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 306 (1997) (internal citations omitted) (finding that health and safety were important local interests). When enacting S.B. 664 the Texas Legislature indicated "[t]he increase in variety at the food counter can be a positive for consumers, but it is important for the consumer to understand the nature of the products they are purchasing to feed themselves and their families." and "[c]larity can be given to consumers by the addition of definitions as well as labeling requirements regarding the type and size of the verbiage." See Exhibit 1, Sponsor's Statement of Intent, S.B. 664, May 24, 2023. The FDA also agrees there is a need to have "labels that are clear and accurate, to help enable consumers to quickly ascertain the attributes of products they are purchasing." *See* Defs. Motion, Ex. D at 4.

**B.   S.B. 664 is necessary to accomplish the State's purpose.**

Lacking any federal plant-based food labeling laws that "help ensure that that consumers understand the nature or source of individual plant-based alternative foods," Texas enacted legislation to specifically address any misleading labels on plant-based foods. Plaintiffs repeatedly allege that because there are federal and Texas laws that prohibit "misleading" labeling and because no empirical studies have been done to show that consumers are confused about plant-based food labels, Plaintiff Tofurky's labels are therefore not misleading. *Id.* ¶¶ 4, 43, 49, 59, 83, 84, 116. However, these arguments fail to disprove circumstances wherein foods labeled as "meat" that wholly consist of plants would confuse consumers and, therefore, clearly be permissible under the *Central Hudson* analysis. Plant-based food manufacturers could mislead  customers seeking to purchase meat into buying their product instead of the intended beef or chicken meat product, which is the precise impetus for enacting S.B. 664. Without S.B. 664, Plaintiffs, or any other plant-based meat manufacturer, might include terms like "plant-based" or "analogue" (as they have in the illustrations in their Complaint) but fail to enlarge the print so that customers can easily identify that the "burger" or "chorizo" is not meat from an actual bovine or swine. Such speech is inherently misleading and not constitutionally-protected speech.

**C.   S.B. 664 is in reasonable proportion to the State's interest.**

In light of its concerns over the possibility of mislabeling of plant-based foods, the State passed S.B. 664 to clearly delineate the requirements of such food labels to ensure its consumers remain fully informed when making their purchasing decisions. *See* S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/-analysis/pdf/S.B.00664F.pdf.   Since S.B. 664 only targets "labeling that is false or misleading," the law is a reasonable restriction on the manner in which plant-based food manufacturers may advertise their products to the public. *See* Tex. Health and Safety Code § 431.082.

"In determining whether a law is facially invalid, [courts] must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Strain,*

65 F.4th at 220. Similar to the statute at issue in *Strain,* Tofurky is concerned that it could be held liable if its labeling "unintentionally confuses a consumer into thinking its product is an agricultural product as defined by [S.B. 664]" and "that *Central Hudson*'s First Amendment protections should apply to its conduct so it can be protected from enforcement actions in the event of this outcome." *Id.* at 221. Noting that this was one way to read the law, the Fifth Circuit indicated "it is far from the only way to read [S.B. 664]." *Id.* Following the State's arguments herein, the Court noted:

> The State's construction limits the Act's scope to representations by companies that *actually intend* consumers to be misled about whether a product is an "agricultural product" when it is not. This interpretation is not contradictory to the Act, and we thus accept it for the present purposes of evaluating Tofurky's facial challenge. . . Consequently, we conclude that the Act, when narrowly construed, does not violate the First Amendment's protection of commercial free speech.

*Id.* (emphasis in original). Since S.B. 664 targets labeling that is *actually* false or misleading, S.B. 664 withstands First Amendment scrutiny for the same reasons set forth in *Strain.* Accordingly, S.B. 664 does not violate the First Amendment's protection of commercial speech.

### D. S.B. 664 is not vague.

Plaintiffs' vagueness claim is also without merit. Plaintiffs base their Due Process constitutional vagueness claim on one allegation— that S.B. 664 is "unclear" as to what the "name of the product" means and where "producers must display the required disclosure." Am. Comp. ¶ 89. "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Minn. Voters All. v. Mansky*, 585 U.S. 1, 21 (2018) (alteration in original) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989)). Instead, "[t]he Fourteenth Amendment's guarantee of Due Process proscribes laws so vague that persons 'of common intelligence must necessarily guess at [their] meaning and differ as to [their] application.'" *Women's Med. Ctr. of Nw. Hous. v. Bell,* 248 F.3d 411, 421 (5th Cir. 2001) (alterations in original) (quoting *Smith v. Goguen,* 415 U.S. 566, 572 n.8 (1974)). "A law is unconstitutionally vague if it (1) fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited, or (2) is so indefinite that it allows arbitrary and discriminatory

enforcement." *Id.* at 421 (citing *Grayned v. City of Rockford,* 408 U.S. 104, 108–9 (1972)). An act does not fail this minimal standard because it did not specifically define common terms like "name of the product" or state exactly where required disclosures about the name of a product should be displayed.

In addition to requiring manufacturers to identify the name of the product, they are required to include qualifying language before, after or on the same line of text as the name of the product indicating it is a plant-based food. *See* Tex. Health & Safety Code § 431.0805. Requiring manufacturers to include a "name" and "qualifying language" fails to create a "trap [for] the innocent," *Grayned,* 408 U.S. at 108, but provides a "reasonable opportunity to know what conduct is prohibited," *Bell,* 248 F.3d at 421. While agreeing that the proximity term is defined, Plaintiffs claim to "gain no clarity from knowing they must include qualifiers 'immediately before or after'" the name of the product. Resp. at p. 22. Such argument strains credulity. Notwithstanding Plaintiffs' attempt to aggrandize their confusion, Plaintiffs' interpretation is a far cry from requiring lay persons to "perform[] the lawyer-like task of statutory interpretation by reconciling the text of [] separate documents." Resp. at p. 23, *see also, La Union del Pueblo Entero v. Abbott,* 751 F.Supp.3d 673, 728 (W.D. Tex.—San Antonio, Sept. 28, 2024).

To be unconstitutionally vague, a statute must be "impermissibly vague in *all* its applications," *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455, U.S. 489, 495 (1982), including its application to the party bringing the vagueness challenge. *Roark & Hardee LP v. City of Austin,* 522 F.3d 533, 551 (5th Cir. 2008). Further, a "reviewing court should 'examine the complainant's conduct *before* analyzing other hypothetical application of the law.'" *Hoffman,* 522 F.3d at 547. Accordingly, as a threshold matter, Plaintiffs must show that S.B. 664 is vague in this case which it remains unable to show.

As shown *supra* at Sections I.A.3 and I.E., Defendants have not instituted any enforcement measures against any of the Plaintiffs or other plant-based food manufacturer. This fact alone dooms Plaintiffs' vagueness claim. And, for the reasons explained *supra* at Section II, Plaintiffs'

claims fail to implicate constitutionally-protected conduct since Plaintiffs are unable to establish that no set of circumstances exists under which S.B. 664 is valid. Plaintiffs "confront a heavy burden in advancing a facial constitutional challenge," *Roark,* 522 F.3d at 548, which is why "[f]acial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly, and only as a last resort. *Nat'l Endowment for the Arts v. Finley,* 524 U.S. 569, 580 (1998).[2] Notwithstanding Plaintiffs' hypothetical and speculative word play, Plaintiffs cannot carry their heavy burden to prove facial invalidity, and their claim risks the "premature interpretation[n]" of S.B. 664. *See, Sabri v. United States,* 541 U.S. 600, 609 (2004). Plaintiffs' vagueness claim fails.

**E.  S.B. 664 is not preempted.**

Plaintiffs' allegation that the Food, Drug, and Cosmetic Act ("FDCA") "expressly preempts [S.B. 664's] disclosure requirements" fails as a matter of law. Am. Comp. ¶ 103. Plaintiffs' claims that S.B. 664 "frustrates Congress's intent to create a uniform labeling scheme," and that S.B. 664 "conflicts with, is expressly preempted by, and otherwise impedes the accomplishment and execution of the full purposes and objectives of federal law," *id.* ¶¶ 104-106, also fail because the FDA has specifically indicated that "standards of identity have not been established for plant-based alternative foods." Labeling of Plant-Based Alternatives to Animal-Derived Foods, 90 Fed. Reg. 1141 (Jan. 7, 2025).

While Plaintiffs find the Defendants' argument regarding preemption to be "bizarre," The FDA's own guidance document clearly states "[p]lant-based alternative foods do not have established definitions and standards of identity and are 'non-standardized foods.'" *See* Defs. Motion, Ex. D at 6. In support of their basis for issuing the Draft Guidance, the FDA relies on 21 U.S.C. §§ 341, 343. *Id.* Interestingly, Plaintiffs rely upon the same sections of Chapter 21 to reach a different conclusion. Resp. at pp. 25-26. Absent conflicting federal law, Plaintiffs' pre-emption

---

[2] Although Plaintiffs claim S.B. 664 is unconstitutionally vague "as applied," Resp. at 18, there is no evidence in the record to indicate any provision of S.B. 664 has been applied to any Plaintiff in this case.

claim fails.

Plaintiffs rely upon a 2013 case from the Central District of California for the proposition that "[a]ny state law regarding a food product's statement of identity not contained in these regulations is preempted and unconstitutional under the Supremacy Clause." *Perea v. Walgreen Co.,* 939 F.Supp.2d 1026, 1038 (C.D. Cal. 2103). Yet, this Court has already determined that "[b]oth parties agree that there is no standard of identity for plant-based meat products," Dkt. 25, p. 19, and, apparently, the FDA also agrees. *See* Ex. 2. Furthermore, the plaintiff in *Perea* was relying upon a state adopted "standard of identity for honey" that specifically conflicted with the federal standard of identity of honey. *Perea,* 939 F.Supp.2d at 1037. The facts of this case are clearly different, and the court's holding in *Perea* is inapplicable.

None of the provisions of S.B. 664 conflict with the provisions of the FDCA. The FDCA Prominence Provision only states that the label must be "prominently placed," 21 U.S.C. § 343(f), while S.B. 664 is concerned with the size of the qualifier. Tex. Health & Safety Code §431.082(d-1). The FDCA Prominence Provision does not conflict with S.B. 664's provision because S.B. 664 discusses the size of the font while the FDCA Prominence Provision regulates placement generally on the product. Further, Section 343(i)(3) only requires that the label list the "common or usual name of the food," which has not even been firmly established for "plant-based" meats. To address the Court's inquiry, S.B. 664 does not require a second product name in addition to a product's statement of identity nor is there any evidence to indicate otherwise. *See* Dkt. 25, p. 20. The FDCA, the Code of Federal Regulations, and S.B. 664 all require a qualifier to indicate the product is not derived from animals. And, such a qualifier is required since "it is well established that the states have a legitimate interest in protecting local citizens against fraudulent or deceptive marketing and sale of food products." *Perea,* 939 F.Supp.2d at 1037 (citing *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 144 (1963). Because Plaintiffs cannot establish the specific provisions of the FDCA that preempt S.B. 664 nor prove how they expressly preempt S.B. 664, Plaintiffs' express preemption claim fails.

**F.  S.B. 664 does not violate the Dormant Commerce Clause.**

    **1.  S.B. 664 does not discriminate against interstate commerce.**

Plaintiffs have alleged the "disclosure requirements" of S.B. 664 "confe[r] a benefit on in-state meat producers requiring burdensome and expensive disclosure requirements and necessary changes to marketing and labeling that are only imposed on plant-based and cultivated-meat producers, the vast majority of which are outside of Texas." *Id.* ¶ 111. Yet, Plaintiffs have not provided any indicia of support for their claim, and the fact intensive analysis required by the Fifth Circuit does not support Plaintiffs' claims of any benefits conferred on their competitors. *See NextEra Energy Cap. Holdings, Inc. v. Lake,* 48 F.4th 306, 327 (5th Cir. 2022).

Nor have Plaintiffs shown any discriminatory animus or discrimination on behalf of the *Texas* Legislature when enacting S.B. 664. Am. Comp. ¶ 77. S.B. 664 was passed almost unanimously by the House[3] and Senate.[4] The Legislature's intent is transparent and unambiguous as it shows that with "recent technological advancements [that] have given the ability for companies to create food products from non-traditional sources that mimic traditional sources of protein, . . . it is important for the consumer to understand the nature of the products they are purchasing to feed themselves and their families."[5] Importantly, as the Fifth Circuit recently recognized, for a law to be found discriminatory under the Commerce Clause, it "must be passed *because of that discriminatory effect.*" *Wal-Mart Stores, Inc.*, 945 F.3d 206, 214 (5th Cir. 2019) (emphasis supplied). Plaintiffs wholly fail to show *any* discriminatory intent or effect in the passing of S.B. 664 let alone the requisite "substantial or motivating factor leading to the enactment" of S.B. 664. *Id.*

Defendants do not dispute that meat and poultry industry representatives had *a* meeting

---

[3] H. Rep., 88th Sess., 2724-25 (Tex. 2023), https://journals.house.texas.gov/hjrnl/88r/pdf/88RDAY53FINAL.PDF.

[4] S. Rep. 88th Sess., 1097 (Tex. 2023), https://journals.senate.texas.gov/sjrnl/88r/pdf/88RSJ04-20-F1.PDF.

[5] S. Comm. Rep., 88th Sess., Author/Sponsor's Statement of Intent (Tex. 2023), https://capitol.texas.gov/tlodocs/88R/analysis/pdf/S.B.00664F.pdf.

with Texas legislators during the enactment process for S.B. 664; however, Plaintiffs have yet to establish any discrimination that was a "substantial or motivating factor" in passing the law as required by the Fifth Circuit. *Veasey v. Abbott,* 830 F.3d 216, 231 (5th Cir. 2016); *see also,* Defs. Motion, Ex. A, 197:3-14. Additionally, it appears that legislators relied upon a survey that supported their efforts and established the "legislation [was] good for Texans." Julie Tomascik, *Meat labels subject of truth in labeling bill,* Texas Farm Bureau (Mar. 9, 2023), https://perma.cc/W8LC-ZU65. The evidence shows the legislators reviewed available materials and information to appropriately draft legislation to prevent false or misleading plant-based food labels.

Finally, as Plaintiffs agree, "[t]he Commerce Clause exists to 'protect[] the interstate market, not particular interstate firms from prohibitive or burdensome regulations.'" *Wal-Mart Stores, Inc.* 945 F.3d at 223 (quoting *Exxon Corp. v. Gov. of Maryland,* 437 U.S. 117, 127-28 (1978)). As such, Plaintiffs' claims that almost all plant-based manufacturers are located outside the State of Texas remain irrelevant to the facts of this case. As in *Exxon,* wherein the Supreme Court upheld a restriction upon primarily interstate companies, S.B. 664 should be upheld because (1) it does not restrict interstate dealers in the retail market, (2) does not restrict the flow of interstate goods, (3) does not place added costs on interstate goods, and (4) does not distinguish between in-state and out-of-state retailers in the market. *See Exxon,* 437 U.S. at 126. So too here. Plaintiffs have not shown any impact to the flow of interstate goods, and, therefore, have shown no practical effect of discriminating against interstate producers and the interstate market.

### 2. S.B. 664 does not burden interstate commerce.

When reviewing a Dormant Commerce Clause claim based on excessive burden, the Supreme Court has explained that courts should consider "(1) whether the law burdens interstate commerce, (2) whether there is a 'legitimate local interest in the law,'" and (3) when *both* are present, if the extent of the burden should be tolerated based on the local interest involved, including if the interest 'could be promoted as well with a lesser impact on interstate activities.'"

*Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970) (emphasis added). Here, Plaintiffs have shown no burden at all.

Ensuring the health and safety of consumers has always been recognized as a legitimate state interest and compatible with the Commerce Clause which was "never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens [even] though the legislation might indirectly affect the commerce of the country." *Gen. Motors Corp*, 519 U.S. at 306. Here, Plaintiffs have not shown any burden on the commerce of the plant-based food industry. In fact, Erin Ransom, the Chief Growth Officer for Tofurky, explained that since 2023, "sales have remained flat . . . all retail grocery is flat . . . and the industry has just restabilized since the pandemic meaning people are sort of back to their old habits of calorie consumption when compared to before the pandemic." *See* Defs. Motion, Ex. B, 86:11 – 87:3 (cleaned up). Clearly, S.B. 664 has not burdened the plant-based food industry. *See Allstate Ins. Co. v. Abbott,* 495 F.3d 151, 163 (5th Cir. 2007) (holding "[a] statute imposes a burden when it inhibits the flow of goods interstate.").

Plaintiffs' expert claims "[i]t is an insurmountable burden in terms of sales and distribution to have brands fundamentally change their label in such a large way for one state alone," and such a change "would stymie and effectively kill nationwide distribution of packaged food products." Resp. at 39. Yet, there is simply no evidence or other indication that any plant-based food manufacturer has had to implement any label changes resulting from the enactment of S.B. 664 as indicated by the lack of any enforcement actions taken against any manufacturers to date. *See* Defs. Motion, Ex. A, Depo. of Dr. Timothy Stevenson, Deputy Commissioner for Consumer Protection Division, Dept. of State Health Services, 260:18-25; *see also,* Ex. B, Depo. of Erin Ransom, Chief Growth Officer of Tofurky, 91:16-24; Ex. C., Depo. of Lewis Ressler, Operations Manager, Manufactured Foods Program, Dept. of State Health Services, 153:8-20.

*   *   *   *

The State of Texas enacted S.B. 664, nearly unanimously, to ensure its consumers were

well informed when choosing which foods to purchase for themselves and their families. There cannot be any *real* dispute regarding the legitimacy of the State's interest. Notwithstanding Plaintiffs' hypothetical and speculative claims bemoaning the end of the plant-based food industry within the State, the only evidence indicates the deficiency of such claims as none of the Defendants have taken any actions against any of Plaintiffs' products. S.B. 664 simply prohibits labeling practices that are misleading to consumers, and, as of yet, no misleading products have been identified. Legislation such as S.B. 664 is permissible under the First Amendment, and Plaintiffs' facial challenge should be summarily dismissed.

## PRAYER

For the foregoing reasons, Dr. Jennifer A. Shuford, in her official capacity as Commissioner of Texas Department of State Health Services, Cecile Erwin Young, in her official capacity as Executive Commissioner of the Texas Department of Health and Human Services Commission, and Ken Paxton, in his official capacity as Attorney General for the State of Texas, respectfully request that this Court grant Defendants' Motion for Summary Judgment.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

/s/ *William H. Farrell*
**William H. Farrell**
Texas Bar No. 00796531
Assistant Attorney General
General Litigation Division
biff.farrell@oag.texas.gov
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Phone: (512) 979-5561
Fax: (512) 320-0667
COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served electronically through the court's CM/ECF electronic-filing system on this 11th day of September 2025, to:

Michael Swistara
Animal Legal Defense Fund
525 East Cotati Avenue
Cotati, CA 94931
(707) 795-2533
Email: mswistara@aldf.org
Admitted Pro hac vice
**Attorney for Plaintiffs**

Tarak Anada
Jones Walker, LLP
201 St. Charles Avenue, Suite 4900
New Orleans, LA 70170
(504) 582-8322
Email: tanada@joneswalker.com
**Attorney for Plaintiffs**

Martin Darren Hebel Woodward
Kitner Woodward PLLC
13101 Preston Road
Suite 110
Dallas, TX 75240
(214) 443-4304
Email: martin@kitnerwoodward.com
**Attorney for Plaintiffs**

/s/ *William H. Farrell*
**William H. Farrell**
Assistant Attorney General