**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

PLANT BASED FOODS ASSOCIATION, and
TURTLE ISLAND FOODS INC.,

      *Plaintiffs,*

v.

JENNIFER SHUFORD, *in her official capacity as*
*Commissioner of State Health Services, et al.*

      *Defendants.*

Case No. 1:23-cv-01032

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY**
**JUDGMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES......................................................................................... iii

INTRODUCTION ...........................................................................................................1

ARGUMENT ...................................................................................................................2

    I.      Plaintiffs have Standing. ...........................................................................2

    II.     The Law violates the First Amendment....................................................4

       A.   The State has not demonstrated that its restrictions directly advance any substantial government interest......................................................5

       B.   The State has not demonstrated that the Law is not more restrictive than necessary to accomplish the State's purported purpose. ....................6

    III.    The Law is unconstitutionally vague. .......................................................8

    IV.   The Law is preempted by federal law.......................................................9

    V.     The Law violates the Commerce Clause...................................................11

CONCLUSION............................................................................................................. 13

CERTIFICATE OF SERVICE ......................................................................................2

# TABLE OF AUTHORITIES

## Cases

*Bell v. Publix Super Markets, Inc.*,
  982 F.3d 468 (7th Cir. 2020)..................................................................................10

*Bolger v. Youngs Drug Products Corp.*,
  463 U.S. 60 (1983)................................................................................................4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..............................................................................................7

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
  447 U.S. 557 (1980)..............................................................................................4

*Edenfield v. Fane*,
  507 U.S. 761 (1993)..............................................................................................4

*Ivie v. Kraft Foods Glob., Inc.*,
  961 F. Supp. 2d 1033 (N.D. Cal. 2013)...............................................................10

*James v. Tex. Collin Cty.*,
  535 F.3d 365 (5th Cir. 2008)...............................................................................13

*Lopez v. Home Depot U.S.A., Inc.*,
  No. 1:15-cv-1059-RP, 2017 WL 500021
  (W.D. Tex. Feb. 7, 2017).....................................................................................12

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996).............................................................................................10

*Nemphos v. Nestle Waters N. Am., Inc.*,
  775 F.3d 616 (4th Cir. 2015)...............................................................................11

*Perea v. Walgreen Co.*,
  939 F. Supp. 2d 1026 (C.D. Cal. 2103).................................................................10

*Prestage Farms, Inc. v. Board of Supervisors of Noxubee County*,
  205 F.3d 265 (5th Cir. 2000)..................................................................................4

*Ragas v. Tenn. Gas Pipeline Co.*,
  136 F.3d 455 (5th Cir. 1998)...............................................................................12

*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020)..................................................................................3

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)...............................................................................................2

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) ...................................................................................10

*Turtle Island Foods, S.P.C. v. Strain*,
   65 F.4th 211 (5th Cir. 2023) .................................................................................3, 7

*United States v. O'Brien*,
   391 U.S. 367 (1968) ...............................................................................................12

*Veasey v. Abbott*,
   830 F.3d 216 (5th Cir. 2016) ..................................................................................12

*Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982) .................................................................................................2

**Statutes**

15 U.S.C. § 45 ...............................................................................................................5

21 U.S.C. § 343(a)(1) ................................................................................................5, 9

21 U.S.C. § 343(a)–(c) ..................................................................................................5

21 U.S.C. § 343(f) .........................................................................................................6

21 U.S.C. § 343(i)(1) .....................................................................................................9

21 U.S.C. § 343–1(a)(3) ...........................................................................................9, 10

La. Stat. Ann. § 3:4743(12)–(13) ..................................................................................7

Tex. Bus. & Com. Code § 17.46 ....................................................................................5

Tex. Health & Safety Code § 431.082(d–1) ..................................................................6

**Other Authorities**

FDA, A Food Labeling Guide: Guidance for Industry 7 (2013) ................................10

S.B. 664 ..........................................................................................................................1

**Rules**

Fed. R. Civ. Pro. 56(c) .................................................................................................12

**Regulations**

21 C.F.R. § 101.3(b) ....................................................................................................10

21 C.F.R. § 102.5 .........................................................................................................10

21 C.F.R. § 102.5(a) ..............................................................................................................6

21 C.F.R. § 102.5(d) ..............................................................................................................6

## INTRODUCTION

Although there are pending cross-motions for summary judgment, only Plaintiffs have met the burden justifying summary judgment in their favor. Plaintiffs have shown, with uncontested evidence in the record, that (1) there is no consumer confusion in Texas to justify the challenged regulation of lawful commercial speech, (2) S.B. 664 (the "Law") is vague, (3) the Law creates standards different from federal law that are preempted, and (4) the Law will place great burdens on interstate commerce. *See* Dkt. 53. Contrastingly, Defendants' Reply, Dkt. 55, is replete with unsupported assertions, contradictions, misstatements, and a noticeable absence of engagement with Plaintiffs' substantive arguments.

To illustrate, Defendants assert, but fail to introduce any evidence to support, that there is a pressing need for the Law. Defendants claim the Law "was enacted to address the national-labeling shortcomings to ensure Texas consumers are fully aware of the choices they are making when purchasing foods," *id.* at 3, but admit there have been no consumer complaints in the decades they have regulated plant-based products and also acknowledge that existing FDA regulations are comprehensive. Ressler Dep., Ex. 1, at 34:7-13; Dkt. 53-8 at 128:14-16, 134:1-16; Dkt. 53-11, at No. 4.

Defendants simultaneously argue that there are no federal laws that govern plant-based foods, hence the need for S.B. 664, but **also** that the federal Food, Drug, and Cosmetic Act's ("FDCA") dictates label requirements for plant-based foods. Dkt. 55, at 8, 12.

Defendants also represent that Plaintiffs have agreed that the Law "affects" their purported state interest (*i.e.,* protecting the "health of Texans" and preventing consumer confusion) when they have not—because no evidence of consumer confusion has been introduced, and the only relevant evidence in the record suggests such confusion does not exist and the Law may even create new confusion. *See id.* at 6.

1

Defendants also misstate the law. Defendants confuse *statements* of identity with *standards* of identity, *id.* at 11-12, misstate that a credible threat of prosecution relates to traceability, *id.* at 5, and misrepresent the legal standard for vague laws that implicate constitutionally protected speech. *Compare id.* at 10, *with Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489, 494-95 (1982) (holding that a law must be impermissibly vague in all of its applications if it does *not* implicate constitutionally protected conduct). They even create out of whole cloth an "*actually* false or misleading" requirement—and suggest an intent requirement—that is nowhere to be found in the language of the challenged law. Dkt. 55, at 9.

Furthermore, Defendants fail to respond to Plaintiffs' arguments that the expense of complying with a challenged rule is a cognizable injury, that plant-based foods are "foods" under the FDCA, or that the Attorney General has authority to independently prosecute laws. Nor have Defendants contested either of Plaintiffs' submitted expert reports, including expert testimony that that Texas consumers are not currently confused, that complying with the Law may create new confusion, and that complying with the Law is technically impossible for plant-based companies.

Despite Defendants' attempts to argue otherwise, Plaintiffs have shown that the Law violates the First Amendment, Due Process Clause, the FDCA express preemption provisions, and the Commerce Clause. As such, it must be permanently enjoined.

## ARGUMENT

### I.    Plaintiffs have Standing.

Plaintiffs have presented sufficient evidence to satisfy the *Driehaus* factors that establish standing in a pre-enforcement challenge. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).[1]

---

[1] These are: (1) intention to engage in conduct arguably affected by a constitutional interest, (2) said action is arguably proscribed by statute, and (3) there is a credible threat of prosecution. *Id.*

2

Defendants do not contest the first factor, agreeing that "the labels at issue are commercial speech," Dkt. 55, at 6, which is protected by the First Amendment. Dkt. 25, at 12.

The second factor requires the conduct to be "arguably proscribed, or at least arguably regulated," by the challenged law. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 332 (5th Cir. 2020) (citing *Driehaus*, 573 U.S. at 162). *Driehaus* does not require Plaintiffs to specifically enumerate all the ways their conduct is arguably proscribed by the Law. *See Driehaus*, 573 U.S. at 163; *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 217 (5th Cir. 2023). Nonetheless, Plaintiffs have already provided several examples of labels which are arguably proscribed by the Law. These labels demonstrate how prominently placed qualifiers like "plant-based" are sometimes written in slightly smaller font than other words like "burger" or "sausage." Dkt. 13, at 11-12. As this Court found, these labels are arguably proscribed—and certainly are regulated by—the Law. Dkt. 25, at 12.[2]

The third factor is a forward-looking "credible threat of enforcement." Plainly, this is about "the prospect of *future* enforcement." *Id.* at 165 (emphasis added). Yet, Defendants' only response is to ask the Court to trust the lack of any past enforcement actions to indicate there will be no future enforcement. Dkt. 55, at 4. But Defendants' own actions indicate the opposite. Defendants refused to pause enforcement of the Law pending this litigation and testified that investigators are currently in the field looking for violations of the Law. Dkt. 53, at 4-5. Defendants do not contest any of this, nor do they contest that the Law is not moribund. *See* Dkt. 55. Instead, Defendants assert that "all of the evidence indicates" there is no credible threat of prosecution—without citing any supportive evidence to back up this claim. *Id.* at 5.

---

[2] Defendants admit that they have regulated plant-based meat "[a]s a manufactured food product []" for decades." Dkt. 53-3, at 73:17-20.

Plaintiffs have more than satisfied the *Driehaus* factors to bring a pre-enforcement challenge here. While Defendants make much hay about the lack of enforcement during the pendency of this litigation, that is simply not dispositive. Plaintiffs have brought a ***pre-enforcement*** challenge.

Likewise, Defendants' attempt to wave away Plaintiffs' injury-in-fact is unsuccessful. *Id.* at 4-5. The fact that Plaintiffs have not yet changed labels is not dispositive, as Plaintiffs are unsure how to comply with a vague law and brought this pre-enforcement challenge to the Law's constitutionality. Nor is Plaintiffs' future injury "too conjectural." *Id.* at 5. Defendants support this claim by citing *Prestage Farms, Inc. v. Board of Supervisors of Noxubee County*, a readily distinguishable case. 205 F.3d 265, 268 (5th Cir. 2000). In *Prestage Farms*, there were at least four uncertain steps that had to happen before Plaintiff was injured. *Id.* In this case, the conduct proscribed by the Law is being actively monitored, and Defendants could enforce it against Plaintiffs at any time. That is hardly a "chimerical" threat. Dkt. 55, at 4. Plaintiffs thus have standing to bring this challenge.

## II.    The Law violates the First Amendment.

"It is well established that '[t]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770 (1993) (quoting *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 71 n.20 (1983)). Here, the State has failed to do so.

Defendants concede that the Law "regulates commercial speech" and should be evaluated under the test outlined in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561 (1980). Dkt. 55, at 6. The State previously claimed that *Central Hudson* should not apply because the Plaintiffs' speech is misleading or related to unlawful commercial activity, but has retracted that argument in its latest brief. *Id.* at 3 n.1. The remaining issue in dispute thus turns on the application of the *Central Hudson* test.

As set forth in detail in Plaintiffs' Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment, Dkt. 53, the State has failed this test. The State has not

shown that the Law directly and materially advances its purported interest in preventing consumer confusion, nor that the Law is appropriately tailored to accomplish that purpose.

**A.  The State has not demonstrated that its restrictions directly advance any substantial government interest.**

The State argues that the Law advances its interest in preventing consumer confusion over plant-based meat labels because there are no "federal plant-based food labeling laws" that help consumers understand the contents of these products. Dkt. 55, at 8. But, as the State later argues, federal laws and regulations already require plant-based meat producers "to indicate the product is not derived from animals." *Id.* at 12. Defendants cannot dispute that federal laws, regulations, and other Texas laws also prohibit false, deceptive, or misleading labels on plant-based meat products and require clear and descriptive labeling. *See* Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(a)(1); Federal Trade Commission Act, 15 U.S.C. § 45; Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.46. Just because Congress has not enacted a law specific to only plant-based meat labels does not mean they are not strictly regulated. Congress has not passed specific laws applicable to most foods on the U.S. market, but the FDCA, and FDA's comprehensive federal regulatory scheme, still apply.

The State next argues that the Law directly advances its interest because a company *could* label a product as "meat" when it consists wholly of plants and therefore confuse consumers. Dkt. 55, at 8. Setting aside the fact that the State has introduced no evidence that this has ever occurred, such a hypothetical label would be expressly prohibited by the state and federal laws cited above. Food producers in America cannot lawfully misbrand their products or represent them as something they are not. 21 U.S.C. § 343(a)–(c). Again, Defendants themselves argue that the FDCA and federal regulations already "require a qualifier to indicate" that a plant-based meat "product is not derived

from animals." Dkt. 55, at 12.[3] Federal law also requires labeling elements, including the product's statement of identity and any associated qualifiers, to be "prominently placed . . . with such conspicuousness . . . as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use." 21 U.S.C. § 343(f). The State's claim that the Law is necessary to prevent a plant-based meat producer from using unreadably small qualifying terms is thus unfounded.

Furthermore, as in their opening brief, Defendants provide no evidence that consumer confusion over plant-based meat labels exists, despite carrying the burden to prove that the Law will directly and materially reduce such confusion. Only Plaintiffs have provided evidence on this point, which shows consumers are not confused by current labels, and that the Law may even *create* consumer confusion. Dkt. 53-7, at 13, 18. The State thus fails to satisfy the second prong of *Central Hudson*.

### B. The State has not demonstrated that the Law is not more restrictive than necessary to accomplish the State's purported purpose.

For the first time, Defendants argue in their Reply that the Law is not more restrictive than necessary because it only targets "false and misleading" labels. Dkt. 55, at 8; *see also id.* at 12, 16. This is an inaccurate representation of the challenged Law. The Law reads: "A food shall be deemed to be misbranded . . . if it is an analogue product of meat, a meat food product, poultry, a poultry product, an egg product, or fish, unless its label bears in prominent type equal to or greater in size than the surrounding type and in close proximity to the name of the product one of the following [qualifiers]." S.B. 664, codified at Tex. Health & Safety Code § 431.082(d–1). There is no requirement that the label be false, misleading, or deceptive, nor is there a requirement that the

---

[3] FDA regulations require a product's common or usual name to "accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food." 21 C.F.R. § 102.5(a). The common or usual name "may be a coined term," *id.*, and "may be established by common usage." *Id.* § 102.5(d). This framework allows for a number of different non-misleading names.

6

entity responsible for labeling acted with intent to mislead. The Law simply proscribes federally compliant plant-based labels that do not tie their qualifier to some undefined "product name" and also meet vague size and placement requirements.

Defendants' decision to copy the arguments put forward in *Turtle Island Foods v. Strain* is additionally unavailing because the underlying Louisiana law there was materially different than the Texas Law. The Louisiana law only prohibited ***intentionally misrepresenting*** plant-based food products. *See* 65 F.4th at 214. The law included both an intent element ("intentionally") and a requirement that the producer "misrepresent" the nature of its product ("misbrand or misrepresent").[4] The Fifth Circuit narrowly construed this language to apply only to *intentionally* false or misleading labels and therefore upheld the law under the First Amendment. *Strain*, 65 F.4th at 221.

The Law at issue in this case includes no such intent element, nor does it require a producer to misrepresent its product. Instead, it prohibits non-misleading speech that seeks to inform consumers of the contents of plant-based products. If the State wants a law that complies with the First Amendment and only prohibits false and misleading speech, it must amend the Law to say as much.

In its current form, the Law burdens protected speech, and Defendants have failed to produce a single piece of evidence to support their claims that the Law directly advances their purported interest or is appropriately tailored. Defendants cannot win their motion on unsupported assertions alone. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or

---

[4] The Louisiana law defines "misbrand" as "to intentionally identify or label a food product in a false or misleading way" and defines "misrepresent" as "to intentionally use any untrue, misleading, or deceptive oral or written statement, advertisement, label, display, picture, illustration, or sample." La. Stat. Ann. § 3:4743(12)–(13). Thus, every element of the Louisiana law requires an *intent* to mislead.

7

defenses."). Plaintiffs, on the other hand, have provided undisputed evidence that the Law is unnecessary and unlikely to advance the State's unfounded interest. *See* Dkt. 53-7, at 13, 18. As such, the Court should grant Plaintiffs' Motion for Summary Judgment, deny the Defendants' Motion, and strike the law as an unconstitutional restriction on commercial speech.

**III.    The Law is unconstitutionally vague.**

Plaintiffs have thoroughly articulated the ways in which the Law is unconstitutionally vague—showing exactly how the yardstick by which compliant conduct must be measured is unclear and regulated parties are left in the dark as to how to reconcile such vagueness with requirements under federal law.[5] Dkt. 53, at 19-23. The Law and its implementing regulations fail to define essential terms such as "name of the product," "trade name," "brand name," or "surrounding type," making it impossible for companies to know whether they are in compliance. *Id.*

In earlier briefing, Defendants attempted to rehabilitate the Law's vague provisions with breakfast cereal examples to supposedly demonstrate how simple the Law is to understand. Dkt. 52, at 20. When Plaintiffs pointed out that these examples—Trix-Minis and Lucky Charms S'mores—included multiple typefaces, colors, and font sizes across words that could all arguably be part of the "name of the product," Dkt. 53, at 20, Defendants dropped reference to these examples in subsequent briefing. Dkt. 55. Likewise, Defendants fail to address their own witnesses' inability to define key terms in the Law. *Id.*; *see* Dkt. 53-3, at 220:8-17; Dkt. 53-8, at 46:2-4, 89:13-23.

Rather than address Plaintiffs' arguments head-on, Defendants once again bring up the lack of enforcement thus far. Dkt. 55, at 10-11. Rather than "doom[ing] Plaintiff's vagueness claim," *id.* at 10, enforcement (or the lack thereof) is irrelevant to the vagueness question. A law that is crystal

---

[5] Defendants mischaracterize Plaintiffs' entire vagueness argument as based on "one allegation." Dkt. 55, at 9. This is simply untrue, Plaintiffs vagueness argument includes several missing definitions, seeming contradictions, and unclear conflicts between federal and state law. *See* Dkt. 13, at 34; Dkt. 53, at 19-23.

clear can either be enforced or not be enforced for a plethora of reasons. Just as a vague law can be enforced or not. The existence of enforcement actions has no logical connection whatsoever to the vagueness of the law in question. Defendants' argument here, that a lack of enforcement *means* the law is not vague, *id.*, implies that if the law was vague, there would already have been enforcement action. This is nonsensical. Again, Defendants assert a conclusory statement (*e.g.*, Plaintiffs vagueness claim is "doom[ed]") without explanation or citing support in the record. The Court should summarily reject such unsupported arguments.

### IV.    The Law is preempted by federal law.

Following the same theme, Defendants do nothing more than repeat their previous arguments on preemption—failing to address Plaintiffs' arguments entirely. Out of respect for the Court's time, Plaintiffs address only the foundational misapprehensions in Defendants' reply.

Defendants reassert the (correct) fact that "the FDA has specifically indicated that 'standards of identity have not been established for plant-based alternative foods.'" Dkt. 55, at 11. But Defendants then conclude that the Nutrition Labeling and Education Act's ("NLEA") express preemption provision governing **statements** of identity does not apply because of the lack of a **standard** of identity for plant-based foods. This is wrong for two key reasons.

First, while one part of the express preemption provision, 21 U.S.C. § 343–1(a)(1), addresses foods with standards of identity, the express preemption provision also includes 21 U.S.C. § 343–1(a)(3), which addresses foods without a standard of identity.[6] This express preemption provision incorporates a requirement that mandates the appearance of the common or usual name of a food *if the food lacks a standard of identity*. 21 U.S.C. § 343(i)(1). Simply read, the NLEA's express preemption provision prohibits states from "directly or indirectly establish[ing] under any authority . . . any requirement for the labeling of food of the type required by section . . . 343(i)(1) [governing the

---

[6] 21 U.S.C. § 343–1(a)(3) internally cites 21 U.S.C. § 343(i)(1).

common or usual name of a food if the food lacks a standard of identity] that is not identical to the requirement of such section as to any food in interstate commerce." *Id.* § 343–1(a)(3).

Second, the cases cited by Plaintiffs and misread by Defendants confirm that "a food product's ***statement of identity*** not contained in these regulations is preempted and unconstitutional under the Supremacy Clause." Dkt. 55, at 12.[7] ***Statements*** of identity and ***standards*** of identity are two different terms and concepts. A statement of identity is the broadest term for the name of a food.[8] Statements can take the form of (1) a standardized term (i.e., standard of identity) as established by FDA, (2) a common or usual name, or (3) even a fanciful term, if the nature of the food is obvious. 21 C.F.R. § 101.3(b). A standard of identity is a sub-category of statements of identity. A food need not have a standard of identity to be regulated or preempted by the NLEA.

Defendants further use their Reply to confirm that the Texas law "discusses the size of the font while the FDCA Prominence Provision regulates placement generally," Dkt. 55, at 12, *i.e.*, acknowledging the Law imposes additional, more specific requirements than those of the FDCA. Defendants' 30(b)(6) witness admitted that the Law is "more specific" in its requirements than federal law. Dkt. 53-3, at 116:23-117:4. But FDCA's express preemption provision prohibits states from directly or indirectly establishing any requirement that is not identical to FDA's regulation of statements of identity. And courts have determined that "not identical to" means "different from, or in addition to."[9] This means Texas cannot establish additional size and font requirements for the

---

[7] Defendants wrongly attribute to this quote to *Perea v. Walgreen Co.*, 939 F. Supp. 2d 1026, 1038 (C.D. Cal. 2103) [sic], when in fact it comes from Plaintiffs' Motion for Summary Judgment, Dkt. 53, at 26, a conclusion supported by Plaintiffs' briefing and applicable federal regulations (*e.g.*, 21 C.F.R. § 102.5).

[8] "The statement of identity is the name of the food" FDA, A FOOD LABELING GUIDE: GUIDANCE FOR INDUSTRY 7 (2013).

[9] *E.g.*, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 500 (1996); *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 484 (7th Cir. 2020); *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011); *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1042 (N.D. Cal. 2013) ("Allowing plaintiff's state-law claim to proceed

names of foods without a standard of identity—including plant-based foods. The State's Reply is yet another overt acknowledgement[10] that the State Law imposes requirements in addition to those imposed by the FDCA. But because FDA chose to regulate the placement and prominence of the product name to leave some flexibility for producers, Texas may not constrain that flexibility with its own laws. Either S.B. 664 is identical to the FDCA,[11] in which case it was wholly unnecessary, or it requires something additional, in which case it is preempted.

## V.    The Law violates the Commerce Clause.

In their Motion for Summary Judgment, Plaintiffs demonstrated—with ample citation to declarations, deposition testimony, and both of the expert reports in the record—that there is no factual dispute that the Law discriminates against interstate commerce by purpose, in effect, and that its grave harm to the interstate plant-based market is not even close to counter-balanced by an unsupported asserted local interest. Dkt. 53, at 29-40.

Defendants argue that "Plaintiffs have not provided any indicia of support for their claim" that the Law benefits in-state meat producers while imposing "burdensome and expensive disclosure requirements and necessary changes to marketing and labeling that are only imposed on plant-based" producers. Dkt. 55, at 13. On the contrary, Plaintiffs have pointed to an abundance of supportive evidence in the record. For example, Plaintiffs cite language in the legislative history by in-state animal-industry executives admitting that plant-based meat is their direct competition, Dkt. 53, at 32 (citing both a declaration and Texas Senate Hearing records), as well as citing statements from the sponsoring legislator that demonstrated an intent to burden plant-based companies and

would mean reading California's Sherman Laws to impose an additional or different regulatory requirement on defendants' product, in violation of the FDCA's express preemption provision."); *see also Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 624-25 (4th Cir. 2015).
[10] In addition to Defendants' numerous other acknowledgements. *See* Dkt. 53, at 27-29.
[11] The Law is not identical to the FDCA. *See supra* Sec. IV.

help in-state animal-industries under the factors from *Wal-Mart*.[12] *Id.* Plaintiffs also reference State emails in the record and deposition transcripts from State witnesses using pejorative language to reference plant-based meats. *Id.* at 32-33. Plaintiffs submitted two expert reports—neither of which Defendants have contested—one of which focuses on distribution logistics for the plant-based industry and the "technical[] impossibility" of complying with the Law. Dkt. 53-5, at 34.

Defendants make another mistake at this stage in the briefing by pointing to evidence not in the record to support the legal argument that legislators considered factual evidence supporting the necessity of the Law. Dkt. 55, at 14. Specifically, Defendants newly attempt to cite a survey that was notably deemed non-existent when Plaintiffs filed public records requests to the sponsoring legislators' offices *and* when Defendants were asked about it in deposition *and* when Defendants responded to discovery requests about the existence of such a survey. Dkt. 53, at 32 n.21.

Defendants cannot cite evidence that is not in the record in support of or opposition to a motion for summary judgment. Fed. R. Civ. Pro. 56(c); *see Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."). If Defendants wanted to cite to the previously undisclosed "survey" to support their assertion that there was any basis at all for passing the Law, they "could have and should have obtained the evidence months before" filing their summary judgment motion. *Lopez v. Home Depot U.S.A., Inc.*, No. 1:15-cv-1059-RP, 2017 WL 500021, at *2 (W.D. Tex. Feb. 7, 2017).

---

[12] In Defendants' attempt to counter Plaintiffs' discriminatory purpose argument, they mistakenly ascribing statements of a single legislator to the entire Texas legislature. Dkt. 55, at 13 (supporting use of "[t]he Legislature's intent" with cite to a single Senator's comments). The Supreme Court and the Fifth Circuit have both cautioned against ascribing the statements of a single legislator to the entire legislative body. *See United States v. O'Brien*, 391 U.S. 367, 383-84 (1968); *Veasey v. Abbott*, 830 F.3d 216, 234 (5th Cir. 2016).

Defendants know this, and attempt to circumvent the evidentiary standard by saying it merely "appears" that legislators relied on the survey, citing an industry blog post for support. Dkt. 55, at 14. This is classic hearsay, and as such should be ignored by this Court. *James v. Tex. Collin Cty.*, 535 F.3d 365, 374 (5th Cir. 2008) ("Newspaper articles . . . are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay."). Absent this improper attempt to get around the rules of evidence, there is no evidence whatsoever in the record that shows: (a) there was a need for new plant-based labeling laws in Texas, nor (b) that the Law will in any way advance said need, if it existed.

In addition to the lack of evidence Defendants provide, Plaintiffs provided an unchallenged expert report that supplies ample qualitative data, as well as declaration and deposition testimony, that demonstrate how the Law significantly burdens the interstate market for plant-based products. Defendants' only response to this, once again, is that because there have been no enforcement actions under S.B. 664 thus far, any burden on interstate commerce is "hypothetical and speculative." Dkt. 55, at 15-16. Such a conjectural response falls far below the bar required to rebut Plaintiffs' clear showing that there is no genuine issue of material fact when it comes to the uncontested effects of the Law on the interstate market for plant-based foods.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Summary Judgment because the Law violates the First Amendment, is unconstitutionally vague, is preempted by federal law, and violates the Commerce Clause.

Date: September 25, 2025

Respectfully submitted,

  */s/ Michael Swistara*           
Michael Swistara (admitted *pro hac vice*)
ANIMAL LEGAL DEFENSE FUND
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
(707) 795-2533
mswistara@aldf.org

Morgan Boutilier (admitted *pro hac vice*)
ANIMAL LEGAL DEFENSE FUND
5666 Wilshire Blvd. #1597
Los Angeles, CA 90036
(707) 795-2533
mboutilier@aldf.org

Amanda Howell, Bar No. 24078695
ANIMAL LEGAL DEFENSE FUND
2108 N St., Ste. N.
Sacramento, CA 95816
(707) 795-2533
ahowell@aldf.org

Martin Woodward, Bar No. 00797693
KITNER WOODWARD PLLC
13101 Preston Road, Suite 110
Dallas, TX 75240
(214) 443-4300
martin@kitnerwoodward.com

Madeline Cohen (admitted *pro hac vice*)
THE GOOD FOOD INSTITUTE
1120 Connecticut Ave. NW, Suite 1080
Washington, DC 20036
(202) 743-3963
madelinec@gfi.org

Tarak Anada, Bar No. 24090576
JONES WALKER, LLP
811 Main Street, Suite 2900
Houston, Texas 77002
(504) 582-8322
tanada@joneswalker.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served

electronically through the court's CM/ECF electronic-filing system on the 25th day of September,

2025, to:

William H. Farrell
Texas Bar No. 00796531
Office of the Attorney General
P.O. Box 12548, Capital Station
Austin, Texas 78711-2548
Email: biff.farrell@oag.texas.gov

**Counsel for Defendants**

_/s/ Michael Swistara_

Michael Swistara (admitted _pro hac vice_)
ANIMAL LEGAL DEFENSE FUND
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
(707) 795-2533
mswistara@aldf.org

**Attorney for Plaintiffs**