IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| PLANT BASED FOODS ASSOCIATION, and TURTLE ISLAND FOODS INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> JENNIFER SHUFORD, *in her official capacity as Commissioner of State Health Services, et al.* <br><br> *Defendants.* | Case No. 1:23-cv-01032 |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

## INTRODUCTION

In response to the Court's December 16, 2025, Order, Dkt. 58, Turtle Island Foods, Inc. ("Tofurky") and the Plant Based Foods Association ("PBFA") (collectively, "Plaintiffs") clarify that they seek facial relief with respect to all Counts of the Amended Complaint, Dkt. 13 (One: Preemption, Two: Supremacy Clause, Three and Four: Commerce Clause, Five: Due Process Clause, and Six: First Amendment). With respect to Count Six (First Amendment), the Court's analysis under *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024) supports facial relief as the Law's unconstitutional applications are substantial compared to its constitutional ones, making relief as applied to plant-based products' labels also appropriate.

## ARGUMENT

**I.     The Law facially violates the First Amendment; its unconstitutional applications substantially outweigh any theoretically constitutional ones.**

When the First Amendment is implicated and Plaintiffs request facial relief, "[t]he question is whether 'a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Moody*, 603 U.S. at 723 (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)).

But before proceeding to a facial challenge, courts in this Circuit typically look at how the challenged statute applies to the parties. *See Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019); *see also Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020). Here, the Law is unconstitutional as applied to Tofurky's labels. *See* Pls' Cross-Mot. for Summ. J., Dkt. 53 at 9-18.[1]

---

[1] Because plant-based labels, including Tofurky's, are accurate and not misleading, the Law does nothing to cure nonexistent consumer confusion. Evidence in the record demonstrates that consumers clearly understand this type of labeling on plant-based products—and indicates that the Law may actually *increase* such confusion, not ameliorate it. Feltz Rep., Dkt. 53-7, at 8–10, 13, 18. Several federal courts have held that this type of labeling is not misleading. *E.g.*, *Turtle Island Foods SPC v. Soman*, 424 F.Supp.3d 552 (E.D. Ar. 2019); *see also Miyoko's Kitchen v. Ross*, Case No. 20-cv-00893-RS, 2021 WL 4497867 (N.D. Cal. Aug. 10, 2021); *Painter v. Blue Diamond Growers*, No. CV 17-02235, 2017 WL 4766510, at *2 (C.D. Cal. May 24, 2017), aff'd, 757 F. App'x 517 (9th Cir. 2018).

The Law is also facially invalid. The State offers no limiting provision, and the text of the Law provides no safe harbor to exclude its application to truthful commercial speech. *See* Tex. Health & Safety Code §§ 431.021, 431.082. It thus impermissibly acts as a direct restriction on protected speech. *See Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020); *Conchatta Inc. v. Miller*, 458 F.3d 258, 267-68 (3d Cir. 2006); *see also Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988) ("It has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it's 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld" but the "statute must be 'readily susceptible' to the limitation; we will not rewrite a state law to conform it to constitutional requirements."). Regarding chilled speech, the text of the Law fails to make clear to those governed *how* to comply with the law, and Plaintiffs have no history of past enforcement to look to demonstrating any constitutional application of the Law.

An as-applied remedy limited to Tofurky's current labels would not protect Tofurky's ability to change those labels or introduce new products, nor would it protect all PBFA's other members, who employ clear and non-misleading labels. *See La Unión del Pueblo Entero v. Abbott*, 751 F. Supp. 3d 673, 708, 732 (W.D. Tex. 2024) (permanently enjoining enforcement of statute where plaintiffs showed they would be prospectively subject to the regulations being challenged); *see also Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010); *Six Star Holdings LLC v. City of Milwaukee*, 821 F.3d 795 (7th Cir. 2016). In other words, due to the need for prospective injunctive relief to cure the speech chilled by the Law, the "narrower remedy" of as-applied relief does not fully "vindicate [Plaintiffs'] right not to be bound by an unconstitutional statute," *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 477-78 (1995).

---

Looking to Tofurky's products, all labels state in large, readable print that the foods are "plant-based" and "vegan." Dkt. 13, at 11-13. Again, as no consumer confusion exists as to Plaintiff Tofurky's labels, the Law cannot and does not directly and materially advance the State's purported interest in preventing confusion and therefore fails the second prong of the test outlined in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561 (1980).

The Court should facially invalidate the Law after application of the two-step process outlined in *Moody*. In *Moody*, the Supreme Court laid out a two-step analysis for laws that are facially challenged under the First Amendment.[2] First, courts must "assess the state laws' scope. What activities, by what actors, do the laws prohibit or otherwise regulate?" *Moody*, 603 U.S. at 724. The second step is to "decide which of the laws' applications violate the First Amendment, and to measure them against the rest"." *Id.* at 724-25. At this second stage, "courts [] must explore the laws' full range of applications—the constitutionally impermissible and permissible both—and compare the two sets." *Id.* at 725-26.

Applying step one, the Law regulates the labeling of analogue products by their manufacturers. Specifically, it requires that analogue products carry a disclaimer "in prominent type equal to or greater in size than the surrounding type and in close proximity to the name of the product." Tex. Health & Safety Code § 431.082(d-1). The Law applies to the naming and labeling of plant-based, insect, and fungus products, *id.* § 431.08-5(1); conduct already regulated by the federal government. *See infra* II. The language of the Law does not implicate First Amendment conduct relating to non-label advertising, marketing, or other representations about food products—such as statements made by grocery stores or other distribution and retail partners—it *only* operates to regulate and restrict the text on product labels. *See* Tex. Health & Safety Code § 431.082(d-1).

Moving to step two, there are two possible applications of the Law: (1) to labels that are clear and accurate, and (2) to labels that are misleading.

As to the first application, the Law prohibits clear, non-misleading commercial speech. This abridges manufacturers' First Amendment right to make accurate, non-misleading claims to consumers. *Cent. Hudson*, 447 U.S. at 566; *see 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 495–99

---

[2] *Moody* "correctly articulates and applies" the Supreme Court's "First Amendment precedent," by laying out the proper two-step analysis without fundamentally changing the underlying doctrine. 603 U.S. at 745 (Barrett, J., concurring).

3

(1996). As the Law fails to satisfy the second and third prongs of the *Central Hudson* test, this application is always unconstitutional under the First Amendment.

The first application encompasses the broad sweep of the Law's applicability. There is a decades-long history of plant-based food labels complying with federal and state laws by providing truthful, accurate labeling claims to Texas consumers. For example, Defendants are trained by FDA and enforce the federal Food, Drug, and Cosmetic Act in addition to Texas law, Ressler Dep., Dkt. 53-10, 32:21-25, 33:5-15, and in all the years of plant-based products existing on the market they have never been aware of enforcement action or complaints against a plant-based company. Stevenson Dep., Dkt. 53-5, 73:17-20, 128:14-16; Dkt. 53-10, 37:14-19.

As to the second possible application of the Law, it *would* be constitutionally permissible to regulate or restrict misleading labels. However, Defendants have not provided any evidence that such labels exist. Dkt. 53 at 13-14. As Defendants have emphasized, Texas has not "identified any labels determined to be non-compliant," Dkt. 55 at 1, despite admitting that it has inspectors out in the field monitoring for compliance with the Law. Dkt. 53 at 4-5. Federal and existing Texas state laws already exist to prohibit misleading food labels, *id.* at 15, and so it is highly unlikely such labels would ever exist.

Weighing the unconstitutional and constitutional applications of the Law, it is clear that the impermissible applications substantially outweigh any conjectural permissible applications. All evidence in the record, from real-world plant-based labels to testimony by Defendants stating they are unaware of any misleading plant-based labels over the decades of their existence in the marketplace, shows that plant-based labeling conventions are clear, accurate, and non-misleading. The broad sweep of the Law applies to these products. And its application to clear, accurate labels facially violates the First Amendment under the test laid out in *Central Hudson*. 447 U.S. at 566; *see* Dkt. 53 at 13-17.

In the hypothetical instances where the Law would seemingly be constitutionally permissible, *i.e.*, with respect to misleading labels, it still runs afoul of the *Central Hudson* test. *Central Hudson* requires that the State assert a legitimate interest. Dkt. 53 at 13 (citing *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993)). As Plaintiffs have demonstrated, all of the evidence in the record indicates that no consumer confusion around plant-based labels exists in Texas, and the State has failed to provide even a shred of concrete evidence justifying a legitimate interest. *Id.* at 13-16.

Even if the State had asserted a non-pretextual interest, misleading labels are already illegal under federal and existing state laws. Dkt. 53 at 15. The Law is thus not advancing any state interest by making illegal labels that were already illegal. *Central Hudson*, 447 U.S. at 566 (requiring that "speech restriction directly and materially advance[]" an asserted state interest); *see* Dkt. 53 at 39 (citing *TelTech Systems, Inc. v. Barbour*, 866 F. Supp. 2d 571, 577, n.4 (S.D. Miss. 2011)). Even the few imaginable situations where a plant-based label might be misleading, this statute does nothing more than existing law to prohibit the introduction of such labels into the Texas market. The law is therefore invalid in essentially all applications.

## II.   The Law is preempted because it facially conflicts with federal law.

With respect to Counts One and Two, Plaintiffs seek facial relief for their preemption claims. Both the Fifth Circuit and a court in this District have recognized that "the Supreme Court has repeatedly sustained facial preemption challenges even where the state law would be valid in some applications." *United States v. Texas*, 794 F. Supp. 3d 427, 450 (W.D. Tex. 2025).[3]

In the context of food labeling, Congress's explicit objective in passing the Nutrition Labeling and Education Act ("NLEA") was to create "national uniformity in certain aspects of food

---

[3] Specifically, the court wrote that rather than literally applying the "no set of circumstances" language from *United States v. Salerno*, "if a statute obstructs federal law, it fails the constitutional test for obstacle preemption, at which point it cannot be validly applied to anyone. In that sense, there is 'no set of circumstances' in which the law is valid." *Id.* at 451-52.

5

labeling, so that the food industry can market its products efficiently in all 50 States." 58 Fed. Reg. at 2462. To ensure this national uniformity, Congress created an express preemption provision in the NLEA prohibiting states from "directly or indirectly establish[ing] . . . as to any food in interstate commerce . . . any requirement for the labeling of food that is not identical" to the requirements cited by the preemption provision. 21 U.S.C. § 343-1(a)(1)-(5).

Plaintiffs have demonstrated—and Defendants have repeatedly acknowledged—that the Law imposes requirements different from and in addition to those imposed by federal law. *See* Dkt. 53 at 27-29. Thus, the Law is unconstitutional on its face.

### III. The Law facially violates the Commerce Clause by discriminating against and excessively burdening the flow of interstate commerce.

With respect to Counts Three and Four, Plaintiffs seek facial relief for their Commerce Clause claims.

The Law acts to "prohibit or otherwise regulate," *Moody*, 603 U.S. at 724, the interstate marketplace for plant-based and other analogue products that already comply with federal labeling laws. Dkt. 53 at 30-40. "'[T]wo primary principles . . . mark the boundaries of a [s]tate's authority to regulate interstate commerce': A state (1) 'may not discriminate against interstate commerce' and (2) may not 'impose undue burdens on interstate commerce.'" *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 325 (5th Cir. 2022) (quoting *South Dakota v. Wayfair, Inc.*, 585 U.S. 162, 173 (2018)). A violation of either of these principles is an operative, facial[4] failure of the law under the Commerce Clause, as discrimination against interstate commerce or an undue burden on interstate commerce is

---

[4] Note that "[d]espite the overlapping 'facial' labels, whether a statute discriminates on its face for dormant Commerce Clause purposes is a different concept from the general notion of a facial challenge to a statute." *NextEra Energy Cap. Holdings, Inc. v. Lake*, 48 F.4th 306, 321 n.6 (5th Cir. 2022). "[I]n a facial challenge, the court considers the entire range of the statute's applications and . . . successful facial challenges invalidate the regulation altogether." *LIA Network v. City of Kerrville, Tex.*, No. 24-50788, 2025 WL 3684253, at *7 (5th Cir. 2025).

6

a harm against commerce as it flows between the states, and not just a harm as applied to any one producer. *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 945 F.3d 206, 223 (5th Cir. 2019) (The Commerce Clause exists to "protect[] the interstate market, not particular interstate firms from prohibitive or burdensome regulations.").

As Plaintiffs demonstrated in their Cross-Motion for Summary Judgment, the Law was drafted with the discriminatory purpose of disadvantaging the overwhelmingly out-of-state plant-based manufacturing sector, Dkt. 53 at 30-34, and has the effect of greatly burdening the flow of interstate commerce due to the nature of modern distribution channels and the fact that it is "technically impossible" for producers to control where their products end up without pulling them from the market altogether. *Id.* at 34-35. In their motion, Plaintiffs cite discriminatory remarks by lawmakers and regulators, as well as the specific history of collaboration on this Law with in-state industry lobbyists. *Id.* at 30-34. Plaintiffs also cite expert and party testimony to show how the Law discriminates by effect against the flow of interstate commerce. *Id.* at 34. A law which discriminates against interstate commerce is "virtually *per se* invalid," *Hignell-Stark*, 46 F.4th at 325 (quoting *Dep't of Rev. v. Davis*, 553 U.S. 328, 338 (2008)). Thus, because Plaintiffs have successfully demonstrated the Law is discriminatory and protectionist by purpose or effect, *see* Dkt. 53 at 30-35, the Law is facially invalid.

With respect to the burden on interstate commerce, the Law's applications are likewise unconstitutional. As Plaintiffs have demonstrated, including with expert evidence on the plant-based market as a whole and specific evidence about Tofurky's distribution chain, the language of the Law acts as a barrier to the free flow of goods between states, including hindering trade between states that do not involve Texas. Dkt. 53 at 30-35. Plant-based producers like Plaintiffs rely on distributors and retail partners with their own distribution networks, meaning that "[i]t is financially impossible or unfeasible to create separate products to be sold within Texas alone, and logistically impossible to

7

ensure that only those products enter into the state." Ransom Decl., Dkt. 53-3 at ¶ 3. This burden is so excessive as to "carry the risk of making nationwide distribution impossible." *Id.* at ¶ 4. The discrimination against and excessive burden imposed on interstate commerce—without serving any legitimate local interest, Dkt. 53 at 39-40—is the broad sweeping effect of the Law, and therefore it should be invalidated on its face.

### IV. The Law facially violates the Due Process Clause for failing to provide adequate notice and for authorizing arbitrary enforcement by its vague language.

With respect to Count Five, Plaintiffs seek facial relief for their Due Process claim. Because constitutionally protected speech is implicated, the "more stringent vagueness test" applies here. *Roy v. City of Monroe*, 950 F.3d at 252 (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)); *see Ashton v. Kentucky*, 384 U.S. 195, 200 (1966) ("When First Amendment rights are involved, we look even more closely [at vague laws]."); *Kramer v. Price*, 712 F.2d 174, 177 (5th Cir. 1983) (quoting *Smith v. Goguen*, 415 U.S. 566, 573 (1974)) ("When a statute is capable of reaching first amendment freedoms, the doctrine of vagueness 'demands a greater degree of specificity than in other contexts.'").

As Plaintiffs have demonstrated, the Law fails to provide regulated entities a reasonable opportunity to understand the requirements of the law because it does not adequately define the yardstick against which compliant conduct is to be measured. Dkt. 53 at 19-23. Even those tasked with enforcing the Law were unable to define key terms. Dkt. 53-10 at 46:2-4, 89:13-23. Likewise, the Law encourages arbitrary enforcement because it lacks "objective, workable standards." *PETA v. Hinckley*, 526 F. Supp. 3d 218, 226 (S.D. Tex. 2021) (quoting *Minn. Voters All. v. Mansky*, 585 U.S. 1, 21 (2018)); *see also* Dkt. 53 at 23-24. In the words of the manager who oversees product inspections under the Law, his "opinion could be that [a label is] fine, and somebody else's opinion [could be] that it might not be fine." Dkt. 53-10 at 119:6-7.

Plaintiffs have further demonstrated that the Law's violation of both independent prongs of the Supreme Court's vagueness test from *Hill v. Colorado* are not "marginal application[s]," *Parker v.*

8

*Levy*, 417 U.S. 733, 760 (1974), but rather encompass the broad sweep of the Law. The Law requires a disclaimer on *all* analogue products in Texas. Dkt. 53 at 1. What that disclaimer must say, how large it must be, in what typeface, and relative to what other text on the label, are all vague and ambiguous. *Id.* at 19-20. Even the label examples provided by Defendants intended to demonstrate clear applications of the Law only add to the vagueness. *Id.* at 20-21.

Because the Law fails to provide all regulated entities adequate notice of prohibited conduct and encourages arbitrary enforcement, it is inherently vague and thus facially invalid.

## CONCLUSION

For all the above reasons, Plaintiffs respectfully request facial relief for all six of the claims in their Amended Complaint.

Date: January 16, 2026

                    Respectfully submitted,

*/s/ Michael Swistara*
Michael Swistara (admitted *pro hac vice*)
ANIMAL LEGAL DEFENSE FUND
150 South Wacker Drive, Suite 2400
Chicago, IL 60606
(707) 795-2533
mswistara@aldf.org

Morgan Boutilier (admitted *pro hac vice*)
ANIMAL LEGAL DEFENSE FUND
5666 Wilshire Blvd. #1597
Los Angeles, CA 90036
(707) 795-2533
mboutilier@aldf.org

Amanda Howell, Bar No. 24078695
ANIMAL LEGAL DEFENSE FUND
2108 N St., Ste. N.
Sacramento, CA 95816
(707) 795-2533
ahowell@aldf.org

Martin Woodward, Bar No. 00797693
KITNER WOODWARD PLLC
13101 Preston Road, Suite 110
Dallas, TX 75240
(214) 443-4300
martin@kitnerwoodward.com

Madeline Cohen (admitted *pro hac vice*)
THE GOOD FOOD INSTITUTE
1120 Connecticut Ave. NW, Suite 1080
Washington, DC 20036
(202) 743-3963
madelinec@gfi.org

Tarak Anada, Bar No. 24090576
JONES WALKER, LLP
811 Main Street, Suite 2900
Houston, Texas 77002
(504) 582-8322
tanada@joneswalker.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing instrument has been served electronically through the court's CM/ECF electronic-filing system on the 16th day of January, 2026, to:

William H. Farrell
Texas Bar No. 00796531
Office of the Attorney General
P.O. Box 12548, Capital Station
Austin, Texas 78711-2548
Email: biff.farrell@oag.texas.gov

**Counsel for Defendants**

                                              */s/  Michael Swistara*

                                              Michael Swistara (admitted *pro hac vice*)
                                              ANIMAL LEGAL DEFENSE FUND
                                              150 South Wacker Drive, Suite 2400
                                              Chicago, IL 60606
                                              (707) 795-2533
                                              mswistara@aldf.org

                                              **Attorney for Plaintiffs**