IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TURTLE ISLAND FOODS INC. *d/b/a* THE TOFURKY COMPANY and PLANT BASED FOOD ASSOCIATION, <br><br> Plaintiffs, <br><br> v. <br><br> JENNIFER SHUFORD, *in her official capacity as Commissioner of State Health Services*; CECILE ERWIN YOUNG, *in her official capacity as Executive Commissioner of the Texas Department of Health and Human Services Commission*; and KEN PAXTON, *on behalf of himself and all Texas prosecuting attorneys*, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § | 1:23-CV-1032-RP |

**ORDER**

Before the Court is Defendants Jennifer Shuford, in her official capacity as Commissioner of State Health Services; Cecile Erwin Young, in her official capacity as Executive Commissioner of the Texas Department of Health and Human Services Commission; and Ken Paxton's, on behalf of himself and all Texas prosecuting attorneys, (collectively, "Defendants") Motion for Summary Judgment, (Dkt. 52). Plaintiffs Turtle Island Foods Inc. d/b/a The Tofurky Company ("Tofurky") and Plant Based Food Association ("PBFA") (collectively, "Plaintiffs") filed a combined response brief in opposition to Defendants' Motion for Summary Judgment and their own Cross-Motion for Summary Judgment, (Dkt. 53). Defendants filed a response brief to Plaintiffs' Motion, (Dkt. 55), to which Plaintiffs replied, (Dkt. 56). Having considered the parties' briefs, the record, and the relevant law, the Court enters the following order.

1

## I. BACKGROUND

In the 88th Legislative Session, the Texas Legislature amended the Texas Health and Safety Code to add provisions concerning food labels for "analogue" meat products via Senate Bill 664 ("SB 664"). Specifically, SB 664 modified Section 431.0805, "Definitions," and Section 431.0082, "Misbranded Food."

Adding a new term to Section 431.0805, "Definitions," SB 664 defines "analogue product" as "a food product derived by combining processed plant products, insects, or fungus with food additives to approximate the texture, flavor, appearance, or other aesthetic qualities or the chemical characteristics of any specific type of egg, egg product, fish, meat, meat food product, poultry, or poultry product." Tex. Health & Safety Code § 431.0805(1). SB 664 also adds a provision in Section 431.0082, "Misbranded Food," which states that a food shall be deemed to be misbranded

> if it is an analogue product of meat, a meat food product, poultry, a poultry product, an egg product, or fish, unless its label bears in prominent type equal to or greater in size than the surrounding type and in close proximity to the name of the product one of the following:
> (1) "analogue";
> (2) "meatless";
> (3) "plant-based";
> (4) "made from plants"; or
> (5) a similar qualifying term or disclaimer intended to clearly communicate to a consumer the contents of the product[.]

Tex. Health & Safety Code § 431.082(d-1).

Further, SB 664 defines "[c]lose proximity" as "(A) immediately before or after the name of the product; (B) in the line of the label immediately before or after the line containing the name of the product; or (C) within the same phrase or sentence containing the name of the product." *Id.* § 431.0805(3). In short, SB 664 requires plant-based producers to adhere to certain labeling requirements to avoid misbranding their food products under Texas law.

Plaintiff Tofurky "sells 100% plant-based meat products." (Decl. of Erin Ransom (hereinafter "Ransom Decl."), Dkt. 53-3, at 4). Tofurky markets and sells its products nationwide,

including in Texas. (*Id.*). "In keeping with plant-based industry standards, [Plaintiff Tofurky] uses terms like 'chorizo,' 'burger,' 'ham roast,' and 'hot dogs,' alongside qualifiers like 'all vegan,' 'plant based,' 'vegetarian,' and 'veggie,' to show that [its] products are plant-based meats that can be served and consumed just like any other meats." (*Id.*). Plaintiff PBFA is "a nonprofit trade association" which represents "300 company, affiliate, and investor members," including at "at least 92 members [who] manufacture and sell plant-based meat products like veggie burgers, vegan nuggets, and plant-based sausages." (Decl. of Marjorie Mulhall (hereinafter "Mulhall Decl."), Dkt. 53-8, at 2–3). Its "organizational mission includes supporting plant-based companies and ensuring a level regulatory playing field for their products." (*Id.* at 3). PBFA "has created voluntary labeling standards to help its members comply with federal law and label their products accurately." (*Id.*).

Plaintiffs brought several claims against Defendants, who are charged with implementing and/or enforcing SB 664. (Order on Motion to Dismiss, Dkt. 25, at 4). Specifically, Plaintiffs claim that SB 664 (1) is preempted by federal law; (2) violates the Supremacy Clause; (3) violates the dormant Commerce Clause by discriminating against out-of-state producers of meat products; (4) violates the dormant Commerce Clause by imposing excessive burdens on interstate and foreign commerce; (5) violates the Fourteenth Amendment Due Process Clause; and (6) violates the First Amendment. (*Id.*). Plaintiffs request that the Court declare SB 664 unconstitutional both on its face and as applied to Plaintiffs and grant a permanent injunction preventing its enforcement. (*Id.*). This Court granted in part and denied in part Defendants' Motion to Dismiss, such that it dismissed Governor Abbott as a defendant and dismissed Plaintiffs' (1) alternative claims for a declaratory judgment and (2) claims as to SB 664's regulation of cell-cultured meat products due to lack of standing. (*Id.* at 14, 30).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotations marks and citation omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a

4

genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000).

### III. DISCUSSION

#### A. Standing

Standing is a component of subject matter jurisdiction which can be raised at any stage of litigation, including summary judgment. *See Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The requirement of standing has three elements: (1) injury in fact, (2) causation, and (3) redressability. *Bennett v. Spear*, 520 U.S. 154, 167 (1997). The injury cannot be merely "conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Causation requires that the injury "fairly can be traced to the challenged action of the defendant," rather than to "the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976). Redressability requires that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 561.

1. <u>Tofurky's Standing</u>

i. Tofurky has demonstrated injury in fact.

""In pre-enforcement free speech challenges, 'chilled speech or self-censorship is an injury sufficient to confer standing.'" *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 215 (5th Cir. 2023) (quoting *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021)). Plaintiffs "need not have experienced 'an actual arrest, prosecution, or other enforcement action' to establish standing." *Barilla*, 13 F.4th at 431 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). "Instead, all [Plaintiffs] must show is that: (1) [they] intend[] to engage in a course of conduct arguably affected with a constitutional interest; (2) that the course of action is arguably proscribed by statute; and (3) that there exists a credible threat of prosecution under the statute." *Turtle Island Foods*, 65

5

F.4th at 215–16 (citing *Driehaus*, 573 U.S. at 159). As to the third requirement, "courts will assume a credible threat of prosecution in the absence of compelling contrary evidence" when the pre-enforcement challenge is to a recently enacted statute which facially restricts expressive activity by the class to which the plaintiff belongs. *Barilla*, 13 F.4th at 432.

Applying this standard, Tofurky has an injury-in-fact. As to the first element, the Fifth Circuit has already held in a previous case involving Tofurky that "Tofurky's labels and marketing . . . are just the kind of commercial activity the First Amendment protects." *Turtle Island Foods*, 65 F.4th at 216. There is no material dispute that Tofurky intends to continue using its current labels nationwide, which it attests comply with federal law. (Ransom Decl., Dkt. 53-3, at 4). As to the second element, Tofurky has shown that the course of conduct is arguably proscribed by statute. SB 664 requires qualifying terms to be "in prominent type equal or greater in size than the surrounding type and in close proximity to the name of the product." Tex. Health & Safety Code § 431.082(d-1). As this Court has noted, Tofurky has a product where the word "plant-based" on the label is smaller than the word "burger." (Order on Motion to Dismiss, Dkt. 25, at 12). Defendants suggest that Plaintiffs' current labels are noncompliant with SB 664. (Defs.' Mot. Summ. J., Dkt. 52, at 32 (arguing that "Tofurky and PBFA's labels can and do mislead" consumers)). There is no material dispute of fact that Tofurky's labels are arguably proscribed by SB 664.

As to the third element, Tofurky faces a credible threat of prosecution. As discussed above, "[w]hen we face a pre-enforcement challenge to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, we will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Turtle Island Foods*, 65 F.4th at 218 (internal citations omitted). Here, there is no compelling evidence to counteract Plaintiffs' fears of a credible threat of prosecution. First, SB 664 carries criminal penalties. Tex. Health & Safety Code § 431.059 (outlining criminal penalties for violations of state

misbranding law, amended by SB 664 and noting that "it is not necessary to prove intent, knowledge, recklessness, or criminal negligence of the defendant"). In facial challenges to statutes that restrict expressive activity, courts assume that states can and will enforce their own criminal laws if a law is non-moribund. *Speech First, Inc. v. Fenves*, 979 F.3d 319, 334–35 (5th Cir. 2020) (quoting *Blum v. Holder*, 744 F.3d 790, 798 n.11 (1st Cir. 2014)).[1] Second, the record does not give rise to any inference that the law is moribund. Rather, the Rule 30(b)(6) representative of the Texas Department of Health and Human Services testified that its enforcement officers are actively looking for violations and that the law is currently being enforced. (Deposition of Dr. Timothy Stevenson, Deputy Commissioner for the State of Texas Department of State Health Services, Consumer Protection Division (hereinafter "Stevenson Dep."), Dkt. 52-1, at 46). Under *Driehaus*, Plaintiff Tofurky has met all three factors and demonstrated standing.

Separate from the *Driehaus* test, Plaintiff Tofurky faces an injury-in-fact because of its increased regulatory burden of complying with SB 664. "An increased regulatory burden typically satisfies the injury in fact requirement." *Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019) (quoting *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 266 (5th Cir. 2015)). "[T]he expense and trouble of complying" with SB 664 "is a cognizable injury in itself." *Texas v. Cardona*, 743 F. Supp. 3d 824, 853 (N.D. Tex. 2024). "Alleged compliance costs need only be 'more than de minimis.'" *Career Coll. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 236 (5th Cir. 2024) (quoting *Rest. L. Ctr. v. U.S. Dep't of Labor*, 66 F.4th 593, 600 (5th Cir. 2023)).

As discussed above, Tofurky would, absent SB 664, continue to label its products as it has in the past. Tofurky's Chief Growth Officer testified, and Defendants acknowledge, (Defs.' Mot.

---

[1] Other cases where courts found laws to be "moribund" involved laws which had not been enforced over a span of decades and had become a "historical curiosity," not recently enacted statutes where enforcement efforts are just beginning. *See Navegar v. United States*, 103 F.3d 994, 1000 (D.C. Cir. 1997) (recognizing distinction between a law that has not been enforced since the 19th century and a new, widely publicized law).

Summ. J., Dkt. 52, at 14), that changing the physical labels would cost "many tens of thousands of [] dollars," between $75,000 and $100,000 because it requires writing off "as many as two years' worth of packaging inventory," as well as discounting existing products and buying new products and packaging. (Deposition of Erin Ransom (hereinafter "Ransom Dep."), Dkt. 52-2, at 22–23). The costs of Tofurky complying with SB 664 would be more than de minimis. Contrary to Defendants' assertions, (Defs.' Mot. Summ. J., Dkt. 52, at 13), Tofurky's likely compliance-related injuries—needing to adjust its packaging to comply with SB 664—do not depend on future litigation outcomes. Rather, it would be reasonable for a company to comply with a new law to avoid potential penalties, on the assumption that it may be enforced. Plaintiff Tofurky experiences an injury.

### ii. Tofurky's injury is traceable to Defendants.

The Court has already found that Attorney General Paxton, Executive Commissioner Young, and Commissioner Shuford have the authority to enforce SB 664. (Order on Motion to Dismiss, Dkt. 25, at 6–9, 13). Nothing suggests that the Court should reconsider this finding on summary judgment. As discussed in the previous section, when a plaintiff brings a pre-enforcement challenge to a recently enacted statute that facially restricts the plaintiff's expression by restricting the class to which the plaintiff belongs, "we will assume a credible threat of prosecution." *Turtle Island Foods*, 65 F.4th at 218. SB 664 has been in effect since September 2023, and as described above, the Texas Department of Health and Human Services is actively inspecting for violations. As potential violations progress through the enforcement process, the statute empowers the Attorney General to bring a civil action or criminal proceedings. (Order on Motion to Dismiss, Dkt. 25, at 9). The record supports the finding of a traceable injury to Defendants.

iii. Tofurky's injury is redressable by a favorable decision by this Court.

Tofurky's injury is redressable. As this Court previously held, enjoining SB 664 as unconstitutional prevents Defendants from enforcing it, relieving Tofurky both from the threat of prosecution or enforcement and from the burden of redesigning its product labels. (Order on Motion to Dismiss, Dkt. 25, at 14). Nothing on the summary judgment record leads the Court to reconsider this conclusion.

2. PBFA's Standing

An association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also NetChoice, L.L.C. v. Fitch*, 134 F.4th 799, 804 (5th Cir. 2025). "[A]s long as resolution of the claims benefits the association's members and the claims can be proven by evidence from representative injured members, without a fact-intensive-individual inquiry, the participation of those individual members will not thwart associational standing." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 552 (5th Cir. 2010).

Here, the Court has found that Tofurky, which is a member of PBFA, (Ransom Dep., Dkt. 52-2, at 14), and which is participating in the lawsuit, has standing to sue. Further, the record shows that PBFA's interests in this lawsuit are germane to PBFA's purpose. PBFA's mission is "supporting plant-based companies and ensuring a level regulatory playing field for their products." (Mulhall Decl., Dkt. 53-8, at 3). In order to carry out this mission, PBFA creates voluntary labeling standards to help its members comply with federal law and accurately label their products. (*Id.*). SB 664 frustrates PBFA's efforts to put forth a single voluntary standard that complies with both federal law and the laws of different states. (*Id.* at 4).

9

Similarly to Plaintiff Tofurky, PBFA's members face an increased regulatory burden arising from the new law. *Career Coll. & Schs. of Tex.*, 98 F.4th at 236. Specifically, according to PBFA's expert on the grocery retail market Julie Emmett, as they take steps to comply with SB 664, PBFA's members can be expected to lose business with distributors, who typically prioritize inventory with uniform labelling so that they can transport food throughout the country flexibly, without risking penalties from state-specific requirements. (Expert Report of Julie Emmett ("Emmett Rep."), Dkt. 53-7, at 15−17). Because the sale of plant-based foods constitutes only a small percentage of overall grocery store sales, Emmett testifies that complying with state-by-state labelling requirements places PBFA's members at risk of being discontinued by retailers. (*Id.*).

Finally, the lawsuit does not require participation of individual PBFA members. Participation of individual members generally is not required where, as here, the association seeks prospective or injunctive relief, as opposed to damages. *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996). Nor is a fact-intensive individual inquiry as to PBFA's other members required. *See Ass'n of Am. Physicians & Surgeons, Inc.*, 627 F.3d at 552. The Court therefore finds that PBFA has standing.

### 3. Ripeness

"[R]ipeness is a constitutional prerequisite to the exercise of subject matter jurisdiction." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002). It is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). "A case or controversy must be ripe for decision, meaning that it must not be premature or speculative." *Shields*, 289 F.3d at 835. In assessing ripeness, a court must consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977). "A case is generally ripe if any remaining

questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987).

The Court finds that Plaintiffs' claims are ripe. As this Court found at the MTD phase, there are already several means of enforcement available to Defendants. (Order on Motion to Dismiss, Dkt. 25, at 16). Also, as discussed above, the Court can assume a credible threat of prosecution when there is a pre-enforcement challenge to a recently enacted statute facially restricting expressive activity. *Barilla*, 13 F.4th at 432. Plaintiffs have demonstrated that their labels could be perceived to violate SB 664, making them susceptible to enforcement. The Court finds that Plaintiffs' claims are ripe.

### B. First Amendment Claim

Plaintiffs bring the following claims against Defendants: (1) preemption under federal law; (2) violation of the Supremacy Clause; (3) discrimination in violation of the dormant Commerce Clause; (4) excessive burden in violation of the dormant Commerce Clause; (5) violation of the Fourteenth Amendment Due Process Clause; and (6) violation of the First Amendment. (Am. Compl., Dkt. 13). Because the Court finds that there is no material dispute of fact that the labelling requirements of SB 664 violate the First Amendment, the Court will grant summary judgment to Plaintiffs on that ground and need not reach the other claims at issue.

The parties do not dispute that the relevant test for assessing non-misleading commercial labels is set forth in *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980)). In *Central Hudson*, the Supreme Court held that commercial speech is protected if it is neither "misleading nor related to unlawful activity." 447 U.S. at 564. A government cannot restrict such protected commercial speech unless it satisfies a three-part test: (1) the state must assert a "substantial" interest justifying the restriction; (2) the restriction must "directly advance[] the

11

governmental interest asserted;" and (3) the restriction must not be "more extensive than is necessary to serve that interest." *Id.* at 566. Here, Plaintiffs have demonstrated that there is no material dispute of fact that (1) their speech is neither misleading nor related to unlawful activity and (2) that SB 664's speech restriction fails to pass constitutional muster.

        1. <u>There is No Material Dispute of Fact that Plaintiffs' Speech is Not Misleading</u>

Here, no evidence of misleading speech is present, and by contrast, the record demonstrates that Plaintiffs' speech is not misleading. In commercial speech cases, speech "is actually or inherently misleading when it deceives or is inherently likely to deceive." *Express Oil Change, L.L.C. v. Miss. Bd. of Licensure for Pro. Eng'rs & Surveyors*, 916 F.3d 483, 488 (5th Cir. 2019). Statements that are only "potentially" misleading, by contrast, are "safeguarded by the First Amendment." *Id.*

Plaintiffs have demonstrated that Tofurky's labels clearly indicate its products are meat substitutes that are plant-based and vegan and, thus, are not misleading. Tofurky's labels state in large print that the products are "plant-based" and "vegan." (Am. Compl., Dkt. 13, at 11–13). Plaintiffs' experts Professors Adam Feltz and Silke Feltz conducted a survey asking Texas consumers to identify the contents of various plant-based and conventional meat products by looking at images of their labels. (Expert Report of Professors Adam Feltz and Silke Feltz ("Feltz Rep."), Dkt. 53-9, at 9–14). Survey participants identified that the meatless products were plant-based and not made from animals with an average 96% accuracy. (*Id.* at 12–14). They also accurately identified the animal-based products 97% of the time. (*Id.*). That rate of accuracy was not higher where the meatless products had a label that was altered to be in accordance with SB 664. (*Id.* at 15–19). In fact, the study detected a statistically significant "increase in confusion for Beyond Meat Ground Beef when the label was modified" in the ways SB 664 requires. (*Id.* at 19). Plaintiffs' experts also reviewed empirical evidence on consumer confusion over plant-based labels across existing literature on consumer behavior and concluded that existing literature shows that

"consumers are not confused by plant-based terms used in conjunction with traditional animal-based terms, (e.g., 'veggie chicken')." (*Id.* at 5).

Defendants claim that "Tofurky and PBFA's labels can and do mislead traditional meat-eating customers into buying their product." (Defs.' Mot. Summ. J., Dkt. 52, at 32). Defendants do not offer evidence in support of this assertion. Elsewhere, too, Defendants contradict that point and argue instead that they are not aware of "any plant-based product that's been determined to be misleading in Texas," (*id.* at 16 (quoting Stevenson Dep., Dkt. 52-1, at 33)). Regardless, the record shows that Defendants never conducted or reviewed any studies on consumer understanding of plant-based meat labels, (Stevenson Dep., Dkt. 52-1, at 33), and further, that the labels used by Tofurky and PBFA's other members are not misleading, (Feltz Rep., Dkt. 53-9 at 12–14). On a motion for summary judgment, factual assertions must be supported by documents, affidavits, or other evidentiary material. Fed. R. Civ. P. 56(c). Because Defendants rely only on conclusory assertions, the Court finds they have not demonstrated that Plaintiffs' statements are actually or inherently misleading.

Other courts have held that labels which include conventional animal food terms alongside terms that convey the plant-based nature of the product are not misleading and do not cause consumer confusion. In *Turtle Island Foods SPC v. Soman*, for example, the court held that Tofurky's labels are not misleading, despite including conventional meat terms, because they "include ample terminology to indicate the vegan or vegetarian nature of the products." 424 F. Supp. 3d 552, 574 (E.D. Ark. 2019); *see also Painter v. Blue Diamond Growers*, No. CV 17-02235, 2017 WL 4766510, at *2 (C.D. Cal. May 24, 2017), *aff'd*, 757 F. App'x 517 (9th Cir. 2018); *Ang v. Whitewave Foods Co.*, No. 13-CV-1953, 2013 WL 6492353, at *4 (N.D. Cal. Dec. 10, 2013); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-VC, 2015 WL 9121232, at *1 (N.D. Cal. Dec. 1, 2015); *Miyoko's Kitchen v. Ross*, Case No. 20-cv-00893-RS, 2021 WL 4497867, at *4 (N.D. Cal. Aug. 10, 2021). The same reasoning applies here.

13

The record shows no material dispute of fact that Plaintiffs' labels are not misleading and do not deceive consumers. Accordingly, the Court finds that *Central Hudson* applies to Plaintiffs' First Amendment claim.

### 2. There is No Material Dispute of Fact that SB 664 Fails the *Central Hudson* Test

Turning next to the application of the *Central Hudson* factors, the Court finds no material dispute of fact that SB 664 violates the First Amendment. First, Defendants have not demonstrated that SB 664's restrictions target a substantial government interest. *Central Hudson*, 447 U.S. at 566. Defendants argue that the state interest underlying the law is to ensure that consumers "understand the nature of the products they are purchasing." (Defs.' Mot. Summ. J., Dkt. 52, at 33). But they do not provide evidence that customers do not understand current plant-based meat labels.

In fact, Defendants' representatives repeatedly stated that they did not have evidence of such customer confusion. (*E.g.*, Stevenson Dep., Dkt. 52-1, at 33 (no knowledge of Defendants ever having received a consumer complaint alleging the kind of confusion the Law seeks to address); *id.* at 35 (not aware of any consumer complaints about plant-based meat products, generally, and Defendants have not done any research into confusion over plant-based labels); Deposition of Lewis Ressler, Manager, Manufactured Foods Program, Texas Department of State Health Services (hereinafter "Ressler Dep."), Dkt. 52-3, at 10 (no records of such complaints); Email from Lewis Ressler, Dkt. 53-11 ("Our internal documents related to our bill analysis . . . did not include evidence of consumer confusion."); Email from James R. Dillon, Director, Texas Meat Safety Assurance, Dkt. 53-12 ("I don't know of any" consumer complaints "related to consumers who thought they were buying meat products but ended up with imitation meat"); Defs.' Resp. to Pls.' First Reqs. Prod. No. 4, Dkt. 53-13, at 6 (Defendants had no responsive documents to a request for "[d]ocuments [r]elating to evidence of the type of consumer confusion addressed by [SB 664]")). To the contrary, the record shows that consumers are not confused about current plant-based labeling,

(*e.g.*, Feltz Rep., Dkt. 53-9, at 5), meaning SB 664 does not address a substantial governmental interest.

The lack of examples of consumer confusion on the record cannot be explained by Plaintiffs' products being new. Defendants acknowledge that plant-based meats have existed, and been regulated in Texas, "for decades." (Stevenson Dep., Dkt. 52-1, at 19). Plaintiff Tofurky has been operating since 1980. (Ransom Decl., Dkt. 53-3, at 4). If Defendants had a substantial interest in restricting labelling of plant-based food products to avoid consumer confusion, the Court can presume the summary judgment record would include at least one, if not multiple, examples of an existing problem with such consumer confusion.

Separately, Texas and federal law already regulates the same allegedly misleading behavior. Federal law categorizes a food product as "misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. § 343 (a)(1). Federal law also prohibits "unfair or deceptive acts or practices" in or affecting commerce. 15 U.S.C. § 45. So too, the Texas Deceptive Trade Practices Act already prohibits "false, misleading, or deceptive acts." Tex. Bus. & Com. Code § 17.46. Defendants acknowledged in a legislative document that Texas Department of State Health Services regulation "already prohibits the sale of mislabeled food products" and that the Department "ha[s] the authority already" to "regulate the labeling of 'alternatives' to meat." (Pls.' Ex. 12 to Cross-Mot. Summ. J., Dkt. 53-14, at 2-3). To the extent that Defendants were to receive reports of misleading labelling of plant-based meat products, Defendants could enforce existing law to address those violations.

Turning to the second prong, whether the restrictions "directly advance[] the governmental interest asserted," *Central Hudson*, 447 U.S. at 566, even if Defendants had cited examples of consumer confusion, Defendants have not demonstrated that the Act would mitigate it. To succeed on this prong, "[a] governmental body seeking to sustain a restriction on commercial speech must

15

demonstrate that . . . its restrictions will in fact alleviate the harms to a material degree." *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 283–84 (5th Cir.), *aff'd*, 145 S. Ct. 2291 (2025) (quoting *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 626 (1995)) (internal brackets removed). In justifying its restriction on commercial speech, "Texas must meet a higher standard than 'might.'" *Id.* Here, Defendants argue without citation that "most disclaimers are so small that consumers can never even read the fine print." (Defs.' Mot. Summ. J., Dkt. 52, at 34). But as discussed above, such a conclusory statement does not overcome a summary judgment motion. By contrast, Plaintiffs' experts' survey results, which Defendants do not rebut, suggest that changing existing labels may *create* consumer confusion. (Feltz Rep., Dkt. 53-9, at 5, 19). Without evidence of consumer confusion, nor that SB 664 mitigates this purported problem, Defendants fail to meet their burden on this prong.

Turning to the third prong, Defendants have failed to demonstrate that SB 664 is not "more extensive than is necessary to serve [the state] interest." *Central Hudson*, 447 U.S. at 566. This prong requires a commercial speech restriction to be "narrowly tailored to achieve the desired objective." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001). Defendants do not cite evidence that the Act is, out of available options, more narrowly tailored than other approaches. Here, Defendants have the option of enforcing existing law, as described above. Another less restrictive alternative could be to pass a law that requires plant-based meat products to include a conspicuous qualifying term, but without requiring it to be of equal size to the name of the product. *E.g.*, Iowa Code Ann. § 137E.3(3) (requiring plant-based food products to display "a conspicuous and prominent qualifying term in close proximity to an identifying meat term."). The Court finds no material dispute of fact that Defendants fail to demonstrate tailoring of the law to achieve its goals.

For the above reasons, the Court finds that the challenged provision of SB 664 is unconstitutional as applied to Plaintiffs. As such, the Court will next address whether the challenged provision of SB 664 should be enjoined on its face. *See Buchanan v. Alexander*, 919 F.3d 847, 852 (5th

Cir. 2019) (courts decide as-applied challenge first); *see also Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020) (same).

### 3. There is No Material Dispute of Fact that SB 664 is Properly Facially Enjoined

As part of its analysis of a constitutional challenge to a statute, the Court must determine whether the law is appropriately found facially invalid, or invalid as applied to Plaintiffs. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). In general, a plaintiff cannot succeed on a facial challenge unless she "establish[es] that no set of circumstances exists under which the [law] would be valid," or that the law lacks a "plainly legitimate sweep." *Id.* (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)). In First Amendment cases, however, the Supreme Court has "lowered that very high bar." *Id.* Here, the question is whether "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* (quoting *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021)).

This analysis proceeds in two parts. First, courts must "assess the state laws' scope. What activities, by what actors, do the laws prohibit or otherwise regulate?" *Id.* at 724. The second step is to "decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id.* at 724–25. At this second stage, "courts [] must explore the laws' full range of applications—the constitutionally impermissible and permissible both—and compare the two sets." *Id.* at 725–26.

Applying step one, there is no material dispute that SB 664 regulates the labeling of analogue products by plant-based food manufacturers. Tex. Health & Safety Code § 431.082(d-1). As described above, the law applies to non-misleading commercial speech, violating the rights of plant-based food manufacturers to make accurate statements to consumers under the First Amendment. *Cent. Hudson*, 447 U.S. at 566; *see 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 495–99 (1996).

17

Turning to the second step, the constitutionally impermissible applications of the law substantially outweigh the constitutionally permissible ones, i.e., to unprotected misleading labelling. The analysis of SB 664's facial validity looks to its applications where it "actually authorizes or prohibits conduct," not applications that are already covered by other laws. *See City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015); *see also Spirit Aerosystems, Inc. v. Paxton*, 142 F.4th 278, 286–87 (5th Cir. 2025). Existing federal and state laws, including the federal Food Drug and Cosmetics Act, Federal Trade Commission Act, Texas Health & Safety Code, and Texas Deceptive Trade Practices Act, require truthful, non-misleading marketing and labeling for plant-based meat products. 21 U.S.C. § 343; 15 U.S.C. § 52; Tex. Health & Safety Code § 431.082(a); Tex. Bus. & Com. Code § 17.46. Defendants' regulations prohibiting misbranding have existed for decades. (*See* Ressler Dep., Dkt. 52-3, at 11). Still, Defendants have not produced evidence of labels of plant-based food products that mislead consumers, much less examples of labels that are misleading and not already prohibited under existing laws. (Defs.' Mot. Summ. J., Dkt. 52, at 16).

In sum, even in situations, not apparent in the record, where a plant-based food product label misleads consumers, existing law would prohibit those labels except in, possibly, a small minority of circumstances not made apparent to the Court. The law is invalid in a substantial majority of all applications and is appropriately enjoined facially. Having found that the challenged provisions of SB 664 should be facially enjoined on First Amendment grounds, the Court need not reach the other grounds for invalidating SB 664 briefed by the parties.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment, (Dkt. 53), is **GRANTED** to the extent that Plaintiffs have demonstrated that Texas Health & Safety Code § 431.082(d-1) violates the First Amendment and should be facially enjoined.

Defendants are **ENJOINED** from enforcing Texas Health & Safety Code § 431.082(d-1). All other requested relief is **DENIED**.

For the same reasons, **IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment, (Dkt. 52), is **DENIED**.

The Court will issue final judgment via separate order.

**IT IS FINALLY ORDERED** that the bench trial scheduled for February 23, 2026, is **CANCELLED**.

**SIGNED** on January 28, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE